UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>KATHY S. CHIN, )<br>)<br>    Defendant. )<br>) | Case No. 14-CR-10363-RGS |

# DEFENDANT KATHY S. CHIN'S MOTION TO SEVER
# AND MEMORANDUM IN SUPPORT

The Defendant Kathy S. Chin moves under Fed. R. Crim. P. 8(b) and 14(a) for severance of the charges against her from those of her codefendants and for a separate trial. Ms. Chin is charged in Counts 104, 105, 106 and 107 of the indictment with dispensing drugs without a valid prescription. If convicted she faces a statutory maximum sentence of 3 years on each count and a guidelines range of at most 0 – 6 months. She is the only defendant charged in those counts and she is not charged in any count with any other defendant.

As grounds for this motion, the defendant states that the charges against her arise out of wholly separate facts and law than those of her codefendants charged with more serious offenses and therefore joinder is improper, and that a joint trial would result in spillover prejudice from evidence of alleged crimes far more serious than those with which she is charged. Indeed, the time spent waiting to be tried and the trial itself will far exceed any sentence that would likely be imposed on Ms. Chin were she found guilty as charged. Under these circumstances, it is both

1

fairer to the defendant and more economical for the court to sever Ms. Chin's trial from that of her codefendants.

## FACTS

The government has charged Kathy Chin as one of 14 defendants in this case. Ms. Chin is charged for her role as a part time employee pharmacist in the shipping department at New England Compounding Corporation ("NECC").

<u>Charges involving allegedly improperly prepared drugs – NOT Kathy Chin</u>

The government alleges that NECC improperly manufactured and sold tainted drugs resulting 25 patient deaths. The government has charged 8 defendants (not Kathy Chin) with a variety of charges, including RICO, RICO Conspiracy, Mail Fraud and violations of the Federal Food Drug and Cosmetic Act ("FDCA"), for selling drugs that were not properly prepared:

- drugs not properly prepared as sterile,
- drugs not properly tested,
- drugs prepared using expired ingredients and
- drugs prepared by an unlicensed pharmacy technician.

See Indictment Counts 1 (RICO), 2 (RICO Conspiracy), 4-56 (Mail Fraud) and 57-94 (FDCA).

Included in the substantive RICO count are 25 racketeering acts alleging second degree murder by defendants Barry Cadden and Glenn Chin for shipment of drugs not properly prepared as sterile which allegedly resulted in the 25 deaths.  According to the government, Barry Cadden was part owner, President and Managing Pharmacist of NECC who oversaw all of the operations; Glenn Chin was a supervising pharmacist who oversaw all clean room production. Glenn Chin is Kathy Chin's husband.

<u>Count 3 conspiracy to avoid FDA oversight – NOT Kathy Chin</u>

The government also claims that NECC intentionally avoided FDA oversight by falsely claiming to be a pharmacy filling individual prescriptions rather than a bulk manufacturing facility. The government has charged 5 defendants (not Kathy Chin) with conspiring for over a decade to defraud the government and avoid FDA oversight by falsely claiming to operate as a state regulated pharmacy filling individual patent prescriptions. See Indictment Count 3.

In the indictment, the government recites numerous email communications among the alleged co-conspirators purporting to show their knowledge that some hospitals and clinics were providing fake names with their orders and also suggesting that Barry Cadden had approved the sale of drugs to certain facilities without the need for individual patient names or prescriptions. See Indictment Count 3, pars. 97-99. The government does not allege that Kathy Chin received any of those emails and admits that she was not a member of the NECCWatchList email group to which at least some of those emails were distributed.

<u>Kathy Chin</u>

Ms. Chin worked at NECC for just under two years from November 2010 to October 2012. She was a part time employee in the packaging department whose job it was to check that the drugs being shipped were the drugs which had been ordered and that they were being shipped to the facility that had ordered them. Ms. Chin never held any other job at NECC and she was good at it; she was fast and accurate, regularly catching errors in the items she was responsible for checking. She processed hundreds of orders per day, and while the work load varied, typically spent 30 seconds to a minute on each order. The government has charged Ms. Chin in this indictment with knowingly dispensing prescription drugs without valid individual prescriptions in connection with 4 orders she processed in 2011 and 2012.  The government

claims that the 4 order forms contained obviously fake patient names and that Ms. Chin knowingly shipped the drugs anyway. See Indictment Counts 104-107.

In fact, Ms. Chin had no responsibility for or knowledge of prescriptions or patient names. Rather, other NECC employees in another department were responsible for telephoning the facility to confirm all orders that came in by fax, including ensuring that patient names were included with the order. The government does not allege that Ms. Chin was a part of the conspiracy to avoid FDA oversight charged in Count 3, nor is Ms. Chin copied on any of the emails concerning fake patient names cited by the government in Count 3 of the indictment. Ms. Chin processed potentially tens of thousands of orders just like the 4 that are the subject of the charges against her, each often containing 10 – 12 patent names, which apparently raised no issue concerning prescriptions or patient names. Ms. Chin could not have reviewed the patient names while also performing her job in the short time she spent had to spend on each order and it was not her job to do so. The government does not allege that the drugs that were shipped pursuant to the 4 orders were tainted, improperly prepared or tested or caused harm to anyone at all. Nor does the government claim that Ms. Chin failed to do her job, ensuring that the right drugs went to the right facility.

**ARGUMENT**

Fed. R. Crim. P. 8(b) provides that defendants may be joined in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."

Even where joinder is not improper, Rule 14 of the Federal Rules of Criminal Procedure provides that the Court may order a severance of a defendant where it appears that he or she will be prejudiced by joinder with his codefendants for trial. The Supreme Court has interpreted Rule 14 to require severance "if there is a serious risk that a joint trial would compromise a specific

trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

To determine whether a defendant must be severed from a joint trial, the Court should consider "the number of defendants and the number of counts; the complexity of the indictment; the estimated length of the trial; disparities in the amount or type of proof offered against the defendants; disparities in the degrees of involvement by defendants in the overall scheme; possible conflict between various defense theories or trial strategies; and especially, prejudice from evidence admitted only against co-defendants but which is admissible or excluded as to a particular defendant." *United States v. Gallo*, 668 F.Supp. 736, 749 (E.D.N.Y. 1987). *See also, United States v. Innamorati*, 996 F.2d 456, 469 (1st Cir. 1993) ("Prejudice from joinder can come in various forms, including jury confusion, the impact of evidence that is admissible against only some defendants, and 'spillover' effects where the crimes of some defendants are more horrific or better documented than the crimes of others."). "None of the factors are themselves dispositive; instead the court must decide whether the jury would be 'reasonably able' to consider the evidence as to each defendant separately, independent of the evidence against his or her co conspirators" *Gallo*, 668 F.Supp. At 749.

### I. JOINDER IS IMPROPER

The charges against Kathy Chin should be severed from those against her codefendants because they do not arise out of the same acts or transactions. The indictment alleges that certain owners and employees at NECC failed to follow proper procedures in manufacturing sterile drugs resulting in at least some of those drugs becoming contaminated and causing injury and death to the patients who received them. The government claims that NECC got away with running a substandard drug manufacturing facility by claiming to be a state regulated pharmacy filling individual prescriptions and thus avoiding FDA regulation and oversight. Kathy Chin is

not alleged to have participated in either the substandard manufacturing or the conspiracy to avoid FDA oversight that allegedly began long before she was employed by the company.

Kathy Chin is charged in 4 discreet counts of knowingly approving for shipment 4 orders containing allegedly fake patient names out of the potentially thousands of orders that she processed during her two years of part-time work in the shipping department. In fact Kathy Chin had no responsibility for or knowledge of the alleged improper patient names. The evidence will show that it was her responsibility to check that the correct drugs were being sent to the correct address, not prescriptions or patient names. Given the short amount of time she had to spend on each order, she could not possible have done both. In any event, since Kathy Chin and her co-defendants are not "alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses" joinder is improper.

## II.   "SPILLOVER" PREJUDICE DUE TO EVIDENCE OF CONTAMINATED DRUGS WOULD PREVENT KATHY CHIN FROM RECEIVING A FAIR TRIAL.

The prime factor that a court must consider in evaluating a severance motion "is whether the court may reasonably expect the jury to collate and appraise the independent evidence against each defendant." *United States v. Perkins*, 926 F.2d 1271, 1281 (1st Cir. 1991)(internal quotation marks omitted).  *See also*, *United States v. Di Pasquale*, 740 F.2d 1282, 1294 (3d Cir. 1984) ("We must determine whether the jury could reasonably be expected to compartmentalize the evidence against the various defendants and to consider it for its proper purposes.") (internal quotation marks omitted).

Here, the danger of "spillover" prejudice is profound.  The government's case against the RICO defendants will consist of evidence of unsanitary lab conditions allegedly resulting in contaminated medications injected into unsuspecting patients resulting in hundreds of cases of meningitis and 68 deaths spread out all over the county. The allegations are gruesome and

frightening and will cause every juror to examine his or her own medicine cabinet upon returning home. Despite the absence of any evidence or allegation that she had anything to do with the contaminated products, Kathy Chin will be inexorably linked to them and to her codefendants solely by virtue of her presence in the courtroom. It is virtually certain that Kathy Chin would incur "spillover" prejudice from the introduction of this evidence at a joint trial.

Were Kathy Chin tried separately, the evidence would be excluded as irrelevant or unduly prejudicial under Fed.R.Evid. 403. Since Ms. Chin is not charged as a co-conspirator or with RICO or RICO conspiracy, the evidence has minimal relevance if any to the charges against her and the undue prejudice is clear. *Compare United States v. King,* 827 F.2d 864, 867 (1st Cir. 1987) (First Circuit finding that the trial court did not abuse its discretion in excluding evidence relating to the alleged murder of a state trooper by the defendant's co-conspirators under Rule 403). *Compare also, United States v. Flynn*, 852 F.2d, 1045, 1054 (8th Cir 1988) (holding that the district court erred in introducing evidence of murder allegedly committed by co-conspirators when there was no evidence linking defendant to that murder and the murder was not necessary to prove the existence of the enterprise).

Moreover, given the anticipated length of the trial and the vast quantity of evidence that the government is likely to present relating to alleged crimes not charged to Ms. Chin, limiting instructions are not enough. *See Gallo*, 668 F.Supp. at 753 (court noting that "even where jurors would at first attempt to heed the judge's admonitions, they could hardly be expected to retain such precise distinctions weeks and months down the line, when they retire to deliberate on the basis of a warehouse of diverse evidence.").

Indeed in a case far less compelling than this, the Fifth Circuit reversed the district court for failing to allow a defendant police officer's motion to sever his trial from that of his two police officer codefendants. During the looting that followed Hurricane Katrina one officer shot

and killed a suspected looter after which two other officers on their own covered up the shooting by burning the body and the car and falsifying reports. The court held that severance was warranted given "[i]n particular, (1) the marginal relationship between the charge and the evidence against ...[the shooter] and that against his co-defendants; (2) the significant difference between the simpleness of the underlying charges — essentially use of excessive force — against ...[the shooter], in the performance of his duty as a police officer, and the crimes alleged against his co-defendants involving dishonesty, corruption, obstruction and cover-up; (3) the highly inflammatory and prejudicial nature of the charges and evidence against the co-defendants, from which ...[the shooter] was disassociated, ..." *United States v McRae,* 702 F.3d. 806 (5th Cir. 2012).

### III. "SPILLOVER" PREJUDICE DUE TO EVIDENCE OF THE CONSPIRACY CHARGED IN COUNT 3 TO AVOID FDA OVERSIGHT WOULD PREVENT KATHY CHIN FROM RECEIVING A FAIR TRIAL.

Kathy Chin will also suffer unfair prejudice from government evidence against Count 3 defendants charged with conspiring to avoid FDA oversight by falsely claiming that NECC was a state regulated pharmacy filling individual prescriptions. Without this spillover prejudice, the case against Kathy Chen is thin. The government has no evidence that Kathy Chin had any idea that the four orders at issue in the charges against her had fake names. Moreover, given that they were merely four invoices out of potentially thousands of invoices that she saw over the two year period of her employment and that she had no responsibility to check patient names or prescriptions much less the time to do so, the government will be hard pressed to prove beyond a reasonable doubt that she ever saw the allegedly fake names or recognized then as false.

The government will rely on evidence, however, that NECC employees including Barry Cadden were aware that certain facilities apparently used to buying in bulk from other manufacturers resisted NECC's policy of requiring individual prescriptions and that on occasion

those facilities responded to that requirement by providing fake names in their initial orders. The e-mails cited by the government in Count 3 of the indictment show that employees in departments entirely separate from Chin's were aware of the clinic's efforts to circumvent the rules. The jury will naturally assume Kathy Chin was also aware of the issue even though there is no evidence to that effect, as the government well knows since it has not included Kathy Chin in Count 3 of the indictment. The evidence cited in Count 3 of the indictment would certainly be inadmissible against Kathy Chin at a severed trial. The length of a joint trial and the complexity of the case would diminish further the effect of any limiting instruction.

Here as in *United States v. McRae,* where the government charges one's codefendants with committing a cover up, the jury will be hard-pressed to believe that the defendant does not know she committed a crime. *United States v McRae,* 702 F.3d. 806, 825 - 826 (5th Cir. 2012). ("Furthermore, notwithstanding that *no* conspiracy was charged among the defendants, our review of the record strongly suggests that the government was attempting to try the cases against each defendant as a whole piece, in effect a conspiracy, ..." to cover up for and exonerate the officer who shot the suspected looter.)

### IV.    JUDICIAL ECONOMY REQUIRES SEVERANCE.

The Court may order a severance of a trial based on the administrative concerns of trying a complex, multi-count case against multiple defendants. *United States v. Shea*, 773 F.Supp. 500, 501 (D.Mass. 1990). *See also, United States v. Casamento*, 887 F.2d 1141, 1149-1153 (2d Cir. 1989) (*cert. denied*, 493 U.S. 1081 (1990)); *United States v. Kennedy*, 819 F.Supp. 1510, 1515 (D.Colo. 1993). The projected length of the trial, the complexity of the case, the number of the defendants and witnesses and the degree in which the evidence overlaps may be considered by the Court in making its case management decision. *Casamento, 887 F.2d at 1151-1152*.

Here, the interests of judicial economy mandate severance. The oft-cited reason for a

joint trial, namely conservation of judicial resources, supports a joint trial "*only* when the indictment charges crimes 'which may be proved against all the defendants by the same evidence and which result[] from the same or a similar series of acts.'" *Id*. at 756 (emphasis in original) (*quoting*, *United States v. Borelli*, 435 F.2d 500, 502 (2d Cir. 1970)).  Here the very separate and discreet charges against Kathy Chin can be tried in less than a week. A joint trial will require Ms. Chin to sit through weeks of testimony, having only minimal, if any, relevance to her.  During this time her counsel (who has been appointed) must be paid for her time despite the marginal need for her participation. *See United States v. Haworth*, 168 F.R.D. 658, 660 (D.N.M. 1996) (severing, in part, because it would be a waste of judicial resources to require appointed counsel to sit through weeks of testimony that do not relate to the charges pending against his client).

The government estimates that trial of all charges will take 3 – 6 months.  Lengthy trials like this one "have constituted an enormous burden on the courts, as well as on defendants, the defense bar, jurors and even prosecutors." *Gallo*, 668 F.Supp. at 754.  Particularly here, given the probable length of a joint trial of all charges and defendants as compared with the sentence that Ms. Chin would face even if found guilty as charged, considerations of fairness to the defendant as well as judicial economy counsel in favor of severance.

## CONCLUSION

For all of the foregoing reasons, this Court should grant Kathy Chin's Motion to Sever.

## REQUEST FOR ORAL ARGUMENT

Defendant believes that oral argument will assist the Court and requests a hearing on this motion.  Local Rule 7.1(d).

Respectfully Submitted,

KATHY S. CHIN,
By her attorney,

/s/ Joan M. Griffin____
Joan M. Griffin (BBO# 549522)
PO Box 133
Dublin, NH 03444
griffin@lawjmg.com
(617) 283-0954

Date:   September 14, 2015

## LOCAL RULE 7.1 CERTIFICATE

I hereby certify that I have conferred with AUSA Amanda Strachen and the government does not assent to this motion.

/s/ Joan M. Griffin
Joan M. Griffin

## CERTIFICATE OF SERVICE

I hereby certify that the above document was served on all parties of record by ECF filing on September 14, 2015.

/s/ Joan M. Griffin
Joan M. Griffin