UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | Court No.:  14-cr-10363-RGS |
| v. | ) | |
| | ) | |
| BARRY J. CADDEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## GOVERNMENT'S OPPOSITION TO
## DEFENDANT KATHY CHIN'S MOTION TO SEVER

The United States of America hereby opposes defendant Kathy S. Chin's ("Chin")

Motion to Sever (hereinafter, the "Motion") on the grounds that (1) defendant Chin was properly

joined in the indictment under Rule 8 of the Federal Rules of Criminal Procedure, and (2)

severance of defendant Chin's charges is not warranted under Rule 14.  First, defendant Chin's

criminal conduct is part of the same series of acts or transactions underlying the other criminal

charges in the indictment.  Moreover, defendant Chin has failed to demonstrate that by facing

trial alongside her co-defendants she will suffer from such prejudicial spillover she could not

receive a fair trial.  For these reasons, which are more fully set forth below, the Court should

deny the Motion.

## BACKGROUND

### *The Fungal Meningitis Outbreak and Criminal Investigation*

This criminal case arose from the nationwide outbreak of fungal meningitis traced to

epidural steroid injections of methylprednisolone acetate compounded by New England

Compounding Pharmacy, Inc., doing business as New England Compounding Center ("NECC").

During the outbreak, the U.S. Centers for Disease Control and Prevention ("CDC") confirmed

fungal infection in patients treated with methylprednisolone acetate injections sold by NECC to customer in twenty-three states.  The CDC and the Food and Drug Administration ("FDA") confirmed the presence of mold in multiple unopened vials of three different lots of methylprednisolone acetate made by NECC and obtained from NECC's facility in Massachusetts and from samples collected from NECC customers around the country.  The CDC reported that, as of October 2013, approximately 751 patients, living in twenty states, were diagnosed with a fungal infection after receiving injections compounded at NECC, of which 64 died.  The criminal investigation revealed that the number of victims continued to rise after that date.

Following a two-year criminal investigation, a federal grand jury sitting in this district returned a 131-count indictment against fourteen defendants, including defendant Chin, a licensed pharmacist working at NECC.  See Indictment, at 5.  The criminal indictment is not limited to the contaminated methylprednisolone acetate and the fungal meningitis outbreak, but rather alleges widespread criminal conduct throughout NECC.  Among other things, the indictment alleges that some of the defendants operated NECC and its affiliated company, Medical Sales Management Inc. ("MSM"), as a criminal enterprise whose objective was to obtain money and property through materially false and fraudulent representations about its drug products.  Id. at 11.  In addition, the indictment alleges that some of the defendants defrauded the United States, specifically the FDA, by purportedly operating NECC as a state-regulated pharmacy, dispensing drugs only pursuant to valid, patient-specific prescriptions as required by Massachusetts law.  While Chin is not charged in either the racketeering counts or the conspiracy count, the conduct for which she is charged — the dispensing of drugs without valid prescriptions — plays a central role in the criminal conduct alleged in the indictment.

### *NECC's Drug Dispensing Process*

NECC had a multi-step dispensing process to fill its customers' drug orders.  First, NECC's customers, which were medical facilities and hospitals throughout the country, faxed drug orders on a "prescription order form" provided by NECC.  NECC employees in the confirmations area received the orders and either pulled the necessary drugs that NECC had already made from stock bins on shelves, or sent orders to the pharmacists in the clean room to compound custom-made drugs.  The confirmation area employees, nearly all of whom were not licensed pharmacists, would also call the customers and confirm the orders.

Because it was purportedly operating as a pharmacy, NECC was required to dispense drugs only pursuant to valid, patient-specific prescriptions.  With the exception of schedule II drugs for which NECC required actual physician-signed, patient-specific prescriptions, NECC supposedly required customers to submit patient names on its "prescription order form" for all other drugs it sold.  Specifically, NECC's "prescription order form" requested certain information about each order, including the names of patients to whom the drugs would be administered, the name and strength of the drug needed, the method of delivery, and the quantity for each unit of drug ordered.  After receiving faxed orders, NECC's data-processing staff would create purported "prescriptions" using the information on the order form.  The purported "prescriptions" the data-processing staff created resembled actual physician prescriptions (without physician signatures, however), and were kept in storage at NECC in the event of regulatory inquiries.  NECC routinely dispensed prescription drugs, however, without valid prescriptions or patient names through numerous schemes, including dispensing orders using the names of hospitals or medical facilities, orders using historical lists of patients, orders re-using

patient names from prior orders, and orders using celebrity and fictional names.  None of the prescription drugs NECC shipped were labeled with the names of any patients.

Following creation of the "prescriptions," the customers' order forms were sent to the shipping area either accompanied with stock drugs or linked up with the custom-ordered drugs sent out of the clean room.  The orders and accompanying drugs were then reviewed by the "checking pharmacists," of which defendant Chin was one.[1]  Under Massachusetts law, only a licensed pharmacist (or medical practitioner) is allowed to dispense prescription medication in the Commonwealth of Massachusetts.  See Mass. Gen. Laws ch. 112, § 30 ("No person shall dispense any controlled substance or any substance intended for hypodermic use except a person registered as a pharmacist….").  While the pharmacists working in the NECC clean rooms were responsible for, among other things, checking the quality and sterility of the drugs, the checking pharmacists, including defendant Chin, were the only licensed pharmacists at NECC who reviewed the order paperwork in concert with the drugs, and served as the last step in the dispensing process before drugs were shipped to customers.  NECC touted the role of the checking pharmacists in its communications with regulators, explaining that "[t]he prescription order is checked by a different pharmacist and then federal expressed directly to the physician's office pursuant to his/her valid prescription."

During her years at NECC, defendant Chin authorized hundreds of shipments of drugs without valid prescriptions and where NECC, in fact, did not even have any patient names.  For example, she authorized drugs to be dispensed to customers using the names of hospitals or medical facilities, using historical lists of patients, re-using patient names from prior orders, and using celebrity and fictional names such as "Tom Brady," "Bill Gates," "David Schwimmer,"

---

[1] The other checking pharmacists included defendant Alla V. Stepanets and defendant Michelle L. Thomas.

"David Hasselhoff," "John Travolta," "Johnny Cash," "Hugh Jackman," "Kevin Bacone [sic],"
"John Mayer," "Michael Bolton," "Calvin Klein," "Dick Cheney," "Donald Rumsfield [sic],"
"Samuel Adams," "Kate Moss," "Bo Peep," "Jimmy Dean," "John Wayne," "Angelina Jolee
[sic]," "Brad Pitt," "Gandalf Grey," and "Gandalf White."[2]

The 131-count criminal indictment returned by the grand jury charges each of the
defendants for their respective roles within NECC's fraudulent drug compounding and
dispensing process. Accordingly, the defendants charged in the indictment include Barry J.
Cadden (owner and head pharmacist); Gregory D. Conigliaro (owner and regulatory/licensing
compliance); Robert Ronzio (national sales director); Sharon Carter (director of operations);
Glenn A. Chin (supervising clean room pharmacist); Gene Svirskiy, Christopher M. Leary, and
Joseph M. Evanosky (clean room pharmacists); Scott Connolly (unlicensed clean room
pharmacy technician); Alla V. Stepanets (order confirmations and checking pharmacist); and
Michelle Thomas, and defendant Chin (checking pharmacists).[3] Each of the defendants is not
charged in every count, but only with counts for which their actions are alleged to be criminal.

Because all of these defendants played a key role in NECC's operations, drug
compounding, and/or dispensing process, either by participating in the making and shipping of
drugs and/or by conspiring to shield their conduct from regulators, they were all properly joined
in the indictment pursuant to Rule 8(b). Moreover, appropriate limiting instructions by the Court
with respect to the admissibility of the evidence against each particular defendant and the need to

---

[2] Though the indictment charged defendant Chin with only four specific shipments in Counts 104-107, the
government intends to introduce at trial a number of other shipments authorized by defendant Chin, including these.
[3] In addition to the twelve defendants charged in connection with NECC's drug compounding and dispensing
process, two other defendants, Carla R. Conigliaro (majority shareholder of NECC) and Douglas A. Conigliaro (her
husband) are charged with transferring $33.3 million following the fungal meningitis outbreak in violation of the
NECC bankruptcy court's orders, and four additional counts related to structuring transactions.

determine guilt on an individual basis obviates any need for severance pursuant to Rule 14(a). Accordingly, defendant Chin's Motion should be denied.

## ARGUMENT

**I.      The Charges Against Defendant Chin Were Properly Joined in the Indictment.**

Pursuant to Rule 8(b)(2), an indictment "may charge 2 or more defendants if they are alleged to have participated…in the same series of acts or transactions, constituting an offense or offenses."   Fed. R. Crim. P. 8(b)(2).   The rule further states, "[a]ll defendants need not be charged in each count."   Id.   It is well settled that "[t]he government is entitled to charge and join parties on the basis of what it reasonably anticipates proving against all."   United States v. Martinez, 479 F.2d 824, 828 (1st Cir. 1973).   "A rational basis in fact, sufficient to warrant joinder, must be discernible from the face of the indictment.  In this fashion, Rule 8(b) codifies a balanced compromise between a defendant's right to have his guilt considered separately and the systemic benefits of consolidated trials."   United States v. Boylan, 898 F.2d 230, 245 (1st Cir. 1990).   The First Circuit has explained that for purposes of Rule 8, a series of transactions is more than similar acts, but rather there must be some "relatedness between offenses."   United States v. Turkette, 632 F.2d 896, 907 (1st Cir. 1980), rev'd on other grounds, 452 U.S. 576 (1981).   "Relatedness of offenses can be established by demonstrating that essentially the same facts must be shown for each of the consolidated crimes."   Id. at 908.

The charges alleged against defendant Chin, along with evidence of numerous other shipments she authorized, clearly meet this standard.  In her Motion, defendant Chin argues that joinder was improper because she is only charged with "4 discreet [sic] counts of knowingly approving for shipment 4 orders containing allegedly fake patient names out of the potentially

thousands of orders that she processed." Mot. at 6.[4] But the charges against defendant Chin are inextricably intertwined with the overall criminal conduct charged in the indictment. Indeed, the charges against defendant Chin arise from her role as a checking pharmacist in NECC's fraudulent drug compounding and dispensing process. As such, she was an integral link in the drug dispensing chain at NECC. The evidence of defendant Chin's authorization of hundreds of shipments of drugs to customers pursuant to bogus prescriptions is overwhelming proof of NECC's fraudulent representations to the FDA and state regulators that NECC was dispensing medication only in response to valid "patient-specific, physician prescriptions," which is alleged in Count 3 of the indictment. See Indictment at 40. Moreover, NECC's schemes to manufacture names of patients to accompany drug orders is direct evidence of defendant Chin's crimes. The actions by defendant Chin and other defendants to operate NECC as a drug manufacturer in the guise of a state-regulated pharmacy prove the conspiracy to defraud the FDA.

Defendant Chin's role as a checking pharmacist is also critical in the racketeering charges. Defendant Chin authorized several of the shipments identified as racketeering acts and substantive mail fraud counts in the indictment. Defendant Chin authorized more than fifty shipments of contaminated methylprednisolone acetate to NECC customers throughout the country. While the indictment does not allege defendant Chin knew of the contaminated drugs, NECC's unsafe compounding practices, or its insanitary clean room conditions, defendant Chin nevertheless played an integral role in NECC's drug dispensing process and many of the shipments charged in the indictment. Accordingly, given the relatedness of defendant Chin's

---

[4] In the Motion, defendant Chin likewise argues that she is innocent of the counts for which she is charged because as a licensed pharmacist she did not properly check "the prescriptions or patient names." Mot. at 6. The government respectfully submits that the defendant's post-hoc abdication of her professional responsibilities should not form the basis for an argument of misjoinder.

criminal conduct and the allegations contained in the indictment, defendant Chin was properly

joined under Rule 8(b)(2).

**II.      There Is No Evidence of "Spillover" Prejudice Preventing Defendant Chin From Receiving a Fair Trial.**

Pursuant to Rule 14(a), if joinder of defendants in an indictment appears to prejudice a

defendant, the court may sever the defendants' trials.  Fed. R. Crim. P. 14(a).  "Because the

general rule is that those indicted together are tried together to prevent inconsistent verdicts and

to conserve judicial and prosecutorial resources, severance is particularly difficult to obtain

where…multiple defendants share a single indictment."  United States v. Soto-Beniquez, 356

F.3d 1, 29 (1st Cir. 2003).  "To prevail on a claim of prejudicial spillover, a defendant must

prove prejudice so pervasive that a miscarriage of justices looms."  United States v. Levy-

Cordero, 67 F.3d 1002, 1008 (1st Cir. 1995).  Prejudicial spillover requires more than a showing

of joinder of trial with a more culpable defendant.  See United States v. Martinez-Vidal, 922 F.2d

914, 922 (1st Cir. 1991) ("We add that prejudice means more than just a better chance of

acquittal at a separate trial.  Incidental prejudice, such that which is almost always encountered

when multiple defendants playing different roles are tried together, will not suffice.").  The First

Circuit has upheld the denial of severance "[e]ven when large amounts of testimony are

irrelevant to one defendant, or where one defendant's involvement in an overall agreement is far

less than the involvement of others."  Boylan, 898 F.2d at 246.  With respect to the possibility of

spillover prejudice, the First Circuit has held that any prejudice can be "adequately neutralized

by the giving of limiting instructions when needed or requested and by the closing directive to

give each count and each defendant separate consideration."  United States v. Aponte-Suarez,

905 F.2d 483, 494 (1st Cir. 1990); see also, United States v. Cresta, 825 F.2d 538, 555 (1st Cir.

1987) (recognizing "a possible risk of prejudice almost always exists when multiple defendants

with different roles are tried together," but upholding verdict in light of district court's instructions to the jury to consider the evidence separately against each defendant on each count); United States v. Moreno Morales, 815 F.2d 725, 742 (1st Cir. 1987) (upholding denial of severance where district court gave "clear instruction warning the jury to consider each count separately"); United States v. Williams, 809 F.2d 75, 88 (1st Cir. 1986) (holding that "clear and complete limiting instructions…adequately eliminated the possible prejudicial spillover of evidence"); United States v. Rawwad, 807 F.2d 294, 296 (1st Cir. 1986) (holding that the court's limiting instructions "sufficiently safeguarded" against prejudicial spillover).

In her Motion, defendant Chin makes two prejudicial spillover arguments: first, she claims that evidence of NECC's contaminated medication resulting in deaths and injuries around the country "will cause every juror to examine his or her own medicine cabinet upon returning home" and therefore convict her of the charges she faces apparently without regard for the evidence against her; and second, that defendant Chin will be prejudiced by the government's evidence that NECC falsely claimed it was "a state regulated pharmacy filling individual prescriptions."  Mot. at 7, 8.  Neither of these arguments is persuasive, and therefore, defendant Chin cannot meet her burden for severance.

1. Defendant Chin Has Not Shown that Evidence of Contaminated Medication Would Cause Prejudicial Spillover So Pervasive that a Miscarriage of Justice Occurs.

In her Motion, defendant Chin argues that in light of the government's evidence of contaminated medication, "[i]t is virtually certain that Kathy Chin will incur 'spillover' prejudice from the introduction of this evidence at a joint trial."  Mot. at 7.  Defendant Chin has put forth no evidence of this "virtual certainty," but instead argues that "she will be inexorably linked to [the contaminated medication] and to her codefendants solely by virtue of her presence in the courtroom."  Id.  Defendant Chin's thesis is dressed in nothing more than "gossamer vestments

of speculation and surmise." United States v. Houlihan, 92 F.3d 1271, 1295 (1st Cir. 1996).  The

First Circuit has routinely rejected arguments for severance on the grounds that co-defendants

face more serious charges.  See e.g., United States v. DeCologero, 530 F.3d 36, 54 (1st Cir.

2008) (affirming denial of severance of two defendants from co-defendant charged with

"gruesome murder"); United States v. Soto-Beniquez, 356 F.3d 1, 30 (1st Cir. 2003) (affirming

denial of severance of defendants from co-defendants charged with fifteen murders); Houlihan,

92 F.3d at 1296 (upholding denial of severance of two co-defendants not charged with murder in

light of "the trial court's firm, carefully worded, and oft-repeated instructions to the jurors"

forbidding them from considering murder evidence with respect to other two defendants).  As the

appellate court has explained, "[d]efendants are not entitled to severance solely on the basis that

their co-defendants are more culpable."  Soto-Beniquez, 356 F.3d at 30.

In this case, defendant Chin played a critical role in NECC's drug dispensing process, but

was not involved in the compounding of medication inside the clean room.  Instead, during her

time employed at NECC as a checking pharmacist, she authorized thousands of shipments of

drugs to medical facilities and hospitals throughout the country, including more than fifty

shipments of contaminated methylprednisolone acetate.  While she is not charged with the most

serious racketeering counts, her conduct is inextricably intertwined with them.  Accordingly, she

is properly joined in the indictment, and should be tried with her co-defendants.  Any potential

spillover prejudice arising from the more serious charges in the indictment can be neutralized by

limiting instructions to the jury to evaluate the evidence separately against each defendant on

each count.

The sole case defendant Chin relies on in support of her Motion is United States v.

McRae, 702 F.3d 806, 810 (5th Cir. 2012), an extraordinary case involving "one of the

nightmarish stories that arose from Hurricane Katrina in 2005." Her reliance on this case is misplaced. The Fifth Circuit's holding in <u>McRae</u>, which was a case involving three New Orleans police officers who were charged with three sets of separate and distinct crimes in the aftermath of Hurricane Katrina, cannot be divorced from its peculiar factual context. In <u>McRae</u>, defendant Warren was charged in the shooting death of Henry Glover ("Glover"). <u>Id.</u> at 810. Warren's two co-defendants, McRae and McCabe, were charged with acts independent, and without the knowledge, of Warren. Specifically, co-defendant McRae, who was unaware that Warren had shot Glover, was charged with assaulting Glover's friends, as well as obstruction of justice for driving the vehicle with Glover's body in it to a remote location and setting it and the body on fire. <u>Id.</u> at 818. Co-defendant McCabe was charged with writing an allegedly fraudulent police report exonerating Warren in the shooting of Glover. <u>Id.</u> at 819. Warren moved to sever his trial, arguing that he was unable to put forth his defense that the shooting of Glover was justified given the charges and evidence against his co-defendants. Warren explained that a failure to sever the trials of McRae and McCabe essentially implied that the burning of the car and body, as well as the false police report, were to cover-up Warren's shooting of Glover. Indeed, the government presented evidence and arguments to the jury suggesting just that, arguing that the defendants were all part of the "Fourth District Fraternity," despite the fact that there was no evidence that they were aware of each other's actions, nor had they been charged with conspiracy. <u>Id.</u> at 826. In finding that the district court erred in not severing Warren's trial, the Fifth Circuit explained that this was an extraordinary case in which the defendant had "cited specific and compelling instances of prejudice that resulted from joinder at trial with his co-defendants." <u>Id.</u> at 827. Central to the appellate court's ruling was that the case involved separate and distinct acts unrelated to one another.

Defendant Chin's case, by contrast, is not such an extraordinary factual scenario, nor do the charges against her co-defendants prevent her from presenting her defense. A properly instructed jury will be able to clearly delineate the evidence and charges against NECC's clean room pharmacists from the evidence and charges against NECC's checking pharmacists, as well as from the evidence and charges against the remaining NECC defendants. Defendant Chin has put forth no specific and compelling instances of prejudice that would arise from a joint trial. Instead, she has simply argued that she is entitled to severance because her co-defendants are more culpable than she. This reasoning has been flatly rejected by the First Circuit, and is insufficient to meet her burden for severance. Therefore, her Motion should be denied.

2. <u>Defendant Chin Has Not Shown that Evidence of a Conspiracy to Defraud the FDA Would Prevent Her from Receiving a Fair Trial.</u>

As mentioned above, Count 3 of the indictment charges, among other things, that some of the defendants conspired to defraud the FDA by operating NECC as a drug manufacturer in the guise of a state-regulated pharmacy. Central to proving this charge, the government will present evidence of NECC's schemes to circumvent the regulatory requirement that NECC dispense medication only pursuant to valid, patient-specific prescriptions. Moreover, the government will present evidence with respect to this charge that licensed checking pharmacists, including defendant Chin, dispensed the drugs to customers despite the bogus prescriptions. The evidence presented in support of Count 3 would be equally admissible evidence against defendant Chin in a separate trial on the four counts for which she is charged. "Where evidence featuring one defendant is independently admissible against a codefendant, the latter cannot convincingly complain of an improper spillover effect." <u>United States v. O'Bryant</u>, 998 F.2d 21, 26 (1st Cir. 1993); <u>see also</u> <u>United States v. Figueroa</u>, 976 F.2d 1446, 1452 (1st Cir. 1992) ("The 'evidentiary

spillover' claim is groundless, as the evidence was directly admissible against [the defendant].")." Accordingly, defendant Chin's Motion should be denied on this ground as well.

### III.    Judicial Economy Does Not Require Severance.

Defendant Chin's last argument in her Motion is that "the interests of judicial economy mandate severance." Mot. at 9. In support of her argument, defendant Chin states that the charges that she faces involve "very separate and discreet [sic] charges against Kathy Chin [that] can be tried in less than a week." Id. at 10. Defendant Chin's arguments however misstate the prevailing law in this Circuit and the facts of her case.

With respect to the law, the First Circuit has explained that as a general matter, "defendants charged in the same indictment should be tried together. The policies supporting this preference are that it helps to prevent inconsistent verdicts, and conserve judicial resources." United States v. Houle, 237 F.3d 71, 76 (1st Cir. 2001). The appellate court has upheld the denial of severance "[e]ven where large amounts of testimony are irrelevant to one defendant, or where one defendant's involvement in an overall agreement is far less than the involvement of others." Boylan, 898 F.2d at 246; see also Cresta, 825 F.2d at 554 (holding that "the fact that the defendant plays a minor role and that a substantial portion of the evidence is not directly related to the defendant, does not make it *automatically* unlawful to try him with more important figures") (emphasis in original); United States v. Arruda, 715 F.2d 671, 679 (1st Cir. 1983) (affirming denial of severance of peripheral defendant where co-defendants' guilt was established by overwhelming evidence); United States v. Smolar, 557 F.2d 13, 21 (1st Cir. 1977) (rejecting an appeal of denial of severance on the grounds that co-defendants were more culpable and vast amounts of trial testimony were not pertinent to the defendant). Accordingly, in this Circuit, a motion to sever "is a difficult battle for a defendant to win." Boylan, 898 F.2d at 246.

With respect to the facts, defendant Chin's case does not involve only separate and discrete charges that can be tried in less than a week.  Instead, as stated above, much of the evidence of NECC's multi-step dispensing process is admissible evidence against defendant Chin with respect to the counts for which she is charged.  Accordingly, if defendant Chin were to be tried separately, the government would present a substantial amount of the same evidence and witnesses, resulting in a waste of judicial resources.  Specifically, evidence of NECC's schemes to circumvent the regulatory requirement that NECC dispense medication only pursuant to valid, patient-specific prescriptions, and evidence that licensed checking pharmacists, including defendant Chin, dispensed hundreds of shipments of drugs to customers based on bogus prescriptions, are all directly relevant and admissible against her.  Accordingly, defendant Chin has not shown that the interests of judicial economy mandate severance, and therefore her Motion should be denied on this ground as well.

## CONCLUSION

For the above reasons, the United States respectfully requests that the Court deny the

Motion.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:    /s/ George P. Varghese
AMANDA P.M. STRACHAN
BBO # 641108
GEORGE P. VARGHESE
Assistant United States Attorneys
John J. Moakley United States Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3100
amanda.strachan@usdoj.gov
george.varghese@usdoj.gov

Dated:  September 28, 2015

Certificate of Service

I hereby certify that the foregoing documents filed through the ECF system will be sent electronically to counsel for the defendants, who are registered participants as identified on the Notice of Electronic Filing (NEF).

By:    /s/ George P. Varghese
GEORGE P. VARGHESE
Assistant United States Attorney

Dated:  September 28, 2015