UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Court No.:  14-cr-10363-RGS |
| BARRY J. CADDEN, et al., | ) | |
| Defendants. | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS KATHY S. CHIN'S
AND MICHELLE L. THOMAS'S MOTION TO DISMISS**

The United States of America hereby opposes defendants Kathy S. Chin's ("Chin") and

Michelle L. Thomas's ("Thomas") Motion to Dismiss (hereinafter, the "Motion") on the grounds

that the indictment was returned by a legally constituted and unbiased grand jury, and is valid on

its face.   Nowhere in the Motion do the defendants challenge these facts.   Instead, the

defendants' Motion is replete with unsupported factual assertions in defense of the charges; such

assertions are improper for the Court to consider at this stage.   All of the defendants' arguments

are, in fact, challenges to the sufficiency of the evidence that properly fall within the province of

a jury at trial.   Accordingly, because the defendants have patently failed to meet their burden, the

Motion should be denied.

**LEGAL STANDARD**

It has long been held that "[a]n indictment returned by a legally constituted and unbiased

grand jury…if valid on its face, is enough to call for a trial of the charge on the merits.  The Fifth

Amendment requires nothing more."  Costello v. United States, 350 U.S. 359, 409 (1956).  See

also, United States v. Reed, 27 F. Cas. 727, 738 (N.D.N.Y. 1852) ("No case has been cited, nor

have we been able to find any, furnishing an authority for looking into and revising the judgment

Case 1:14-cr-10363-RGS   Document 381   Filed 11/04/15   Page 2 of 11

of the grand jury upon the evidence….").  The First Circuit has held that, "[b]ecause the public

maintains an abiding interest in the administration of criminal justice, dismissing an indictment is

an extraordinary step."  United States v. Li, 206 F.3d 56, 62 (1st Cir. 2000).  "When a federal

court uses its supervisory power to dismiss an indictment it directly encroaches upon the

fundamental role of the grand jury.  That power is appropriately reserved, therefore, for

extremely limited circumstances."  Whitehouse v. U.S. District Court, 53 F.3d 1349, 1360 (1st

Cir. 1995).  See United States v. Morrison, 449 U.S. 361, 365 (1981) (holding that dismissal of

an indictment was unwarranted absent a constitutional violation that prejudiced a defendant's

case).

When evaluating an indictment's sufficiency, a court must "look to see whether the

document sketches out the elements of the crime and the nature of the charge so that the

defendant can prepare a defense and plead double jeopardy in any future prosecution for the

same offense."  United States v.  Geurrier, 669 F.3d 1, 3 (1st Cir. 2011) see also United States v.

Stewart, 841 F. Supp. 2d 431, 434 (D. Me. 2012) ("Unlike civil actions, an indictment is not

generally subject to dispositive motion practice.").  "A motion to dismiss an indictment is not a

device for a summary trial of the evidence, but rather it is directed only to the question of the

validity of the indictment on its face."  United States v. Vincenzi, 1998 WL 98634, at *3 (D.

Mass. Feb. 16, 1998).  In evaluating the indictment, all allegations set forth within it are assumed

to be true.  Geurrier, 669 F.3d at 3-4; Boyce Motor Lines, Inc. v. United States, 342 U.S. 337,

343 n.16 (1952).  "Consistent with that rule, courts routinely rebuff efforts to use a motion to

dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations."

Geurrier, 669 F.3d at 4.

Page 2

Similarly, a court cannot weigh factual issues that must be left for a jury's determination. United States v. Young, 694 F. Supp. 2d 25, 27 (D. Me. 2010); see also United States v. Marbelt, 129 F. Supp. 2d 49, 56 (D. Mass. 2000) (holding that where "the questions involved in the motion to dismiss the indictment involve mixed questions of fact and law, properly decided at trial, a motion to dismiss must be denied"); Vincenzi, 1998 WL 98634, at *3 ("When the pretrial motion raises questions of fact which are intertwined with issues involving the merits, a determination of that matter must be deferred until trial.").

**INDICTMENT ALLEGATIONS**

The indictment here alleges that New England Compounding Pharmacy, Inc., doing business as New England Compounding Center ("NECC"), is a compounding-only pharmacy licensed in the Commonwealth of Massachusetts. Indictment, Doc. 1 at 2. Defendants Chin and Thomas are pharmacists licensed in the Commonwealth of Massachusetts by the Massachusetts Board of Registration in Pharmacy, and therefore are authorized to dispense drugs pursuant to a valid prescription from a medical practitioner. Id. at 5. Defendant Chin worked as a pharmacist at NECC from November 2010 until October 2012. Id. Defendant Thomas worked as a pharmacist at NECC from March 2012 until August 2012. Id. Both defendants worked in NECC's packing area checking orders prior to shipment to NECC's customers. Id.

The indictment alleges that on four separate occasions in 2011 and 2012, defendant Chin, with the intent to defraud and mislead, caused drugs to be dispensed from NECC without valid prescriptions. Id. at 56, 58-59. Specifically, defendant Chin allegedly caused drugs to be introduced and delivered into interstate commerce for patients supposedly named John Stewart, Craig Killborne, David Letterman, Jay Leno, Jimmy Kimmel, Al Bundie, Johnny Knoxville, Dick Van Dike, Mike Myers, Bella Swan, Flash Gordon, Long John, Tony Tiger, and Chester

Cheeto, among others.  Id. at 58-59.  The indictment further alleges that on two occasions in

2012, defendant Thomas, with the intent to defraud and mislead, also caused drugs to be

dispensed from NECC without valid prescriptions.  Id. at 56, 59.  Specifically, defendant

Thomas allegedly caused drugs to be introduced and delivered into interstate commerce for

patients supposedly named L.L. Bean, Filet O'Fish, Rug Doctor, Squeaky Wheel, Coco Puff,

Harry Potter, Mary Lamb, and Ginger Rogers, among others. [1] Id. at 59.

## ARGUMENT

**I.     The Indictment Clearly Alleges that Defendant Chin and Defendant Thomas Dispensed Drugs Without a Valid Prescription in Violation of the Law.**

In their Motion, the defendants first argue that the indictment should be dismissed

because the defendants dispensed drugs pursuant to orders, which though they contained fake

patient names, also contained "the name of the prescribing doctor and corresponding DEA

number of an actual licensed practitioner."  Mot. at 6.  Therefore, the defendants argue that the

presence of the doctor's name and DEA number is sufficient to transform drug orders for

fictional characters, for example, into a valid "prescription."  The defendants further claim that

section 353(b)(1) of the FDCA only requires a "prescription," not a "valid prescription."  See 21

U.S.C. § 353(b)(1) ("A drug intended for use by man…shall be dispensed only…upon a written

---

[1] As stated above, throughout the Motion, defendants Chin and Thomas make numerous unsupported factual assertions in support of their argument that the indictment should be dismissed.  See e.g., Mot. at 4 ("Neither Chin nor Thomas had any responsibility for checking prescriptions or patient names."); id. (claiming "Chin and Thomas processed hundreds of orders per day, and while the work load varied, could not have spent more than 30 seconds to a minute on each order"); id. at 7 ("Here, Chin and Thomas were hired to do a specific task in the shipping department, check that the correct drugs were going to the correct facilities."); id. at 10 ("Both Chin and Thomas knew that they had not been hired, and were not being paid, to do that job.").  The government disputes many of these factual claims by the defendants, all of which are improper in a motion to dismiss the indictment, and should not be considered by the Court.  See United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (holding that when evaluating a motion to dismiss "courts take the facts alleged in the indictment as true"); United States v. Reyes, 2015 WL 6394294, at *2 (D. Puerto Rico Oct. 22, 2015) ("In fact, unless the government makes a full proffer of the evidence they will present at trial, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.").  Factual claims by the defendants should be presented, should they so choose, to a jury at trial.

prescription of a practitioner licensed by law to administer such drug….").   Both of the defendants' arguments are meritless.

First, the government submits that the premise of the defendant's argument – that an NECC order form with the presence of a doctor's signature and a DEA number constitutes a "prescription" regardless of the bogus "patient" names included on it – is a mixed question of fact and law to be determined by a jury at trial.  See Marbelt, 129 F. Supp. 2d at 56 (holding that where "the questions involved in the motion to dismiss the indictment involve mixed questions of fact and law, properly decided at trial, a motion to dismiss must be denied").   Second, the defendants' argument that as a matter of law, section 353(b)(1) of the FDCA requires only a "prescription," and not a "valid prescription" is contravened by substantial case law and common sense.   Courts throughout the country have firmly rejected the exact same argument brought by defendants charged with dispensing drugs pursuant to fraudulent prescriptions.   See United States v. Smith, 573 F.3d 639, 650-53 (8th Cir. 2009) (holding that a "prescription" under the FDCA must be valid and not just writing on a piece of paper); United States v. Munoz, 430 F.3d 1357, 1366 n.7 (11th Cir. 2005) (holding that "it goes without saying that a valid prescription necessarily identifies the correct end user of the prescribed drug"); United States v. Lovin, 2009 WL 3634194, at *8 (C.D. Cal. Oct. 30, 2009) (instructing the jury that under the FDCA a "prescription" must be "for a real patient who needs it after an examination or consultation by a licensed practitioner who has a physician-patient relationship with the patient); United States v. Nazir, 211 F. Supp. 2d 1372, 1375 (S.D. Fla. 2002) (holding that the term "prescription" in § 353(b)(1) "means only a bona fide order…[for a] drug for a real patient who actually needs it…and does not include pieces of paper by which physicians are directing the issuance of

a…drug to patients who do not need it, persons they have never met, or individuals who do not exist"). As the 8th Circuit has explained:

> Besides contravening the common meaning of 'prescription' and contradicting persuasive authority, not requiring a 'valid' prescription would undermine the FDCA's purpose by allowing practitioners to write fraudulent prescriptions…and escape criminal liability for such acts. Treating a prescription as a piece of paper of paper divorced from its context – i.e., with no analysis as to whether it is valid – would, in effect, exempt licensed practitioners from prosecution under the misbranding statute all together. The purpose of misbranding laws is to protect the public from potentially dangerous drugs. And we refuse to construe the statute in a way that would significantly undermine that purpose.

Smith, 573 F.3d at 652; see also Nazir, 211 F. Supp. 2d at 1376 ("I doubt very much that Congress meant to permit a doctor (and/or others) to avoid this provision by simply writing out a phony order for drugs for a person he never examined or consulted."). Defendants Chin and Thomas have cited no authority in support of any alternative reading of the statute.

In light of this case law, which uniformly and squarely rejects the defendants' argument, the indictment clearly alleges defendants Chin and Thomas violated the FDCA. Because the defendants cannot demonstrate as a matter of law that drug orders for patients named Flash Gordon, Filet O'Fish, L.L. Bean, and other fictitious characters were "valid prescriptions," their Motion should be denied.

## II.      The Indictment Clearly Alleges that Defendant Chin and Defendant Thomas Dispensed Drugs.

The defendants' second argument in their Motion is that the indictment should be dismissed because they did not work "in the order processing department confirming or checking patient names, duties performed by other employees at NECC." Mot. at 6. The defendants further argue that Barry Cadden, as the owner of NECC and the head pharmacist, was really the one responsible for dispensing the drugs at NECC. Id. at 7. Once again, the defendants'

argument on this point is purely a sufficiency of the evidence challenge that should be resolved by a jury at trial.

The indictment alleges that defendants Chin and Thomas, as licensed pharmacists, are authorized "to dispense drugs pursuant to a valid prescription from a medical practitioner." Indictment, at 5.  Furthermore, the indictment alleges that the defendants caused the drugs to be dispensed for each of the counts for which they are charged.  Id. at 56.  Specifically, the indictment states that the defendants "caused the drugs to be introduced and delivered into interstate commerce without the valid prescription of a practitioner licensed by law to administer the drugs."  Id.  Taking the allegations in the indictment as true, as the Court must at this stage, the indictment clearly alleges the defendants dispensed drugs.  It is not a defect in the indictment that others at NECC were involved in the drug dispensing process as well.  See e.g., United States v. Gen. Nutrition, Inc., 638 F. Supp. 556, 563 (W.D.N.Y. 1986) (denying a motion to dismiss the indictment based on a claim of the defendants' "relatively low position in the corporate hierarchy," on the grounds that the defendants' arguments "actually go to the sufficiency of the government's proof rather than to the legal basis of the indictment").

### III.    The FDCA Is Not Void for Vagueness as Applied to Defendants Chin and Thomas

The defendants' last argument in their Motion is that the statute is unconstitutionally vague as applied to them because "[n]either Chin nor Thomas was on notice that they as employees in the shipping department had an independent obligation to determine what laws and regulations governed NECC or that they were being followed…." Mot. at 8.  In sum, defendants Chin and Thomas argue that they, as licensed pharmacists, were unaware that they could not dispense drugs for patients named Chester Cheeto, Harry Potter, and Squeaky Wheel.  This argument is equally unavailing.

The vagueness argument the defendants put forth has been routinely rejected by courts throughout the country, which have upheld the FDCA generally, and § 353(b)(1) specifically, on numerous occasions. See, e.g., United States v. 2600 State Drugs, Inc., 235 F.2d 913, 916 (7th Cir. 1956) (holding that "any pharmacist who sold these drugs without a prescription would necessarily know that he was violating the Food and Drug Act"); United States v. Forester, 346 F.2d 685, 686 (4th Cir. 1965) (affirming denial of vagueness challenge to § 353(b)(1)); United States v. Travia, 180 F. Supp. 2d 115, 123 (D.C.D.C. 2001) ("Congress has provided sufficient notice through these provisions; they are not so vague or standardless that the ordinary public is left uncertain as to what is prohibited."). As the district court stated in General Nutrition Inc., "this Court is unaware of any case holding any provision of the Act void for vagueness in any circumstance." 638 F. Supp. at 564.

Central to the holdings in these cases is that courts "must give effect to congressional intent in view of the well-accepted principle that remedial legislation such as the Food, Drug, and Cosmetic Act is to be given a liberal construction consistent with the Act's overriding purpose to protect the public health…." United States v. Article of Drug…Bacto-Unidisk…, 394 U.S. 784, 798 (1969). In rejecting a vagueness challenge with respect to § 353(b)(1), the Seventh Circuit explained, "[a]nother factor which we must consider in the instant case is the fact that the provisions of the sections of the Act here under consideration were meant to bind pharmacists and to subject them to penalties in case of violations." 2600 State Drugs, Inc., 235 F.2d at 916. Accordingly, the Seventh Circuit concluded that, "[i]t would seem clear that any pharmacist who sold these drugs without a prescription would necessarily know that he was violating the Food and Drug Act but that in order to make such sales the defendants were willing to defy the prohibitions of the Act." Id.

Similar facts here implicate these defendants' professional duties, and direct the Court to deny their vagueness challenge.   Defendants Chin and Thomas are licensed pharmacists in Massachusetts with specialized knowledge that only a pharmacist (or medical practitioner) can dispense prescription drugs.  See Mass. Gen. Laws ch. 112, § 30 ("No person shall dispense any controlled substance or any substance intended for hypodermic use except a person registered as a pharmacist…."). The defendants' arguments that they were unaware that the drugs could not be dispensed without a prescription or that they were operating within a statutory exception are unpersuasive.[2]   Moreover, any argument to that effect – that is, some statutory exception authorized dispensing drugs in the names of celebrities and fictional characters – is a factual defense that should be reserved for a jury's determination.[3]   See e.g., United States v. Gen. Nutrition, Inc., 638 F. Supp. 556, 563 (W.D.N.Y. 1986) (noting the defendants' supposed vagueness arguments "actually go to the sufficiency of the government's proof rather than to the

---

[2]  In their Motion, the defendants cite three statutory exceptions that are inapplicable to the defendants' case: (1) 21 U.S.C. § 353(b)(2) provides exceptions to some labeling and packaging requirements not at issue in this case, but is silent as to the requirement for valid prescriptions to dispense drugs; (2) 21 U.S.C. § 353(c)(3)(B)(iii) provides for the sale of prescription drugs among hospitals and medical centers "which are under common control;" and (3) 21 U.S.C. § 353(e) provides for an exception to the prescription requirement for drug wholesalers which was added to the FDCA by Congress in November 2013.  None of these exceptions have anything to do with the act of a pharmacist dispensing drugs in 2011 and 2012 pursuant to fraudulent prescriptions bearing the names of celebrity and fictional patients.
  The exhibits attached to their Motion are equally ineffective in supporting the defendants' argument that they were unaware that the drugs were being dispensed without a prescription.  The defendants completed paperwork entitled, "Pharmacist's Rx Order Verification Sheet."  Mot. Exh. 1.  The orders themselves were titled, "Prescription Order Form."  Mot. Exh. 2.  The prescriptions that NECC created with the bogus names carried the warning, "Caution: Federal law prohibits transfer of this drug to any other person than patient for whom prescribed."  Mot. Exh. 3.

[3]  The defendants' vagueness arguments are replete with unsupported factual allegations concerning what the defendants knew, what they saw, and what their specific responsibilities were.  See Mot. at 9 ("Chin and Thomas were entitled to rely on NECC and on Barry Cadden as co-owner, head pharmacist, and Manager of Record…."); id. at 10 ("Both Chin and Thomas knew that they had not been hired, and were not being paid, to do that job."); id. at 10 n.5 ("In fact that government has no evidence that Chin ever knew that the orders contained fake patient names"); id. ("when [Thomas] noticed what looked like a fake patient name she brought it to her superior's attention and was told they would fix it").  These are all factual issues for a jury to decide if the defendants wish to raise them at trial.

legal basis of the indictment").  Accordingly, the Motion should be dismissed on this ground as

well.[4]

## <u>CONCLUSION</u>

For the above reasons, the United States respectfully requests that the Court deny the

Motion.

<div style="margin-left: 50%;">

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY


By:     /s/ George P. Varghese
        AMANDA P.M. STRACHAN
        BBO # 641108
        GEORGE P. VARGHESE
        Assistant United States Attorneys
        John J. Moakley United States Courthouse
        One Courthouse Way, Suite 9200
        Boston, Massachusetts 02210
        (617) 748-3100
        amanda.strachan@usdoj.gov
        george.varghese@usdoj.gov

</div>

Dated:  November 4, 2015

---

[4] The defendants make two final erroneous arguments in support of their claim.  First, they argue that the statute is unconstitutionally vague because 21 U.S.C. § 333(a)(1) imposes strict liability for criminal violations.  However, the penalties Congress chose to enforce its statutory scheme bear no significance as to whether the statute has "provide[d] fair warning and clear definition of its prohibition."  <u>Gen. Nutrition, Inc.</u>, 638 F. Supp. 2d at 564.  "This is a statute directed at common sense."  <u>Id.</u>  Any person, especially a licensed pharmacist, would know that drugs should not be dispensed to patients named Filet O'Fish, Coco Puff, and Harry Potter.

Second, the defendants argue that "the term 'dispense' in the statute is so vague and ambiguous that the statute is void on its face."  Mot. at 8 n.3.  This argument, which the defendants relegate to a footnote, is equally unconvincing.  The defendants present no argument in support of this claim.  Indeed, the shipment of drugs from a pharmacist at a compounding pharmacy to health care professionals pursuant to fraudulent "prescriptions" qualifies as "dispensing" under § 353(b)(1) of the FDCA.  <u>See</u> e.g., <u>Nazir</u>, 211 F. Supp. 2d at 1373 (charging a pharmacist and a compounding pharmacy with dispensing drugs without a prescription by filling fraudulent prescriptions and sending bulk shipments of drugs to a health care professional).  As alleged in the indictment, NECC was licensed as a pharmacy, not as a manufacturer, distributor, or wholesaler, and therefore its pharmacists could only dispense medication pursuant to valid prescriptions.  Accordingly, the Motion should be denied on this ground as well.

<u>Certificate of Service</u>

I hereby certify that the foregoing documents filed through the ECF system will be sent electronically to counsel for the defendants, who are registered participants as identified on the Notice of Electronic Filing (NEF).

By:     /s/ George P. Varghese
        GEORGE P. VARGHESE
        Assistant United States Attorney

Dated:  November 4, 2015