UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
UNITED STATES OF AMERICA       )
                                          )          Court No.:  14-cr-10363-RGS
        v.                                )
                                          )
BARRY J. CADDEN, et al.,          )
                                          )
        Defendants.                   )
_____)

## GOVERNMENT'S OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION TO COMPEL DISCOVERY

This is a criminal case, governed by the federal and local rules, and the relevant case law that apply to criminal cases.  The defendants would like it not to be, and instead would prefer that it be a civil case subject to civil discovery, including "documents, interrogatories, depositions – to flesh out the facts of that dispute."  Consolidated Motion to Compel Discovery [hereinafter, the "Motion"] at 1.  In their Motion, the defendants do not cite any federal or local rules, or any case law, for their civil discovery requests, and instead chastise the government for following the law.  See id. ("If there is no case citation or rule to support a request…the government refused to comply, pointing to the lack of a case or rule requiring it to do so.").  The government has fully complied with all of its discovery obligations under the federal and local rules in this criminal case.  In fact, the government's 8.9 million-page discovery production has gone well beyond what the criminal discovery rules and case law require.  Furthermore, the government has made significant efforts to assist defense counsel in navigating the discovery productions in this case.  Nonetheless, the defendants are still unsatisfied, and therefore file this Motion.  But the defendants yet again cite no authority and ignore this Court's prior discovery orders in this case.  Accordingly, the Motion should be denied.

## BACKGROUND

### The Discovery Productions

The government's discovery productions have been described in detail in previous filings.  In summary, the government has made seven discovery productions to date totaling more than 8.9 million Bates-numbered pages that are clearly organized and navigable, particularly in light of the volume of discovery provided.  The government organized the discovery into electronic folders labeled to reflect the contents of each folder in order to help defense counsel navigate the production and locate relevant documents.  Accompanying each of the seven productions were detailed cover letters describing the information provided in the productions, the file organization and location where the information was stored, and the corresponding Bates range of the information.  Included in the initial discovery production was a folder labeled "Indictment Counts," which contained records and documents most relevant, in the government's view, to the 131 counts in the indictment, organized by count.  The government provided counsel the Bates numbers for each e-mail obtained from computer servers belonging to New England Compounding Center ("NECC") that the government designated to date in its own review as "hot" or "relevant."

The seven discovery productions also include thirty searchable load-ready electronic databases.  For each of the seven productions, the government offered to assist (and has assisted) counsel, and the national discovery coordinator, when they have had specific questions about the productions.  Furthermore, pursuant to Judge Stearns' order, the government will disclose a preliminary exhibit list to the defendants by November 30, 2015.

Even the defendants initially acknowledged the government's "commendable effort to provide these voluminous materials in an organized manner."  Defendants' Memorandum in

Support of Preliminary Motion to Compel Discovery (Doc. No. 231) at 2; see also id. at 17 ("As Defendants have noted, the Government has done a commendable job of organizing the automatic discovery it has produced.").  Since then, however, the defendants have changed their tune, and now claim the government is following a "hide-the-ball" approach.  Both the manner in which the government produced discovery, and the substance within it, debunks this new claim. The Court should deny the Motion.

## ARGUMENT

**I.**     **Rule 16 and Related Information.**

      **A.**     **The Government's Witness List.**

The defendants' first argument is that the government should be required to produce a complete witness list for its case-in-chief in discovery.  It is well settled that Rule 16 does not require the government to furnish a witness list in discovery.  See United States v. Sclamo, 578 F.2d 888, 890 n.1 (1st Cir. 1978) (holding that Rule 16 does not require the government to furnish a witness list in discovery); United States v. Johnson, 1998 WL 42409, at *1 (D. Mass. Apr. 12, 1988) (Wolf, J.) ("Rule 16 does not require disclosure of witnesses at this time."); United States v. Friel, 2006 WL 2061395, at *1 (D. Maine  Jul. 21, 2006) ("Neither Federal Rule of Criminal Procedure 16 (which is cited by the defendant) nor any other authority affords a criminal defendant a pretrial right to discover the government's witness list in a non-capital case.").  Judge Wolf found in Johnson that "it would be inappropriate to order the disclosure of the government's witness list" where Rule 16 did not require it and the defendant was already aware of the identity of several witnesses.  1998 WL 42409, at *1.

In this case, the government has already provided to the defendants in discovery interview memoranda and the underlying agents' notes of approximately 323 individuals whom the government interviewed during the course of its two-year investigation.  Thus, as was the

case in <u>Johnson</u>, the defendants are well aware of several potential government witnesses.  <u>See</u> <u>id.</u> (noting that disclosure of government investigative reports "would have the effect of revealing the identity and remarks of likely trial witnesses").  Moreover, by November 30, 2015, pursuant to Judge Stearns' order, the government will disclose to the defendants its preliminary exhibit list for trial.  Mem. and Order on Appeal of a Decision of the Magistrate Judge (Docket No. 347) [hereinafter "the Appeal Order"], at 8.  The exhibit list will further inform the defendants which of the individuals interviewed during the government's investigation will likely be called for trial in this matter.  Accordingly, the government submits that "it would be inappropriate to order the disclosure of the government's witness list now." <u>Johnson</u>, 1998 WL 42409, at *1.

While Judge Stearns has set a date of March 28, 2016, by which time the government must produce to the defendants a list of its potential witnesses, <u>see</u> Order Setting Case for Criminal Trial (Docket No. 282) [hereinafter, "Trial Order"], at 1, the government believes an earlier mutual exchange of witness lists may benefit the parties as they prepare for trial. Accordingly, the government suggests that it disclose a preliminary witness list to the defendants by **February 1, 2016**, a full two months prior to the scheduled trial, and that the Court order the defendants to disclose a preliminary witness list by **March 1, 2016**.

### B.    A Date Certain by Which the Government Will Share All Jencks Material.

Throughout the discovery process, the defendants have repeatedly requested from the government that to which they are not yet entitled: the grand jury transcripts.  Rule 16 specifically exempts grand jury transcripts from the government's disclosure obligations.  <u>See</u> Fed. R. Crim. P. 16(a)(2)(3) (noting "[t]his rule does not apply to discovery or inspection of a grand jury's recorded proceedings").  Furthermore, courts, including those in this district, have held that grand jury transcripts of potential government witnesses are not subject to pretrial

discovery to the defense.  <u>See</u> <u>United States v. Liuzzo</u>, 739 F.2d 541, 544 (11th Cir. 1984) (holding that the Jencks Act precludes pretrial disclosure of grand jury testimony of government witnesses); <u>United States v. Campagnuolo</u>, 592 F.2d 852 (5th Cir. 1979) (same); <u>United States v. Callahan</u>, 534 F.2d 763, 766 (7th Cir. 1976) (same); <u>United States v Tager</u>, 481 F.2d 97, 100 (10th Cir. 1973) (same); <u>United States v. Eisenberg</u>, 469 F.2d 156, 160 (8th Cir. 1972) (same). As Magistrate Judge Bowler explained in <u>United States v. Mazzola</u>, 183 F. Supp. 2d 195, 197 n.1 (D. Mass. 2001) (internal citations omitted), "[b]y operation of the Jencks Act, grand jury testimony of prospective government witnesses is not subject to pretrial disclosure.  Stated otherwise, Rule 6(e)(3)[(E)] does not authorize this Court to direct pretrial production of grand jury testimony also constituting Jencks Act material."

In its Order on Defendants' Preliminary Motion to Compel Discovery (Docket No. 288) [hereinafter "Discovery Order"], this Court followed that well-settled precedent, and held that the defendants "provided no basis for obtaining grand jury transcripts and exhibits at this time." Discovery Order, at 13.  Judge Stearns affirmed that ruling, holding that "I fully agree with the Magistrate Judge that defendants have failed to show that they fall within the one recognized exception to the Jencks Act protections of grand jury secrecy."  Appeal Order, at 9.

In their Motion, the defendants offered no new argument in support of their request for early disclosure of Jencks Act material.  Instead, the defendants' wrongly claim that the government is "reluctan[t] to provide Jencks information a moment before it might be required to do so under the rules."  Mot. at 5.  As it has represented several times to the defendants, this Court, and Judge Stearns, the government has always intended to disclose the remainder of its Jencks Act material prior to trial, earlier than what is required by statute.  <u>See</u> 18 U.S.C. § 3500(a) (requiring the government to disclose witness statements after "said witness has testified

on direct examination in the trial of the case").  In fact, the government intends to disclose the remainder of its Jencks Act material to the defendants by **February 1, 2016**, a full two months prior to the scheduled trial date in this case.  Accordingly, the Motion should be denied on this ground.

### C.    All Interview Memoranda and Notes of Interviews Not Previously Provided.

Despite the fact that the government has provided to the defendants interview memoranda and the underlying agents' notes of approximately 323 individuals whom the government interviewed,[1] the defendants argue that they should be entitled to the interview memoranda within two weeks following an interview, and asks the Court to impose a deadline to complete its discovery.[2]  In support of this request, the defendants cite no authority whatsoever.

Rule 16(c) imposes on the government a continuing duty to disclose discoverable information.  The rules recognize that the government's investigation does not end at the return of the indictment.  Indeed, the government's investigation, as well as its discovery obligations, continues throughout a trial in this case.  See United States v. Ferrer-Cruz, 899 F.2d 135, 140 (1st Cir. 1990) (holding that the government properly disclosed newly discovered evidence prior to the government's rebuttal case pursuant to its continuing obligations under Rule 16(c)).  In this case, the government has continued investigating the defendants, including conducting more

---

[1]  As the government has noted, interview memoranda and underlying agents' notes are not discoverable information under Rule 16(a)(2).  See Fed. R. Crim. P. 16(a)(2) ("[T]his rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigation or prosecuting the case."); United States v. Jordan, 316 F.3d 1215, 1253 (11th Cir. 2003) (noting that interview memoranda are not discoverable); Johnson, 1998 WL 42409, at *1 ("Rule 16 does not require disclosure of investigative reports.").  Nevertheless, the government disclosed the interview memoranda and underlying agents' notes for all individuals it interviewed during the course of its two-year criminal investigation.  This fact further undercuts the defendants' unfounded and impertinent allegation that the government is trying to "keep[] defendants from getting anything more than bare bones information in this case."  Mot. at 2.

[2]  Despite lacking any basis to do so, the defendants also ask the Court to order the government to "provide all interview memoranda in its possession within one week."  Mot. at 6.  The government's last discovery production, on November 4, 2015, provided the defendants with all memoranda the government possessed as of that date.  When the government receives additional memoranda, it will disclose them to the defendants pursuant to Rule 16(c).

interviews with potential witnesses.  Once the government receives the agents' memoranda and underlying notes, they are disclosed to the defendants promptly.  Any suggestion by the defendants that the government is delaying its production of recently completed interview memoranda to gain some tactical advantage is irresponsible, and, like their other attacks on government counsel, completely unfounded.

Moreover, in their Motion, the defendants make the unprecedented and extraordinary request of asking the Court to impose a discovery deadline.  A discovery deadline is improper in a criminal case because it either means (i) that the government is prohibited from further investigating the case, or (ii) not disclosing newly discovered evidence.  Neither of these alternatives is lawful.  The defendants' suggestion is fundamentally at odds with the criminal justice system, and contravenes the Constitution and the Rules of Criminal Procedure.  See United States v. McVeigh, 954 F. Supp. 1441, 1451 (D. Colo. 1997) ("The continuing duty of discovery on request under Rule 16(c) and the constitutional mandate to be informed of and produce exculpatory information and material under *Brady* make discovery a dynamic process and preclude any adjudication that there has been adequate compliance at any time before trial, or, indeed, during trial, when, as here, both parties are conducting ongoing investigations."). Accordingly, the Motion should be denied on this ground as well.

    **D.**    **The Identities of All Expert Witnesses Whom the Government Intends to Use During its Case-In-Chief.**

Pursuant to Rule 16(a)(1)(G), "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony the government intends to use under Rule 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. 16(a)(1)(G).  Judge Stearns has set a date of March 28, 2016, by which time the government must produce to the defendants a list of its expert witnesses, as well as any reciprocal disclosure

produced by the defendants.  Trial Order, at 1.  To assist the parties in their trial preparation, the government is willing to disclose its expert witnesses to the defendants earlier, by **February 15, 2016**.  In turn, the government requests this Court order the defendants to disclose its potential expert witnesses by **March 1, 2016**.

      **E.**      **All Evidence the Government Intends to Offer Under Federal Rule 404(b).**

Pursuant to Rule 404(b) of the Federal Rules of Evidence, evidence of a defendant's other crimes may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  In order to do so, the government must "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial" prior to trial.  Id.  Courts have noted however, that where the evidence is "admissible as direct proof of the scheme charged, application of Rule 404(b) was unnecessary."  United States v. Santagata, 924 F.2d 391, 394 (1st Cir. 1991); see also id. at 393 (holding that evidence of fraudulent transactions beyond those specifically enumerated in the indictment was independently admissible to prove the scheme to defraud); United States v. Nivica, 887 F.2d 1110, 1119 (1st Cir. 1989) (holding that where evidence was "part and parcel of the charged offense," it is "independently admissible" and "404(b) has no bearing"); United States v. Fields, 871 F.2d 188, 194 (1st Cir. 1989) (finding that other criminal acts in further of the conspiracy are "inextricably intertwined" and directly admissible where the acts are "linked in time and circumstance with the crime charged, or if it is necessary to complete the picture of the crime on trial").

In this case, the government has informed the defendants of its intent to elicit such "inextricably intertwined" and independently admissible evidence of the alleged mail fraud scheme.  Specifically, on November 3, 2015, during a conference call with the defendants regarding the Motion, the government notified the defendants of its intent to introduce evidence

of other fraudulent transactions beyond those specifically charged in the indictment. Specifically, the government indicated that it would seek to introduce other NECC drug shipments that involved: non-sterile drugs, untested drugs, expired drugs, and drugs manufactured by an unlicensed pharmacy technician.  In addition, in its Opposition to defendant Kathy Chin's Motion to Sever (Doc. No. 344), the government indicated that it would seek to introduce other drug shipments sent by NECC in the names of fake patients beyond just those identified in the indictment.  All of these documents and records underlying these additional fraudulent transactions were part of the alleged mail fraud scheme and were disclosed to the defendants in the government's earliest discovery productions in January and February 2015. Many of the documents and records underlying these additional fraudulent transactions will be included in the government's preliminary exhibit list that will be disclosed to the defendants on November 30, 2015.  The government submits that all of these other fraudulent transactions are "admissible as direct proof of the scheme charged," Santagata, 924 F.2d at 394, rather than as 404(b) evidence.   Nevertheless, out of an abundance of caution, the government intends to provide the defendants with formal notice pursuant to Rule 404(b) of these transactions, and any evidence it intends to offer pursuant to Rule 404(b), by **February 1, 2016,** a full two months prior to the scheduled trial date in this case.

## II.    Identification of Brady and Giglio Material.

In its Motion, the defendants make more than fifty requests of the government to identify potentially exculpatory material within the government's discovery productions. [3]  Specifically,

---

[3] In part II.C of their Motion, the defendants also request additional information regarding government disclosures relating to two of the Food and Drug Administration's ("FDA") laboratories.  The government has provided extensive documents and records about these issues, as well as interview memoranda and agents' notes of the employees at the lab involved in the NECC case.  The government has also provided the defendants with the FDA's related internal audit report and an 813-page Office of Internal Affairs ("OIA") report.  On the meet-and-confer conference call for this Motion, the defendants requested additional information regarding the OIA report, which the government is evaluating.  In their Motion, the defendants make unfounded and irrelevant requests, including one

the defendants state, "[i]t should go without saying that, at a minimum, the government should be required to give defendants, or identify specifically, all exculpatory documents or other information of which *it is aware* in that 8.8 million documents."  Mot. at 9.  As this Court knows, this is not the first time the defendants have made this request.  The defendants made this same argument before this Court without success.  The defendants appealed the Court's ruling on this point to Judge Stearns without success.  Judge Stearns wrote, the "[d]efendants' final request, that the government be required to designate all known *Brady* material within the discovery it has produced, is a make-work request of no particular benefit that would serve no purpose other than manufacturing grounds for an eventual appeal."  Appeal Order, at 9 (emphasis added).

The rulings of this Court and Judge Stearns are in line with the vast majority of courts that have addressed the issue.  See e.g., United States v. Skilling, 554 F.3d 529, 576 (5th Cir. 2009) ("As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence."); United States v. Marrero, 904 F.2d 251, 261 (5th Cir. 1990) ("While the Supreme Court in Brady held that the government may not properly conceal exculpatory evidence from a defendant, it does not place any burden on the government to conduct a defendant's investigation or assist in the presentation of the defense's case."); United States v. W.R. Grace, 401 F. Supp. 2d 1069, 1078-81 (D. Mont. 2005) ("There is no reason to assume that the government is better equipped through resources or knowledge to locate exculpatory documents than are the defendants.").

The defendants' argument also ignores the law-of-the-case doctrine, which holds that "a legal decision made at one stage of a civil or criminal case constitutes law of the case throughout the pendency of the litigation.  This means that a court ordinarily ought to respect and follow its

---

for information about "the CDC small pox" incident.  Mot. at 14.  The government fails to understand how the June 2014 incident involving the mishandling of two vials of small pox virus at the National Institutes of Health is relevant to this case.

own rulings, made earlier in the same case." <u>Ellis v. United States</u>, 313 F.3d 636, 646 (1st Cir. 2002).

Undaunted by the prior rulings of this Court, Judge Stearns, and the voluminous case law against them, the defendants now argue again the exact same point. In support of this unchanged and repeated argument, the defendants cite no new authority except a six-year old opinion article written by two criminal defense attorneys. <u>See</u> Mot. at 9 (<u>citing</u> J. Cohen & D. Walsman, *The Brady Dump: Problems with "Open File" Discovery*, 242 N.Y. L Journal (Sept. 4, 2009)). The scarcity of authority in the defendants' Motion reveals the strength of its argument. The rulings of this Court and Judge Stearns are the law of the case, and should be respected. Accordingly, the Motion should be denied on this ground.

## III.   The Government's Correspondence with State Agents.

In their Motion, the defendants request that the government disclose information about the government's communications with state agents, specifically the Michigan Attorney General's Office ("MIAG"). As grounds for this request, the defendants allege, without any basis, that "[t]he government has exerted an extraordinary degree of control over other state and federal authorities in any matter relating to NECC, often behind the scenes." Mot. at 14. Once again, this is not a new argument. The issue has already been decided in this case. Specifically, this Court held that, "Defendants have not shown any evidence that the Indictment in this case resulted from a specific cooperative effort between federal and Michigan prosecutors." Discovery Order, at 9. Judge Stearns affirmed this ruling.

The defendants have not put forth any new evidence or argument to support reconsideration of those rulings. Instead, the defendants make an unfounded and speculative <u>Brady</u> argument that communications may exist between the government and state officials

indicating that defendants Cadden and Chin are not guilty of second-degree murder under state law.  No such communications exist, and therefore this Motion should be denied.

## IV.   Discovery of the Grand Jury Evidence and Legal Instructions Pertaining to Count 3.

The defendants' next argument is that the Court should order the government to disclose grand jury evidence and legal instructions pertaining to Count 3 of the indictment on the grounds that it contains "false information, insinuation and omits crucial information that undermines the conclusory allegations."  Mot. at 17.  Once again, the defendants' argument is meritless.

"It is now well settled that '[a]n indictment returned by a legally constituted and unbiased grand jury…if valid on its face, is enough to call for trial of the charge on the merits.'"  United States v. Maceo, 873 F.2d 1, 2-3 (1st Cir. 1989) (quoting Costello v. United States, 350 U.S. 359, 363 (1956)).  "The 'indispensable secrecy of grand jury proceedings must not be broken except where there is a compelling necessity.'"  United States v. Capozzi, 486 F.3d 711, 727 (1st Cir. 2007) (quoting United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958)).  To pierce the indispensable secrecy of the grand jury pursuant to Rule 6(e)(3)(E), the defendants must show a "particularized need" for the grand jury material, "that is, that 1) the material sought is needed to avoid a possible injustice in another judicial proceeding, 2) the need for disclosure outweighs the need for continued secrecy and 3) the request is structured to cover only what is needed."  United States v. George, 839 F.Supp. 2d 430, 437 (D. Mass. 2012) (citing Douglas Oil Co. v. Petrol Stops Nw., 441 U.S. 211, 222 (1979)).  "The burden of showing particularized need rests squarely on the defendant."  Capozzi, 486 F.3d at 727.  Courts have made clear however, that Rule 6(e)(3)(E) "is not an invitation to engage in a fishing expedition to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse has occurred."  United States v. Acherman, 2015 WL 6126811, at *2 (D. Mass.  Oct. 16, 2015).

With respect to the evidence presented to the grand jury in order to return an indictment, the First Circuit has held that "[a] court should not inquire into the sufficiency of the evidence before the indicting grand jury, because the grand jury proceeding is a preliminary phase of the criminal justice process and all constitutional protections will be afforded during trial." Maceo, 873 F.2d at 3. As the Supreme Court has explained:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment.

Costello v. United States, 350 U.S. at 363; see also id. at 362 ("[N]either the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act."); Capozzi, 486 F.3d at 726 (affirming district court holding that "[t]he sufficiency of the evidence is for trial and the court should not inquire as to the sufficiency of the evidence before the grand jury"); United States v. Munoz-Franco, 14 F. Supp. 2d 167, 169 (D. Puerto Rico 1998) ("We have found no authority that requires a prosecutor to anticipate defense theories and to explain them before the grand jury."). With respect to legal instructions, the First Circuit has held that "under federal law the prosecutor is not obligated to provide legal instruction to the grand jury." United States v. Lopez-Lopez, 282 F.3d 1, 9 (1st Cir. 2002); see also Munoz-Franco, 14 F. Supp. 2d at 169 ("Instructions are sufficient if the prosecutor reads the statutory language defining the elements of the offense.").

Applying this substantial case law to the defendants' argument, the Motion must clearly fail. The defendants allege that the indictment "includes false information, insinuation and omits crucial information that undermines the conclusory allegations." Mot. at 17. The defendants

allege the following statements in the indictment are false: "NECC 'held itself out as a compounding-only pharmacy;'" "purported to be operating NECC as a state-regulated pharmacy;" "NECC was operating as a pharmacy 'rather than as a drug manufacturer.'"  Mot. 17-18.  Next, the defendants further allege that crucial information was omitted from the grand jury, that is, that the FDA was aware of, and approved of NECC's activities.  Id. at 18-19. Lastly, the defendants allege that while the indictment was correct that NECC was required to obtain prescriptions, the "prescriptions" described in the indictment are in fact valid.  Id.

As is plainly evident, all of the defendants' allegations are factual disputes: whether NECC was a pharmacy or a manufacturer; what the FDA knew about NECC's activities and approved; and whether NECC drug orders, including those dispensed using celebrity and fictional patient names, patient-name waivers, and patient ratios are valid prescriptions for actual patients.  The Motion is nothing more than an attack on the sufficiency of the evidence that the grand jury heard before returning the indictment in this case.  All of these arguments should be reserved for a jury at trial on the merits of Count 3.  The defendants offer no argument that they have a "particularized need" for grand jury evidence and instructions, and accordingly the Motion must be denied.

## V.      Materials Identified in the Defendants' Denied Motion for Bill of Particulars.

The defendants' next argument is that the Court should order the government to disclose the information it requested in its now-denied Motion for Bill of Particulars (Doc. No. 336).  As the Court knows, the defendants' Motion for Bill of Particulars was seeking an extremely detailed accounting of the nature of the evidence the government will use at trial.  Specifically, the defendants listed eight pages of specific requests.  The plain language of these numerous requests sought each piece of evidence the government intended to use at trial, and the government's assistance in explaining its significance.  For example, request numbers 15-23

asked the government to identify the evidence it will use to prove the second-degree murders charged in the Indictment.  Request number 11 asked the government to identify the evidence it will use to prove that the cleaning logs were fraudulent.  Request number 39 asked the government to "[e]xplain how this email was false or misleading and how it was material to NECC's intent to avoid FDA oversight."  Mot. for Bill of Particulars, at 20, para. 39.  None of these were proper requests for a bill of particulars, and neither are they proper discovery requests.

As this Court is aware, Rule 16 does not require the government to reveal its trial strategy in discovery.  See United States v. Scrushy, 2004 WL 483264, at *3 (N.D. Ala.  Mar. 3, 2004) ("The obligation imposed by Rule 16 is one of discovery, to make certain categories available to the defense.  The rule does not impose a duty on the Government to tip its hand prematurely by requiring it to give the defendant a roadmap of its strategy.").  Nor does Rule 16 require the government to work on behalf of the defendants.  See e.g., United States v. Ohle, 2011 WL 651849, at *4 (S.D.N.Y.  Feb. 7, 2011) (holding that where the government and the defense have equal access to an "electronically searchable Concordance database," the defense is just as likely as the government to uncover sought-for evidence); United States v. Marrero, 904 F.2d 251, 261 (5th Cir. 1990) (holding the burden does not rest on "the government to conduct a defendant's investigation or assist in the presentation of the defense's case").  All Rule 16 requires is that discoverable information be disclosed to the defendants.  The government has met its discovery obligations with respect to the Bill of Particulars requests.  Accordingly, this request in the Motion should be denied as well.

**VI.      Government Search of Seized Electronic Media.**

The last argument in the defendants' Motion is that the Court should order the
government to disclose information regarding how the government executed its search warrants
on the electronic media seized from NECC.  This issue is not properly before the Court.  On
October 30, 2015, four days before the defendants filed this Motion, the defendants sent a letter
to the government asking specific technical questions regarding the government's search
protocol.  On November 3, 2015, the same day the defendants filed this Motion, the defendants
sent a second letter with additional questions.  A third letter was sent to the government on
November 11, 2015.  The government responded to these multiple discovery questions on
November 16, 2015.  Accordingly, since the defendants have not complied with Local Rule
116.3(e) with respect to this premature discovery request, which in any event is now moot, the
Motion should be denied.

## CONCLUSION

For the above reasons, the United States respectfully requests that the Court deny the

Motion in its entirety.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY


By:   /s/ George P. Varghese
       AMANDA P.M. STRACHAN
       BBO # 641108
       GEORGE P. VARGHESE
       Assistant United States Attorneys
       John J. Moakley United States Courthouse
       One Courthouse Way, Suite 9200
       Boston, Massachusetts 02210
       (617) 748-3100
       amanda.strachan@usdoj.gov
       george.varghese@usdoj.gov

Dated:  November 17, 2015


## Certificate of Service

I hereby certify that the foregoing documents filed through the ECF system will be sent electronically to counsel for the defendants, who are registered participants as identified on the Notice of Electronic Filing (NEF).


By:   /s/ George P. Varghese
       AMANDA P.M. STRACHAN
       Assistant United States Attorney

Dated:  November 17, 2015