UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA          )
                                  )
          v.                      )          Court No.:  14-cr-10363-RGS
                                  )
BARRY J. CADDEN, et al.,          )
                                  )
          Defendants.             )
_____ )

**GOVERNMENT'S RESPONSE TO
DEFENDANTS' JOINT MOTION TO SEVER**

The United States of America hereby responds to the Motion for Severance (hereinafter, the "Motion") filed by defendants Gene Svirskiy, Christopher Leary, Joseph Evanosky, Scott Connolly, Sharon Carter, Alla Stepanets, Robert Ronzio, and Michelle Thomas (collectively, the "defendants").  The government submits that the defendants were properly joined in the indictment under Rule 8 of the Federal Rules of Criminal Procedure, and severance is not warranted under Rule 14.  Nevertheless, if the Court, pursuant to its inherent case management authority, wishes to sever the case, the government does not oppose severing the trial of defendants Barry Cadden and Glenn Chin entirely from the trial of the defendants (and defendant Kathy Chin[1]), with the trial of Cadden and Chin on all counts for which they are charged proceeding first, followed shortly thereafter with a trial of the defendants (and defendant Kathy Chin).[2]  The government's reasons are more fully set forth below.

_____

[1]  On September 14, 2015, defendant Kathy Chin filed a motion to sever her trial from that of the other thirteen defendants (Doc. No. 335).  On September 28, 2015, the government filed its opposition (Doc. No. 344).

[2]  On October 21, 2015, the Court granted the motion to sever filed by defendants Carla Conigliaro and Douglas Conigliaro (Doc. No. 354), to which the government assented.  Accordingly, the government does not address these defendants in this response.  The government requests that the trial of Carla and Douglas Conigliaro be set following any other trials in this case.

# BACKGROUND

## *The Fungal Meningitis Outbreak*

This criminal case arose from the nationwide outbreak of fungal meningitis traced to epidural steroid injections of methylprednisolone acetate ("MPA") compounded by New England Compounding Pharmacy, Inc., doing business as New England Compounding Center ("NECC"). During the outbreak, the U.S. Centers for Disease Control and Prevention ("CDC") confirmed fungal infection in patients treated with MPA injections sold by NECC to customers in twenty-three states. The CDC and the Food and Drug Administration ("FDA") confirmed the presence of mold in multiple unopened vials of three different lots of MPA made by NECC and obtained from NECC's facility in Massachusetts and from samples collected from NECC customers around the country. The CDC reported that, as of October 2013, approximately 751 patients, living in twenty states, were diagnosed with a fungal infection after receiving injections compounded at NECC, of which 64 died. The criminal investigation revealed that the number of victims continued to rise after that date.

## *The Indictment*

Following a two-year criminal investigation, a federal grand jury sitting in this district returned a 131-count indictment against fourteen defendants. See Indictment (Doc. No. 1). The criminal indictment is not limited to the contaminated MPA and the fungal meningitis outbreak, but rather alleges widespread criminal conduct throughout NECC. In fact, the indictment alleges that NECC and its affiliated company, Medical Sales Management Inc. ("MSM"), operated as a criminal enterprise whose objective was to obtain money and property through materially false and fraudulent representations about its drug products and its compounding practices. Id. at 11. Specifically, the indictment alleges that the unsafe and substandard production practices at

NECC, coupled with the insanitary conditions within the clean rooms, including the mold and bacteria growing continuously within them during the summer of 2012, led to the contamination of the three lots of MPA, as well as resulted in a number of other dangerous drugs produced by NECC, including non-sterile drugs, sub-potent drugs, untested drugs, expired drugs, and drugs produced by an unlicensed technician. These dangerous drugs were shipped to unsuspecting NECC customers throughout the country for use on their patients. The indictment further alleges that the use of the non-sterile MPA caused the deaths of twenty-five patients in seven different states.

The grand jury charged defendants Cadden and Chin with twenty-seven mail fraud racketeering acts related to the shipments of non-sterile MPA vials labeled as "injectable" to medical facilities throughout the country. The grand jury also charged defendants Cadden and Chin with twenty-five acts of second-degree murder for acting with extreme recklessness, and thereby causing the deaths of the twenty-five individuals named in the indictment. The grand jury further charged NECC's other clean room pharmacists, Svirskiy, Leary, and Evanosky, as well as Connolly, the unlicensed pharmacy technician, with mail fraud racketeering acts related to the other dangerous drugs for which they were responsible.

Count two of the indictment charges the six RICO defendants identified above, as well as defendant Carter, NECC's Director of Operations, and defendant Stepanets, a NECC pharmacist working outside the clean room, with conspiring in the production and shipment of dangerous drugs to customers.

Count three of the indictment alleges that NECC interfered with and obstructed the FDA by concealing the true nature of its business. Specifically, the indictment alleges that defendants Cadden, Carter, Ronzio, and Stepanets, along with defendant Gregory Conigliaro, conspired to,

among other things, create fraudulent prescriptions in order to represent to the FDA and state regulators that NECC was dispensing drugs only pursuant to valid, patient-specific prescriptions as required by Massachusetts law, when in fact it was not. Instead, the indictment alleges that NECC engaged in a number of different schemes to evade the requirement that it dispense drugs pursuant to valid prescriptions for actual patients, including patient-name waivers for certain drug orders, using the names of patients from prior orders, using the names of celebrities and fictional characters, and fraudulent ratios to calculate the number of patient names to justify various order sizes.

Following the first three counts, the indictment charges the RICO defendants with substantive mail fraud and Food, Drug, and Cosmetic Act ("FDCA") charges that overlap with the mail fraud racketeering acts. Lastly, the indictment charges defendants Cadden, Stepanets, Kathy Chin, and Thomas with FDCA violations for authorizing fifteen different shipments of drugs without valid prescriptions for actual patients. These fifteen shipments overlap with the overt acts identified in count three.

<u>*The Motion*</u>

Taken as a whole, the indictment reflects the breadth of the criminal conduct at NECC/MSM: from the unsafe production practices and insanitary conditions within the clean rooms where the drugs were made; to the conduct of the sales and operations employees who created fraudulent prescriptions; to the representations to the FDA and state regulators that all the drugs were dispensed pursuant to patient-specific prescriptions; to the checking pharmacists who dispensed the drugs without valid prescriptions for actual patients. Accordingly, it is beyond question that all the defendants were properly joined in the indictment pursuant to Rule 8(b). Indeed, in their Motion, the defendants do not suggest otherwise.

Instead, the defendants suggest that evidence of the contaminated MPA and the resulting deaths of twenty-five individuals would unduly prejudice them. The government submits, however, that the conduct at issue in the MPA racketeering acts, that is, NECC's unsafe and substandard production practices as well as the insanitary conditions within the clean room, is the same evidence that will be introduced against the defendants with respect to the other dangerous drugs they made. Furthermore, appropriate limiting instructions by the Court with respect to the admissibility of the evidence against each particular defendant and the need to determine guilt on an individual basis obviates any need for severance pursuant to Rule 14(a).

Nevertheless, if the Court, pursuant to its inherent case management authority, wishes to sever the case, the government submits that the only legally proper severance option is to sever the trial of all of the charges against defendants Cadden and Chin from the trial of the other defendants (and defendant Kathy Chin). The government further submits that a trial of Cadden and Chin on all counts for which they are charged should proceed first, followed shortly thereafter with a trial of the defendants (and defendant Kathy Chin).

## **ARGUMENT**

I. **There Is No "Spillover" Prejudice Preventing The Defendants From Receiving a Fair Trial.**

Pursuant to Rule 14(a), if joinder of defendants in an indictment appears to prejudice a defendant, the court may sever the defendants' trials. Fed. R. Crim. P. 14(a). "Because the general rule is that those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources, severance is particularly difficult to obtain where…multiple defendants share a single indictment." United States v. Soto-Beniquez, 356 F.3d 1, 29 (1st Cir. 2003). "To prevail on a claim of prejudicial spillover, a defendant must prove prejudice so pervasive that a miscarriage of justices looms." United States v. Levy-

Cordero, 67 F.3d 1002, 1008 (1st Cir. 1995). Prejudicial spillover requires more than a showing of joinder with a more culpable defendant. See United States v. Martinez-Vidal, 922 F.2d 914, 922 (1st Cir. 1991) ("We add that prejudice means more than just a better chance of acquittal at a separate trial. Incidental prejudice, such that which is almost always encountered when multiple defendants playing different roles are tried together, will not suffice."). The First Circuit has upheld the denial of severance "[e]ven when large amounts of testimony are irrelevant to one defendant, or where one defendant's involvement in an overall agreement is far less than the involvement of others." Boylan, 898 F.2d at 246. With respect to the possibility of spillover prejudice, the court has held that this can be "adequately neutralized by the giving of limiting instructions when needed or requested and by the closing directive to give each count and each defendant separate consideration." United States v. Aponte-Suarez, 905 F.2d 483, 494 (1st Cir. 1990); see also, United States v. Cresta, 825 F.2d 538, 555 (1st Cir. 1987) (recognizing "a possible risk of prejudice almost always exists when multiple defendants with different roles are tried together," and upholding verdict in light of district court's instructions to the jury to consider the evidence separately against each defendant on each count); United States v. Moreno Morales, 815 F.2d 725, 742 (1st Cir. 1987) (upholding denial of severance where district court gave "clear instruction warning the jury to consider each count separately"); United States v. Williams, 809 F.2d 75, 88 (1st Cir. 1986) (holding that "clear and complete limiting instructions…adequately eliminated the possible prejudicial spillover of evidence"); United States v. Rawwad, 807 F.2d 294, 296 (1st Cir. 1986) (holding that the court's limiting instructions "sufficiently safeguarded" against prejudicial spillover). Accordingly, in this Circuit, a motion to sever "is a difficult battle for a defendant to win." Boylan, 898 F.2d at 246; see also United States v. Neal, 36 F.3d 1190, 1207 (1st Cir. 1994) (explaining that "severance is

only one remedy – and certainly the most extreme – in the federal courts' remedial arsenal" (internal citation omitted)).

In their Motion, the defendants claim that evidence of "the excruciating deaths of twenty-five people" will result in "the risk of spillover prejudice and guilt by association [that] will be so high that the jury will be faced with an incredibly difficult challenge in separating the evidence against each defendant and reaching a reliable verdict." Mot. at 7. The defendants have put forth no evidence of this "incredibly difficult challenge," but instead rely on baseless speculation that the "emotionally charged and tragic evidence…will muddy the proof against every other defendant." Mot. at 10. The First Circuit has patently rejected such unsubstantiated musings. United States v. Houlihan, 92 F.3d 1271, 1295 (1st Cir. 1996) (rejecting prejudice arguments where defendants "dress this thesis in the gossamer vestments of speculation and surmise"). Indeed, the court has routinely rejected arguments for severance on the grounds that co-defendants face more serious charges. See e.g., United States v. DeCologero, 530 F.3d 36, 54 (1st Cir. 2008) (affirming denial of severance of two defendants from co-defendant charged with "gruesome murder"); United States v. Soto-Beniquez, 356 F.3d 1, 30 (1st Cir. 2003) (affirming denial of severance of defendants from co-defendants charged with fifteen murders); Houlihan, 92 F.3d at 1296 (upholding denial of severance of two co-defendants not charged with murder in light of "the trial court's firm, carefully worded, and oft-repeated instructions to the jurors" forbidding them from considering murder evidence admitted against two co-defendants charged with murder). As the appellate court has explained, "[d]efendants are not entitled to severance solely on the basis that their co-defendants are more culpable." Soto-Beniquez, 356 F.3d at 30.

The sole case defendants rely on in support of their Motion is United States v. Maisonet, 1998 U.S. Dist. LEXIS 9696 (S.D.N.Y. Jun. 30, 1998). But reliance on this case is grossly

misplaced.  In <u>Maisonet</u>, eighteen defendants of a heroin-trafficking organization were indicted along with the "present and former attorney of nine of the 18 other defendants in this case."  <u>Id.</u> at *14.  The attorney was charged as part of the RICO with obstructing justice by revealing the name of a confidential informant in violation of a court order and lying to a federal judge, while the other RICO defendants, including three for whom the government was considering seeking the death penalty, were charged with acts including murder, attempted murder, and narcotics trafficking.  <u>Id.</u> at *17.  In granting severance of the attorney's trial, the district court noted that the charges against the other defendants were very different from the charges against the attorney.  <u>Id.</u>  This factual context is completely inapposite to the present case.

In this case, the defendants all played critical roles in the various aspects of NECC's operations.  With respect to defendants Cadden and Chin, the evidence underlying the MPA mail fraud acts and the corresponding second-degree murder acts includes NECC's unsafe and substandard production practices as well as the insanitary conditions within NECC's clean rooms, including the mold and bacteria growing continuously within them during the summer of 2012.  Unlike the facts in <u>Maisonet</u>, the conduct alleged against defendants Cadden and Chin is the same as that with respect to the other RICO conspiracy defendants.  Moreover, the evidence underlying the conspiracy in count 3 and the subsequent FDCA charges are also inextricably intertwined with the RICO fraud scheme.  The bogus prescriptions and misrepresentations to the regulators allowed NECC to evade FDA regulatory oversight during its operations.

Furthermore, evidence of NECC's contaminated MPA and the nationwide fungal meningitis outbreak that infected 751 individuals and resulted in 64 deaths is admissible evidence against all of the defendants.  <u>See</u> <u>United States v. Doe</u>, 741 F.3d 217, 230 (1st Cir. 2013) (affirming admissibility of evidence to complete the story of the crime on trial); <u>United</u>

States v. Spoerke, 568 F.3d 1236, 1251 (11th Cir. 2009) (holding that evidence is admissible to describe the chain of events and complete the story for the jury); United States v. Holt, 460 F.3d 934, 938 (7th Cir. 2006) (upholding admissibility of evidence that "complet[es] the story or explains the circumstances"); United States v. D'Alora, 585 F.2d 16, 20 (1st Cir. 1978) ("Evidence is not to be examined in isolation, but in its particular factual setting); United States v. Howard, 2012 WL 1970268, at *2 (S.D. Ala. Jun. 1, 2012) ("The jury should hear evidence of the entire sequence of events, not just the last event taken in a vacuum, without the benefit of any context or factual framework whatsoever."). "Where evidence featuring one defendant is independently admissible against a codefendant, the latter cannot convincingly complain of an improper spillover effect." United States v. O'Bryant, 998 F.2d 21, 26 (1st Cir. 1993); see also United States v. Figueroa, 976 F.2d 1446, 1452 (1st Cir. 1992) ("The 'evidentiary spillover' claim is groundless, as the evidence was directly admissible against [the defendant]."). As such, there is no cognizable claim of spillover prejudice from the independently admissible evidence of NECC's contaminated MPA and the nationwide fungal meningitis outbreak.

Any potential for prejudice arising from the more serious charges in the indictment can be neutralized by limiting instructions to the jury to evaluate the evidence separately against each defendant on each count. A properly instructed jury will be able to clearly delineate the evidence and charges against NECC's clean room pharmacists from the evidence and charges against NECC's checking pharmacists, as well as from the evidence and charges against the remaining NECC defendants. The defendants have put forth no specific and compelling instances of prejudice that would arise from a joint trial. Instead, they simply argue that they are entitled to

severance because defendants Cadden and Chin are more culpable than they are.[3]  This reasoning has been flatly rejected by the First Circuit, and is insufficient to meet their burden for severance.

## II.    If the Court Orders Severance Pursuant to Its Inherent Case Management Authority, Defendants Cadden and Chin Should Be Severed in Their Entirety.

While the government submits that severance is unwarranted under Rule 14, this Court may order severance pursuant to its inherent case management authority.  See United States v. Leichter, 160 F.3d 33, 35 (1st Cir. 1998) ("The power to order separate trials rests within the broad discretion of the District Court as an aspect of its inherent right and duty to manage its own calendar." (internal citations omitted)).  "The Court's case management authority is independent of Federal Rule of Criminal Procedure 14…."  United States v. Monteiro, 2005 WL 3277530, at *1 (D. Mass.  Jan. 19, 2005); see also United States v. Mancuso,130 F.R.D. 128, 130 (D. Nev. 1990) ("Many courts have, either explicitly or implicitly, relied on its inherent power to manage its case load, and have severed out of a concern for the efficient administration of justice

---

[3]  Defendants make two final arguments about why severance should be granted: the complexity of the case and judicial economy.  Neither of these arguments is persuasive.

First, with respect to complexity, the First Circuit has noted that "indictments of comparable or greater complexity are regularly tried."  United States v. DeCologero, 364 F.3d 12, 24 (1st Cir. 2004) (citing Boylan, 898 F.2d at 236 (refusing to sever 7-defendant, 57-count indictment on grounds it was too complex for the jury); United States v. Shea, 211 F.3d 658, 664 (1st Cir. 2000) (upholding denial of severance of 5-defendant, 2-month trial); and United States v. Casamento, 887 F.2d 1141, 1149-50 (2d Cir. 1989) (rejecting arguments that 17-month trial was too complex for a jury to comprehend)).  See also, United States v. Cervone, 907 F.2d 332, 336 (2d Cir. 1990) (affirming denial of severance of 18-defendant, 102-count RICO trial); United States v. Tashjian, 660 F.2d 829, 831 (1st Cir. 1981) (affirming denial of severance of 15-defendant, 24-count RICO trial).  The court recognized that there were limits to complexity a jury can handle, however.  Id. (citing United States v. Andrews, 754 F. Supp. 1161, 1180 (N.D. Ill. 1990) (severing 305-page indictment charging 38 defendants with 175 counts).  Given the overlapping factual scenarios involved in this case, the government submits that this case is much more in line with Boylan, Shea, and Cassamento than Andrews, and can be easily tried to a jury without confusion.

Second, the defendants' judicial economy argument is equally unavailing.  The defendants argue that severance will promote judicial economy because "the mountains of evidence related to contaminated MPA could be limited to Cadden and Chin's trial."  Mot. at 17.  But as noted above, evidence of the contaminated MPA and the fungal meningitis outbreak also would be admissible in a trial of the severed defendants.  Moreover, Cadden is charged in all 78 of the racketeering acts, and 97 of the 109 counts.  Therefore, a severed trial of defendants Cadden and Chin would be essentially duplicative of the subsequent trial of the defendants as many of the same counts would be tried twice.  As a result, there is little doubt that trying the twelve defendants together would be the most efficient use of judicial resources.

and judicial economy."). If the Court decides severance is appropriate in this case pursuant to its inherent case management authority, the government submits that severing defendants Cadden and Chin in their entirety from the trial of other defendants (and defendant Kathy Chin) is the only appropriate way to proceed so long as the trial of Cadden and Chin proceeds first.

In their Motion, the defendants put forth two severance options: (i) a trial of defendants Cadden and Chin on all the counts in which they are charged, or (ii) severing the second-degree murder racketeering acts from the trial of the remaining acts and charges against defendants Cadden, Chin, and the other defendants. The defendants' latter proposal, however, is an extraordinary remedy that unduly restricts the evidence that the government may prove at trial, and is unwarranted in this case. Additionally, it would require defendants Cadden and Chin to stand trial twice.

As the First Circuit has cautioned, "[i]n our view, telling the government that in order to simplify the trial it cannot prove RICO acts for which it has secured an indictment (and which are otherwise proper under the statute and rules of evidence) is more than mere house-keeping." DeCologero, 364 F.3d at 23. The court explained that "[b]y limiting blocks of evidence that the government may use, this exclusion can deprive the public permanently of rightful convictions. This loss of evidence is not necessarily offset by the dubious possibility of a second trial, also on truncated evidence." Id. at 24. The First Circuit concluded:

> in a RICO case, the exclusion of an RA or other criminal episode in order to make the trial comprehensible for a jury may not be wholly beyond the district court's inherent authority (we need not decide the issue definitively); but it would have to be a last resort where no more conventional method existed to assure a fair trial and where the exclusion rested on detailed and compelling findings. The test, in short, would be one not of convenience but of last-ditch necessity.

Id. at 24 (emphasis added).  Other Circuits have more explicitly overruled district courts' efforts to curtail the government's case.  See United States v. Bergrin, 682 F.3d 261, 284 (3d Cir. 2012) ("It is not a court's prerogative to construct a detour around RICO simply because the court is uncomfortable with how that statute may significantly alter the way trials are conducted in cases that involve racketeering acts committed by members of an enterprise." (internal citation omitted)); United States v. Zabawa, 39 F.3d 279, 284 (10th Cir. 1994) ("Because the district court's ruling forces the government to abandon, at least temporarily, the prosecution of separate crimes it has charged against defendants who are scheduled to be tried, we believe the ruling goes beyond those subject to the court's discretionary control and impinges upon the separation of powers.  Prosecutorial discretion is a function of the executive branch, not the judiciary."); United States v. Giannattasio, 979 F.2d 98, 100 (7th Cir. 1992) ("Every count in a properly drafted indictment is a different crime.  A judge in our system does not have the authority to tell prosecutors which crime to prosecute or when to prosecute them…If [the defendant] committed fifteen Medicare frauds, a judge cannot tell the Justice Department to prosecute him for only five of the frauds, or to prosecute him for five now and the rest later, if necessary.").

In line with these holdings from the First, Third, Seventh, and Tenth Circuits, the government submits that this Court should not order severance of the 25 murder racketeering acts from the remainder of the indictment.  This is not a last-ditch necessity case, and no facts or circumstances "justify the extreme remedy of excluding otherwise properly charged RAs from the initial trial."  DeCologero, 364 F.2d at 25.  If the Court decides to sever this case pursuant to its case management authority, the only appropriate way to do so is to sever defendants Cadden and Chin in their entirety, thereby allowing the government to proceed to trial against those two defendants on all counts and racketeering acts for which they are charged.  Following the Cadden

and Chin trial, the government should be allowed to proceed to trial shortly thereafter with a trial of the defendants (and defendant Kathy Chin).

## **CONCLUSION**

For the above reasons, the United States respectfully requests that the Court deny the Motion, or in the alternative, sever the trial of defendants Cadden and Chin in its entirety.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:    /s/ George P. Varghese
AMANDA P.M. STRACHAN
BBO # 641108
GEORGE P. VARGHESE
Assistant United States Attorneys
John J. Moakley United States Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3100
amanda.strachan@usdoj.gov
george.varghese@usdoj.gov

Dated:  November 25, 2015

<u>Certificate of Service</u>

I hereby certify that the foregoing documents filed through the ECF system will be sent electronically to counsel for the defendants, who are registered participants as identified on the Notice of Electronic Filing (NEF).

By:  <u>/s/ George P. Varghese</u>
GEORGE P. VARGHESE
Assistant United States Attorney

Dated:  November 25, 2015