UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA          )
                                  )
v.                                )          Court No.:  14-cr-10363-RGS
                                  )
BARRY J. CADDEN, et al.,          )
                                  )
                    Defendants.   )
_____)

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
COUNTS 1, 2, AND 4-94 OF THE INDICTMENT BASED ON THE USE
OF A PRIVATE INDUSTRY CODE (THE UNITED STATES PHARMACOPEIA)
AS A STANDARD OF CRIMINAL CONDUCT**

The United States of America hereby opposes the Motion to Dismiss Counts 1, 2, and 4-94 of the Indictment Based on the Use of a Private Industry Code (The United States Pharmacopeia) as a Standard of Criminal Conduct (Doc. No. 401) [hereinafter, the "Motion"], filed by defendants Barry Cadden, Glenn Chin, Gene Svirskiy, Joseph Evanosky, Alla Stepanets, Michelle Thomas, Christopher Leary, Scott Connolly, Sharon Carter, and Robert Ronzio (collectively, the "defendants").[1]  Contrary to the defendants' assertions in the Motion, nowhere in the 131-count Indictment are the defendants charged with violating the United States Pharmacopeia ("USP").  Instead, the defendants are charged with violations of well-settled federal law: the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. § 1962(c) and (d), and Mail Fraud, in violation of 18 U.S.C. § 1341.  Accordingly, the Indictment does not represent an unlawful delegation of Congressional power, nor are the statutes vague as applied to the defendants in this case.  The Indictment is valid on its face, and is sufficient to call for trial on the merits of the case.  Therefore, the Motion should be denied.

_____

[1]  It is unclear why defendant Michelle Thomas joins in this Motion since she is not charged in counts 1, 2, and 4-94, and therefore, lacks standing to contest them on behalf of her co-defendants.

**LEGAL STANDARD**

It has long been held that "[a]n indictment returned by a legally constituted and unbiased grand jury…if valid on its face, is enough to call for a trial of the charge on the merits.  The Fifth Amendment requires nothing more."  Costello v. United States, 350 U.S. 359, 409 (1956).  See also, United States v. Reed, 27 F. Cas. 727, 738 (N.D.N.Y. 1852) ("No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence….").  "In order for a criminal indictment to be sufficient, all that is required is that the indictment '…shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.'"  United States v. Mavroules, 819 F. Supp. 109, 112 (D. Mass. 1993) (quoting Fed. R. Crim. 7(c)).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."  Hamling v. United States, 418 U.S. 87, 117 (1974).

The First Circuit has held that, "[b]ecause the public maintains an abiding interest in the administration of criminal justice, dismissing an indictment is an extraordinary step."  United States v. Li, 206 F.3d 56, 62 (1st Cir. 2000).  "When a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury.  That power is appropriately reserved, therefore, for extremely limited circumstances."  Whitehouse v. U.S. District Court, 53 F.3d 1349, 1360 (1st Cir. 1995).  See United States v. Morrison, 449 U.S. 361, 365 (1981) (holding that dismissal of an indictment was unwarranted absent a constitutional violation that prejudiced a defendant's case).

When evaluating an indictment's sufficiency, a court must "look to see whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." United States v. Geurrier, 669 F.3d 1, 3 (1st Cir. 2011) see also United States v. Stewart, 841 F. Supp. 2d 431, 434 (D. Me. 2012) ("Unlike civil actions, an indictment is not generally subject to dispositive motion practice.").  "A motion to dismiss an indictment is not a device for a summary trial of the evidence, but rather it is directed only to the question of the validity of the indictment on its face." United States v. Vincenzi, 1998 WL 98634, at *3 (D. Mass. Feb. 16, 1998).  In evaluating the indictment, all allegations set forth within it are assumed to be true. Geurrier, 669 F.3d at 3-4; Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952).  "Consistent with that rule, courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." Geurrier, 669 F.3d at 4.

## INDICTMENT ALLEGATIONS

The Indictment here alleges that New England Compounding Pharmacy, Inc., doing business as New England Compounding Center ("NECC"), was a compounding-only pharmacy licensed in the Commonwealth of Massachusetts.  Indictment, Doc. 1 at 2.  Medical Sales Management, Inc. ("MSM"), a Massachusetts corporation that shared ownership with NECC, provided sales and administrative services to NECC.  Id.

The United States Pharmacopeial Convention was a scientific non-profit organization that published the USP, which "set standards for the identity, strength, quality, and purity of medicines."  Id. at 6.  All pharmacists licensed in Massachusetts were required to follow the standards set forth in the USP.  Id. at 6 (citing 247 C.M.R. § 9.01(3)).  Defendants Cadden, Chin,

Svirskiy, Leary, Evanosky, and Stepanets were licensed pharmacists working at NECC.  Id. at 3-4.

Count 1 of the Indictment alleges that NECC and MSM operated as an enterprise whose objective was to obtain money and property through materially false and fraudulent representations about its drug products and its compounding practices.  Id. at 11.  Specifically, Count 1 alleges that defendant Cadden instructed the MSM sales force to falsely represent to customers that NECC was providing the highest quality compounded drugs, and met USP-797, the USP's standards for sterile compounding.  Id. 11-12.  NECC sold drugs to medical facilities located throughout the country.  Id. at 2.

Count 1 further alleges numerous unsafe and substandard production practices at NECC over a several-year period that failed to comply with USP-797, including the use of expired and expiring ingredients, the use of expired and expiring stock solutions, improper sterilization of drugs, improper testing of drugs, improper mixing of lots, and fraudulent labeling.  Id. at 12-15. Count 1 further alleges pervasive insanitary conditions within NECC's clean rooms that failed to comply with USP-797, including action-level sampling hits during thirty-seven out of thirty-eight weeks in 2012, and mold and/or bacteria detected on twenty-seven separate occasions during that time.  Id. at 16-17.

Count 1 alleges that as part of their employment at NECC, defendants Cadden, Chin, Svirskiy, Leary, Evanosky, and Connolly conducted the affairs of the enterprise, NECC and MSM, through a pattern of racketeering activity, and in particular, manufactured dangerous drugs, including non-sterile drugs, sub-potent drugs, untested drugs, and expired drugs.  Id. at 12-15.  These dangerous drugs were shipped to unsuspecting NECC customers.  Id. at 23-24, 29-35.  The indictment further alleges that the use of NECC's non-sterile methylprednisolone

acetate ("MPA") caused the deaths of twenty-five patients in seven different states.  Id. at 25-29.

In total, Count 1 lists 78 individual racketeering acts of either mail fraud or second-degree

murder spanning two-and-a-half years.  Id. at 19-29.

Count 2 of the Indictment charges defendants Cadden, Chin, Svirskiy, Leary, Evanosky,

and Connolly, as well as defendants Carter and Stepanets, with conspiring to conduct the affairs

of the enterprise, NECC and MSM, through a pattern of racketeering activity, and in particular,

with conspiring in the production and shipment of dangerous drugs in violation of USP-797,

including non-sterile drugs, sub-potent drugs, untested drugs, and expired drugs.  Id. at 36-37.

Counts 4-56 of the Indictment charges the RICO defendants with substantive mail fraud charges

that overlap with the mail fraud racketeering acts identified in Count 1.  Id. at 48-53.  Count 57-

94 charge the RICO defendants with violations of the Food, Drug, and Cosmetic Act ("FDCA")

for the shipments identified as racketeering acts in Count 1.  Id. at 48-56.

On December 16, 2014, the Indictment was returned by a legally constituted and

unbiased grand jury, and it is valid on its face.  Counts 1 and 2 are well pled, and inform the

defendants as to the nature of the charges against them.  Accordingly, the Indictment is sufficient

to call for trial on the merits of the case.

## THE MOTION

While the defendants make multiple arguments in their Motion and accompanying

memorandum for why the Indictment should be dismissed, the defendants' arguments cannot

survive the faulty premise upon which they are based: that the defendants are charged with

violations of the USP.  They are not.  They are charged with violations of well-settled federal

law, specifically, RICO and mail fraud.  The USP is referenced in the Indictment because as part

of their pervasive fraud scheme, NECC misrepresented its compliance with USP standards to its

customers.   Accordingly, the defendants' arguments pertaining to the unlawful delegation of congressional authority and the unconstitutional vagueness of the USP are misplaced.   Therefore, the Motion should be denied.

## ARGUMENT

### I.       The Defendants Are Charged With Federal Crimes, Not Violations of the USP.

Nowhere in the 131 counts and 78 enumerated racketeering acts alleged in the Indictment are the defendants charged with violating the USP.   Instead, the defendants are charged with RICO, mail fraud, and violations of the FDCA.[2]   The fraud scheme alleged in the RICO and mail fraud counts is that NECC and MSM falsely claimed to customers that it was in compliance with USP-797 (and thereby, Massachusetts pharmacy regulations), when it was not.   Charged mail fraud schemes involving misrepresentations of compliance with state laws or regulations are not novel or uncommon.   See e.g., United States v. Paccione, 949 F.2d 1183, 1188-90 (2d Cir. 1991) (affirming convictions of defendants who falsely misrepresented compliance with state and city regulations regarding disposal of medical and infectious waste materials); United States v. Reamer, 589 F.2d 769, 771 (4th Cir. 1978) (affirming admissibility of state law and code of professional conduct prohibiting solicitation of clients in trial of attorney who was convicted of defrauding insurance companies); United States v. Sylvanus, 192 F.2d 96, 100 (7th Cir. 1951) (affirming denial of motion to dismiss indictment on grounds that Congress did not surrender control of federal mail fraud statute to state regulation of the insurance industry); United States v. Hoffman, 2015 WL 1608557, at *4 (E.D. La.  Apr. 10, 2015) (denying motion to dismiss federal indictment alleging scheme to defraud state film tax credit program); United States v. Kernan, 2009 WL 667432, at *1-2 (N.D.N.Y.  Mar. 11, 2009) (denying motion to dismiss mail fraud

---

[2]  While the defendants include the FDCA counts (counts 57-94) in their Motion, they put forth no argument why these counts, which do not rely on the USP, should be dismissed.

indictment of defendants who falsely represented to customers that they were in compliance with state regulations to sell workers compensation policies).

These cases from throughout the country stand for the unremarkable proposition that where state laws or regulations form the basis of the defendants' schemes to defraud, they are properly included within a federal indictment and trial. Moreover, such inclusion does not transform the cases into state-law matters, nor represent usurpations of Congressional power. As one court has explained:

> the state law that is the backdrop of this case does not govern these federal criminal proceedings. Put differently, the State law requirements…[are] not coterminous with the government's burden of proof regarding the charged scheme to defraud… But the government need not prove that the defendants violated the letter of state law, rather, the government must prove that the defendants engaged in a *scheme to defraud*. In this regard, the relevant law applicable to these proceedings (from which the trial jury's legal instructions will be derived) is the federal criminal law on wire/mail fraud. That concept has been previously underscored by this Court, and is underscored once again.

Hoffman, 2015 WL 1608557, at *4 (emphasis in original).

Applying these well-founded principles to the Indictment in this case, the defendants' arguments must fail. The inclusion of the USP standards by which Massachusetts pharmacists are required to comply, does not transform this case into a state-law matter or elevate a private industry code to a criminal one. Instead, the USP, like state laws and regulations regarding the disposal of medical and infectious waste materials, the practice of attorneys, the sale of accident and sickness insurance, film tax credits, and workers' compensation policies, form the "backdrop" of the charged violations of federal law. Put another way, the defendants are not charged with violating the USP (or Massachusetts pharmacy regulations), but rather are charged with perpetrating a scheme to defraud customers based on misrepresenting NECC's compliance

with the USP, a Massachusetts pharmacy regulation.  As such, the government bears the burden of proving not a violation of the regulation, but rather the defendants' scheme to defraud.

The defendants' lengthy argument in their memorandum asserting the Indictment is an unlawful delegation of Congressional authority is patently misplaced.  "[I]t was not the intent of the Congress…[to] surrender control of the use of the mails or to cease to authorize the federal courts to determine whether the mails have been utilized in attempted execution of a scheme to defraud," Sylvanus, 192 F.2d at 100, whenever the fraud scheme involves misrepresentations of compliance with state laws or regulations.  See e.g., Paccione, 949 F.2d at 1197 ("The fraud in obtaining permits to dispose of infectious waste was a part of the deceit employed to allow defendants to pursue a scheme that was clearly cognizable under § 1341."); Kernan, 2009 WL 667432, at *6 (denying motion to dismiss where indictment alleged defendant's company represented that it "was authorized to issue workers compensation policies in some states, when in fact it was not, and...was authorized to issue high deductible policies in New York, when in fact it was not").  Accordingly, the Indictment in this case was properly pled, and falls within the well-tread path of cases before it that hold that schemes to defraud that rely on misrepresentations of compliance with state law are properly cognizable under § 1341. Therefore, the Motion should be denied on this ground.

## II.     Inclusion of the USP Does Not Render the RICO and Mail Fraud Statutes Unconstitutionally Vague.

The defendants' second argument in their Motion is that "the standards promulgated by the USP…cannot serve as a basis for criminal charges because they are unconstitutionally vague."  Memorandum in Support of Motion (Doc. No. 402) [hereinafter "Mem."] at 14. Specifically, the defendants assert that "the USP suffers from both lack of fair warning and great risk of arbitrary enforcement, as alleged in the unprecedented racketeering charges here."  Id.

(internal citations omitted).  But the defendants' argument on this point fails for the same reason as their unlawful delegation argument above: the defendants are not charged with violating the USP, but rather RICO and mail fraud.  Accordingly, the defendants cannot show a lack of fair notice or arbitrary enforcement of the law.

"The void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  Kolender v. Lawson, 461 U.S. 352, 358 (1982).  RICO and mail fraud are well-known criminal statutes, and have long-survived constitutional vagueness challenges.  See e.g., United States v. O'Brien, 994 F. Supp.2d 167, 191 (D. Mass. 2014) (Saylor, J.) (rejecting vagueness challenges to RICO and mail fraud statutes in the context of an alleged corrupt hiring scheme); Bunchan v. United States, 2011 WL 3022537, at *3 (D. Mass.  Jul. 25, 2011) (Stearns, J.) (holding that "traditional *property rights based violations* of the mail-fraud statute under 18 U.S.C. § 1341" are not unconstitutionally vague) (emphasis in original); United States v. Whitty, 688 F. Supp. 48, 54-55 (D. Maine 1988) (rejecting vagueness challenge and holding that mail fraud statute has "well-established meaning and significance in our jurisprudence").  As the court explained in O'Brien in denying a vagueness challenge, "the indictment is valid on its face, and the theory of prosecution has substantial support in the case law."  994 F. Supp. 2d at 191.

Applying these principles to the Indictment in this case, the Court should find that a person of ordinary intelligence would have fair notice that misrepresentations of compliance with state law, coupled with widespread and pervasive non-compliance, would be criminal conduct. As was demonstrated above, this is a well-tread theory of fraud prosecutions.  At its core, the conduct alleged in the Indictment is very straight-forward fraud: NECC and the defendants

misrepresented themselves and the quality of their drugs to their customers to fraudulently obtain money.  See e.g., United States v. Franklin-El, 554 F.3d 903, 911 (10th Cir. 2009) (rejecting a vagueness challenge in Medicaid fraud scheme, and noting "[t]he complexity of the Medicaid regulations does nothing to alter the straightforward nature of the health care fraud statute or the straightforward allegations of fraud lodged against Defendant").  Moreover, the defendants cannot on one hand claim compliance with USP to its customers during the pendency of their criminal scheme, and then post-indictment, claim the USP standards are too vague to be understood.  See id. at 910-11 (holding that defendant's misrepresentations to obtain Medicaid money belies his vagueness claim as to Medicaid regulations).  Such inconsistency cannot support a showing of vagueness or an absence of notice.

Moreover, the mail fraud statute requires the government to prove, among other things, the defendants' "knowing and willing participation in the scheme with the specific intent to defraud."  United States v. Pimental, 380 F.3d 575, 584 (1st Cir. 2004).  The specific intent requirement eliminates any argument that the criminal statute does not provide fair notice.  See Screws v. United States, 325 U.S. 91, 102 (1945) (holding that a *mens rea* requirement removes any "objection that it punishes without warning an offense for which the accused was unaware"); United States v. O'Conner, 752 F.2d 566, 575 (11th Cir. 1985) (rejecting vagueness argument of mail fraud statute in light of *mens rea* requirement); United States v. Stewart, 872 F.2d 957, 959 (10th Cir. 1989) (same).

The defendants' final argument in its Motion is that allowing this case to proceed based on the purportedly "vague requirements" of the USP would result in arbitrary enforcement of the law.  In support for this argument, the defendants claim no other compounding pharmacies involved in any other outbreaks resulted in criminal prosecutions, and that in one case, a

compounding pharmacy investigation resulted in misdemeanor criminal charges.  Mem. at 23.
Left glaringly unstated in the defendants' memorandum, however, is any even cursory
description of the relevant facts of those other compounding cases.   In any event, such
comparative analysis is unmoving.  As the O'Brien court stated, "it is the role of the United
States Attorney, not the District Court, to select appropriate targets for prosecution.  To the
extent that the indictment properly alleges a criminal violation, it will not be dismissed."  994 F.
Supp. 2d at 192.

Furthermore, the defendants' specious argument fails to acknowledge the unprecedented
event that resulted from the defendants' criminal actions in this case, and the hundreds of victims
who suffered as a result.  The fungal meningitis outbreak in the Fall of 2012, was not the result
of mere regulatory violations.  Rather, it was caused by the criminal conduct of the defendants,
who shipped over 17,000 vials identified as sterile that were filled from three lots of drug
contaminated with fungus.  The vials were shipped to unsuspecting doctors and medical facilities
in twenty-three states for use on their patients.  During the outbreak, the U.S. Centers for Disease
Control and Prevention ("CDC") reported fungal infections in 751 patients treated with MPA
injections sold by NECC, of which 64 died.  It was the largest public health crisis caused by a
pharmaceutical drug ever recorded.  The prosecution that resulted may be unlike any that has
come before it, but the same could be said for the egregiousness of the defendants' conduct that
gave rise to it.  Contrary to the defendants bald assertion, this prosecution has not been driven by
"public pressure and publicity," mem. at 22, but rather by justice, for the victims who died, and
for all those who still live with the aftermath.

## CONCLUSION

For the above reasons, the United States respectfully requests that the Court deny the

Motion.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY


By:     /s/ George P. Varghese
        AMANDA P.M. STRACHAN
        BBO # 641108
        GEORGE P. VARGHESE
        Assistant United States Attorneys
        John J. Moakley United States Courthouse
        One Courthouse Way, Suite 9200
        Boston, Massachusetts 02210
        (617) 748-3100
        amanda.strachan@usdoj.gov
        george.varghese@usdoj.gov

Dated:  December 4, 2015


Certificate of Service

I hereby certify that the foregoing documents filed through the ECF system will be sent
electronically to counsel for the defendants, who are registered participants as identified on the
Notice of Electronic Filing (NEF).


By:     /s/ George P. Varghese
        GEORGE P. VARGHESE
        Assistant United States Attorney

Dated:  December 4, 2015