UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
UNITED STATES OF AMERICA        )
                                )        Court No.: 14-cr-10363-RGS
        v.                      )
                                )
BARRY J. CADDEN, et al.,        )
                                )
            Defendants.         )
_____)

**GOVERNMENT'S OPPOSITION TO DEFENDANTS CARLA CONIGLIARO'S
AND DOUGLAS CONIGLIARO'S MOTION TO DISMISS**

The United States of America hereby opposes defendants Carla Conigliaro's and Douglas Conigliaro's Motion to Dismiss Structuring and Contempt Charges (hereinafter, the "Motion"). The Indictment was returned by a legally constituted and unbiased grand jury, and is valid on its face. Nowhere in the Motion do the defendants challenge these facts. The Indictment charges the defendant with three counts of structuring, one count of conspiracy to structure, and 18 counts of contempt. All of the counts are well pled, and inform the defendants as to the nature of the charges against them, as well as enhanced criminal penalties. Accordingly, the Indictment is sufficient to call for trial on the merits of the case, and therefore, the Motion should be denied.

**LEGAL STANDARD**

It has long been held that "[a]n indictment returned by a legally constituted and unbiased grand jury…if valid on its face, is enough to call for a trial of the charge on the merits. The Fifth Amendment requires nothing more." Costello v. United States, 350 U.S. 359, 409 (1956). See also United States v. Reed, 27 F. Cas. 727, 738 (N.D.N.Y. 1852) ("No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence…."). The First Circuit has held that, "[b]ecause the public

maintains an abiding interest in the administration of criminal justice, dismissing an indictment is an extraordinary step." United States v. Li, 206 F.3d 56, 62 (1st Cir. 2000).  "When a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury.  That power is appropriately reserved, therefore, for extremely limited circumstances." Whitehouse v. U.S. District Court, 53 F.3d 1349, 1360 (1st Cir. 1995).  See United States v. Morrison, 449 U.S. 361, 365 (1981) (holding that dismissal of an indictment was unwarranted absent a constitutional violation that prejudiced a defendant's case).

When evaluating an indictment's sufficiency, a court must "look to see whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." United States v.  Guerrier, 669 F.3d 1, 3 (1st Cir. 2011) see also United States v. Stewart, 841 F. Supp. 2d 431, 434 (D. Me. 2012) ("Unlike civil actions, an indictment is not generally subject to dispositive motion practice.").  "A motion to dismiss an indictment is not a device for a summary trial of the evidence, but rather it is directed only to the question of the validity of the indictment on its face." United States v. Vincenzi, 1998 WL 98634, at *3 (D. Mass. Feb. 16, 1998).  In evaluating the indictment, all allegations set forth within it are assumed to be true. Geurrier, 669 F.3d at 3-4; Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952).  "Consistent with that rule, courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." Geurrier, 669 F.3d at 4.

Similarly, a court cannot weigh factual issues that must be left for a jury's determination. United States v. Young, 694 F. Supp. 2d 25, 27 (D. Me. 2010); see also United States v. Marbelt,

129 F. Supp. 2d 49, 56 (D. Mass. 2000) (holding that where "the questions involved in the motion to dismiss the indictment involve mixed questions of fact and law, properly decided at trial, a motion to dismiss must be denied"); Vincenzi, 1998 WL 98634, at *3 ("When the pretrial motion raises questions of fact which are intertwined with issues involving the merits, a determination of that matter must be deferred until trial.").

## INDICTMENT ALLEGATIONS

The Indictment here alleges that defendant Carla Conigliaro was the majority shareholder of New England Compounding Pharmacy, Inc., doing business as New England Compounding Center ("NECC"), a compounding-only pharmacy licensed in the Commonwealth of Massachusetts.  Indictment at 6, 2 (Doc. No. 1).  Defendant Carla Conigliaro also served as a director of NECC.  Id. at 6.  Defendant Douglas Conigliaro was the husband of defendant Carla Conigliaro, and was an owner and director of Medical Sales Management, Inc. ("MSM"), a Massachusetts corporation that shared ownership with NECC, and provided sales and administrative services to NECC.  Defendant Douglas Conigliaro also served as president of MSM.

The Indictment alleges that defendants Carla and Douglas Conigliaro willfully and knowingly disobeyed and resisted lawful orders of a Court of the United States, that is, the temporary restraining order and preliminary injunctive relief order issued by the Honorable Henry J. Boroff.  Id. at 59.  The orders were issued in an adversary action related to the NECC bankruptcy case on January 28, 2013, and February 12, 2013.  Id.

Nevertheless, the Indictment alleges that on January 31, 2013, three days after Judge Boroff's temporary restraining order was issued, the defendants opened a new account with USAA Financial Advisors, and transferred $10.3 million into it in two separate transfers on

February 1, and 4, 2013.  Id.  On the same day as the last transfer to USAA, February 4, 2013, a week after the temporary restraining order was issued, the defendants transferred $6.5 million into a SunTrust bank account.  Id.  The following day, February 5, 2013, the defendants opened bank accounts at five different banks in Florida and Pennsylvania, and deposited $500,000 checks into each account.  Id.

The Indictment further alleges that on February 21, 2013, nine days after Judge Boroff's permanent injunctive relief order, defendants Carla Conigliaro and Doug Conigliaro opened two new accounts at a bank in Pennsylvania and deposited $250,000 checks into each.  Id.  On March 18, 2013, a month after the permanent injunctive relief order, the defendants made five additional transfers to the six bank accounts they opened the previous month – one $500,000 transfer, and five $1 million transfers.  Id.  On March 18, 2013, that same day, defendants Carla Conigliaro and Douglas Conigliaro opened a new bank account at another Florida bank and deposited a $3 million check into it that day.  Id.  Finally, on March 19, 2013, the defendants transferred $5 million into the SunTrust account.

In sum, the Indictment alleges that the defendants disobeyed Judge Boroff's orders 18 separate times and transferred approximately $33.3 million to bank accounts at 10 different banks.  Id. at 60.

In addition to the contempt charges, the Indictment further alleges that during a four-year period, defendants Carla Conigliaro and Douglas Conigliaro conspired to structure and assist in structuring transactions with three domestic financial institutions: Middlesex Savings Bank, SunTrust Bank, and TD Bank.  Id. at 62.  The Indictment further alleges that the defendants obtained sums of cash in excess of $10,000 from bank accounts held at the three banks through ATM and counter withdrawals that were structured in a manner to avoid detection and prevent

the banks from filing Currency Transaction Reports ("CTRs").  Id.  The overt acts listed in the conspiracy are the structured withdrawals made by the defendants from each of the three banks, that is, 504 structured cash transactions totaling approximately $389,680.26 from Middlesex Savings Bank, 148 structured cash transactions totaling approximately $111,103.50 from SunTrust Bank, and 124 structured cash transactions totaling approximately $71,558.25 from TD Bank.  Id. at 62-63.  The overt acts listed are also alleged as three substantive structuring counts. Id. at 63-66.

## THE MOTION

In their Motion, the defendants do not challenge the validity of the grand jury, but instead make numerous erroneous legal and factual assertions.  Specifically, the defendants raise two unfounded arguments in their Motion: (i) the Indictment fails to properly charge structuring crimes; and (ii) the Indictment fails to properly charge contempt because the word "transfer" is defined differently in the bankruptcy code and therefore, the movement of money did not violate Judge Boroff's orders.  The government respectfully submits that all of the defendants' arguments are without merit, and therefore, the Motion should be denied.

## ARGUMENT

### I.   The Indictment Properly Alleges that Defendants Carla Conigliaro and Douglas Conigliaro Engaged in Structuring.

In their Memorandum in Support of the Motion, the defendants first argue that the structuring charges should be dismissed because "[t]he indictment does not identify the withdrawals by date or amount, and sets forth no facts to provide the Conigliaros with notice of how or why the conduct alleged was undertaken with intent to evade the reporting requirement." Mem. at 11.  The defendants' arguments are both factually and legally incorrect.

Section 5324(a) of Title 31 of the United States Code criminalizes two types of structuring: imperfect structuring and perfect structuring. "The first type, imperfect structuring, is prohibited by § 5324(a)(1) and proscribes conduct designed to defeat the bank's responsibility to report. The second type, perfect structuring, is prohibited by § 5324(a)(3) and criminalizes conduct designed to avoid triggering the bank's duty to report." United States v. Abdelbary, 496 Fed. Appx. 273, 276 (4th Cir. 2012); see also United States v. Deskins, 2014 WL 670910, at *2 (W.D. Va. Feb. 20, 2014) (explaining that "imperfect structuring" involved transactions that in combination exceed $10,000 in one day, while "perfect structuring" involved a series of transactions that do not exceed $10,000 in any one day). In either scenario, the government must prove that (1) the defendant knowingly engaged in structuring; (2) the defendant knew of the reporting requirements under federal law; and (3) the purpose of the transactions was to evade the requirements. Abdelbary, 496 Fed. Appx. at 276

In this case, the defendants are charged with perfect structuring, that is, that they engaged in a series of transactions over a specified time period designed to avoid triggering the bank's duty to report, in violation of § 5324(a)(3).[1] Specifically, the Indictment alleges that during a specified time period, Carla Conigliaro and Douglas Conigliaro made a certain number of structured cash transactions from Middlesex Savings Bank, SunTrust Bank, and TD Bank. Moreover, for the first two banks, Middlesex Savings Bank and SunTrust Bank, the Indictment alleges that the defendants made the transactions "as part of a pattern of illegal activity involving more than $100,000 in a 12-month period." The language used in the Indictment tracks the

---

[1] In their memorandum, the defendants assert that the "[t]he government fails to identify the subsection of the anti-structuring statute that the defendants are charged with violating." Mem. at 15. This statement is categorically untrue. The language in the Indictment tracks the language of § 5342(a)(3) explicitly. It is also the model indictment language used by the Asset Forfeiture and Money Laundering Section of the Department of Justice and United States Attorney's Offices throughout the country when charging perfect structuring schemes. The charging language is also the same as was used in the indictment of John Dennis Hastert referenced in the defendants' memorandum. See United States v. John D. Hastert, 15-cr-00315 (Doc. No. 1) (N.D. Ill. May 28, 2015).

language of the § 5324(a)(3) itself and sets forth all the elements of the crime.  See Hamling v. United States, 418 U.S. 87, 117 (1974) ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.").  The Indictment also clearly identifies the time period, the number of transactions, the amounts, and the financial institutions involved.  The Indictment also alleges the enhanced penalties that apply to two of the counts.  This is all the law requires. Contrary to the defendants' assertion, there is no requirement that the Indictment include a statement of facts or detail the evidence the government will produce at trial.

In their memorandum, the defendants next argue that the Indictment "merely added together *every single* cash withdrawal from the account at issue."  Mem. at 10 (emphasis in original).  Instead, the defendants suggest that individual transactions should be identified demonstrating the defendants' evasion of the reporting requirements.  Once again, the defendants' argument is incorrect as a matter of law.

The Indictment alleges that every cash withdrawal during the time period specified for each financial institution was structured by the defendants to cause the financial institution to fail to file Currency Transaction Reports.  Courts have specifically held that where defendants are alleged to be involved in structuring multiple transactions under § 5324(a)(3), a single count of structuring outlining the sum of the transactions and the source of the funds is the appropriate allegation in the indictment.  See United States v. Handakas, 286 F.3d 92, 98-99 (2d Cir. 2002) (holding that structuring activity over a two-year period should have been charged as single structuring count); overruled on other grounds United States v. Rybicki, 354 F.3d 124, 144 (2d Cir. 2003); United States v. Davenport, 929 F.2d 1169, 1172 (7th Cir. 1991) (holding that 10

smaller deposits should not have been charged as 10 structuring counts, but rather a single structuring count for the total amount); United States v. Kushner, 256 F. Supp. 2d 109, 113 (D. Mass. 2003) (Young, C.J.) (holding that government should have charged one count of structuring rather than over 100 counts, because under § 5324(a)(3) the source of the funds is "the allowable unit of prosecution" not the number of transactions). As the Kushner court held, "it was the sum in its entirety that Defendants sought to conceal. They achieved concealment by avoiding daily reporting requirements, but the amounts of the daily withdrawals are irrelevant." 256 F. Supp. 2d at 113.

Applying the principles outlined above to the instant case, the government respectfully submits that the three substantive structuring counts are properly pled. The Indictment alleges that defendants Carla Conigliaro and Douglas Conigliaro engaged in perfect structuring. Specifically, the defendants made multiple ATM and counter withdrawals over specified periods of time from three different financial institutions to avoid the daily reporting requirements that would reveal their overall scheme. Consistent with the holdings in Handakas, Davenport, and Kushner, the Indictment charges the defendants with three structuring counts, one for each financial institution that is the source of the funds, and alleges the aggregate sums of the structured transactions in the charges. Accordingly, the charges are properly pled, and the Motion should be denied.[2]

---

[2] In their memorandum, the defendants also make numerous sufficiency of the evidence arguments with respect to the structuring charges. See e.g., Mem. at 13 ("The Indictment does not contain facts that notify the Conigliaros of any reason why this sum of money was structured nor why these cash withdrawals constitute structuring."); id. at 14 ("No facts support a conclusion that the Conigliaros' banking habits were so unusual that a conclusion of structuring would be so clearly warranted."); id. ("[T]he Government does not explain how being married, having a joint bank account, and visiting the ATM or teller to withdraw money constitutes a conspiracy."). These are all factual questions that will be answered by a jury at trial, and inappropriate for a court to address at this stage. See Guerrier, 669 F.3d at 4 ("Consistent with that rule, courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations.").

**II.     The Indictment Clearly Alleges that Defendant Carla Conigliaro and Douglas Conigliaro Violated Judge Boroff's Orders.**

The defendants' second argument in their Motion is that the contempt charges should be dismissed because they "moved money from one pocket to another, which is not a transfer under the bankruptcy code."  Mem. at 18.  Once again, the defendants' are both factually and legally incorrect.

At the outset, the government submits that the defendants' arguments with respect to the contempt counts are mixed questions of law and fact to be decided by a jury at trial.  Questions raised by the defendants in their argument such as, what did Judge Boroff's orders restrain, what did the judge mean by the term "transfer," what did the defendants think the judge meant by them, and what did the defendants do in response, are all mixed factual and legal questions that should be reserved for the jury in this case.  See Vincenzi, 1998 WL 98634, at *3 ("When the pretrial motion raises questions of fact which are intertwined with issues involving the merits, a determination of that matter must be deferred until trial.").  The Indictment does not even state the language from Judge Boroff's orders, so any argument as to their meaning is a sufficiency of the evidence argument.

Instead, it is apparent that the defendants are seeking a civil-type summary judgment which is inappropriate in a criminal case.  See United States v. Stewart, 841 F. Supp. 2d 431, 434 (D. Me. 2012) ("Unlike civil actions, an indictment is not generally subject to dispositive motion practice.").  At this stage, the Court must accept the allegations in the Indictment as true, that is, Judge Boroff issued restraining orders and the defendants subsequently moved $33.3 million in violation of those orders.  The Indictment properly "sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense."  Geurrier, 669 F.3d at 3.  The Indictment, having

being returned by a legally constituted and unbiased grand jury and valid on its face, is enough to call for trial on the merits of the charges.  <u>Costello v. United States</u>, 350 U.S. 359, 409 (1956). Accordingly, the Court should dismiss the Motion on this ground.

Nevertheless, if the Court elects to hear the merits of the defendants' arguments, the Motion still fails.  The crux of the defendants' arguments is that the term "transfer" is a defined term in the bankruptcy code and therefore, that must have been what Judge Boroff meant in his order.  The defendants assert, "'[t]ransfer' in the Bankruptcy Court orders cannot plausibly have any meaning other than the clear, statutory definition in the Bankruptcy Code."  Mem. at 18. This argument is unpersuasive, and fails on several fronts.

Section 101, of Title 11 of the United States Code is entitled, "definitions" and states, "[i]n this title the following definitions shall apply."  11 U.S.C. § 101.  Following the introduction, the section lists fifty-five defined terms for use in the bankruptcy title.  Subpart 54 states:

> The term "transfer" means –
> (A) the creation of a lien;
> (B) the retention of title as a security interest;
> (C) the foreclosure of a debtor's equity or redemption; or
> (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with –
> > (i) property; or
> > (ii) an interest in property.

11 U.S.C. § 101.  The import of subparagraph D of this definition means that if a movement of money does not result in disposing or parting with the money, it would not qualify as a "transfer."  By the initial terms of this section, this definition of the term "transfer" applies to the statutory text that follows in Title 11.  The defendants' suggestion that whenever a bankruptcy judge uses the term "transfer," it must take the defined meaning from § 101, is unsupported and implausible.  In this case, Judge Boroff was not quoting from the Title 11 statutory text, or even

acting in the NECC bankruptcy case, but instead was issuing a temporary restraining order in an adversary action.  Accordingly, the defined term from the bankruptcy code for "transfer" should not apply.

Moreover, Judge Boroff's orders did not merely prohibit "transferring," but instead precluded the "transferring, encumbering, assigning, pledging, mortgaging or spending" of any of the assets belonging to Carla Conigliaro.  None of the other words listed in the orders are defined in § 101 of Title 11, which implies he was not referencing those definitions at all.  It would be anomalous for Judge Boroff to use one defined term, followed by five undefined ones if his purpose was to incorporate § 101.  By contrast, the more plausible reading of the order is the plain meaning of each of the six terms: transferring, encumbering, assigning, pledging, mortgaging or spending.  See Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.") (internal citation omitted); United States v. Ledee, 772 F.3d 21, 34 (1st Cir. 2014) (holding that courts should look to the plain language when evaluating the bankruptcy code); In re Hayes, 376 B.R. 55 (Bankr. Ct. Mass. 2007) (Boroff, J.) (holding that when language is plain courts should enforce those terms).

The plain meaning of the term "transfer" is "to convey, carry, remove, or send from one person, place, or position to another."  Webster's New World Dictionary 1420 (3d College Ed. 1988);[3] see also United States v. Ledée, Crim. No. 09-00131-AFC (D.P.R. Feb. 8, 2012) (defining the term "transfer" from the First Circuit Pattern Criminal Jury instructions as "mov[ing] property from one place to another or change the title of property so that someone else

_____

[3]  As the First Circuit has explained, "[d]ictionaries of the English language are a fundamental tool in ascertaining the plain meaning of terms used in statutes and regulations."  United States v. Lachman, 387 F.3d 42, 51 (1st Cir. 2004).

owns it").  Thus, the plain meaning of the word transfer would capture the defendants' moving of $33.3 million "from one pocket to another."[4]

The plain meaning of the word transfer is also consistent with the purpose underlying Judge Boroff's orders.  The orders were sought in an adversary action brought by the Official Committee of Unsecured Creditors who were concerned, in the wake of the fungal meningitis outbreak, with the identification and preservation of NECC's assets that had been improperly transferred to its shareholders, including defendant Carla Conigliaro, who had benefited from distributions, payroll checks (despite the fact she did not work there), and an NECC corporate credit card that was used for personal expenses.  It would have been grossly inconsistent with this purpose to read Judge Boroff's restraining orders through a crabbed definition that would allow the defendants to open brand new bank accounts throughout the country and move millions of dollars into them without notice to the Court and creditors.[5]  Such a reading would defy the very purpose of the orders.

Accordingly, the Motion should be denied on the merits of this argument as well.

---

[4]  In their Memorandum, the defendants fail to note that nine of their "pockets" into which they moved their money did not exist until after Judge Boroff issued his orders.

[5]  In the alternative, the defendants argue that since all of the money originated in one account, they should be charged with only one count of contempt rather than a count for each of the 18 transfers.  Mem. at 16 n.11.  This argument is equally unavailing.  Each of the transfers to the 10 different banks constituted separate and distinct acts, and therefore independently violated the court's orders.  See United States v. Dixon, 509 U.S. 688, 697 (1993) (holding that in the multiple contempt prosecution context, where the offense contains distinct conduct, multiple charges should apply).  Accordingly, the defendants were properly charged with 18 counts of contempt.

## <u>CONCLUSION</u>

For the above reasons, the United States respectfully requests that the Court deny the

Motion.

<div style="margin-left:40%">

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY


By:    /s/ George P. Varghese
     AMANDA P.M. STRACHAN
     BBO # 641108
     GEORGE P. VARGHESE
     Assistant United States Attorneys
     John J. Moakley United States Courthouse
     One Courthouse Way, Suite 9200
     Boston, Massachusetts 02210
     (617) 748-3100
     amanda.strachan@usdoj.gov
     george.varghese@usdoj.gov

</div>

Dated:  November 4, 2015

### <u>Certificate of Service</u>

I hereby certify that the foregoing documents filed through the ECF system will be sent electronically to counsel for the defendants, who are registered participants as identified on the Notice of Electronic Filing (NEF).

<div style="margin-left:40%">

By:    /s/ George P. Varghese
     GEORGE P. VARGHESE
     Assistant United States Attorney

</div>

Dated:  November 4, 2015