UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Court No.:  14-cr-10363-RGS |
| | ) | |
| BARRY J. CADDEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## GOVERNMENT'S OMNIBUS OPPOSITION TO THE DEFENDANTS' MOTIONS TO DISMISS COUNT 3 OF THE INDICTMENT

The United States of America hereby opposes the motions filed by defendants Gregory Conigliaro, Barry Cadden, Sharon Carter, Alla Stepanets, and Robert Ronzio (collectively, the "defendants") to dismiss Count 3 of the Indictment, which charges these defendants with conspiring to defraud the United States in violation of 18 U.S.C. § 371.  Specifically, this omnibus opposition responds to the following motions filed by the defendants:  (1) Defendant Gregory A. Conigliaro's Motion to Dismiss Count 3 of the Indictment (Doc. No. 394) and accompanying Memorandum of Law (Doc. No. 395) [hereinafter, "Memorandum" or "Mem."]; (2) Motion to Dismiss Count 3- Alla Stepanets (Doc. No. 403); (3) Defendant Barry J. Cadden's Joinder in Defendant Gregory A. Conigliaro's Motion to Dismiss Count 3 of the Indictment (Doc. No. 410); (4) Motion of Defendant Sharon P. Carter to Dismiss Count 3 (Doc. No. 412); (5) Supplemental Joint Motion to Dismiss Count 3 "*Klein* Conspiracy", Incorporated Memorandum of Law and Notice of Joinder (Doc. No. 413) [hereinafter, "Supplemental Joint Motion" or "Supp. Mem."]; and (6) Defendant Ronizo's Motion to Dismiss Count 3, to Strike Surplusage and Incorporated Memorandum of Law (Doc. No. 417) [hereinafter, "Ronzio Mem."] (collectively, the "Motions").

The Court should deny the Motions because Count 3 of the Indictment does in fact properly allege a <u>Klein</u> conspiracy in violation of 18 U.S.C. § 371, and the Motions fail to demonstrate as a matter of law that it does not.  Instead, the defendants ignore and distort entire bodies of conspiracy case law and try to posit sufficiency of the evidence arguments as legal ones.  Their arguments are not legally supportable, and the Court should deny the Motions.

## ARGUMENT

I. **THE INDICTMENT PROPERLY PLEADS A VIOLATION OF 18 U.S.C. § 371 AND PROVIDES ADEQUATE NOTICE OF THE OFFENSE CHARGED.**

A. **Count 3 Sufficiently Pleads that the Defendants Conspired to Defraud the Food and Drug Administration of Its Regulatory Oversight Over NECC, in Violation of § 371.**

Count 3 of the Indictment meets all of the requirements for pleading the crime of conspiracy pursuant to 18 U.S.C. § 371, and the defendants fail to meet their high burden for demonstrating that this Court should dismiss it.  It has long been held that "[a]n indictment returned by a legally constituted and unbiased grand jury…if valid on its face, is enough to call for a trial of the charge on the merits.  The Fifth Amendment requires nothing more." <u>Costello v. United States</u>, 350 U.S. 359, 409 (1956).  <u>See also</u> <u>United States v. Reed</u>, 27 F. Cas. 727, 738 (N.D.N.Y. 1852) ("No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence…."). "In order for a criminal indictment to be sufficient, all that is required is that the indictment '…shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.'"  <u>United States v. Mavroules</u>, 819 F. Supp. 1109, 1112 (D. Mass. 1993) (<u>quoting</u> Fed. R. Crim. 7(c)).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the

offence intended to be punished." <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974).  When evaluating an indictment's sufficiency, a court must "look to see whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." <u>United States v.  Geurrier</u>, 669 F.3d 1, 3 (1st Cir. 2011); <u>see also</u> <u>United States v. Stewart</u>, 841 F. Supp. 2d 431, 434 (D. Me. 2012) ("Unlike civil actions, an indictment is not generally subject to dispositive motion practice.").

The defendants are charged in Count 3 with violating 18 U.S.C. § 371, which "proscribes two different conspiracies:  one to commit a specific offense, the 'offense clause,' and the other to defraud the United States 'in any manner or for any purpose,' the 'defraud clause.'" <u>United States v. Barker Steel Co.</u>, 985 F.2d 1123, 1129 (1st Cir. 1993) (quoting <u>United States v. Hurley</u>, 957 F.2d 1, 3 (1st Cir. 1992)).  The First Circuit has set forth the requirements for pleading a charge under the "defraud clause" of the conspiracy statute,[1] as the government has charged here:

> [t]o sufficiently charge a conspiracy to defraud, the Information must allege three essential elements of section 371:  an agreement, the unlawful objective of the agreement, and an overt act in furtherance of the agreement.  The objective of the agreement is unlawful if it is "for the purpose of impairing, obstructing or defeating the lawful function of any department of Government."

<u>Id.</u> at 1127-28 (internal citation omitted); <u>see e.g.</u>, <u>United States v. Thrower</u>, 746 F. Supp. 2d 303, 306 (D. Mass. 2010) (requiring government to prove that "the defendant entered into an agreement willfully to impair, impede, and defeat a lawful function of the government, aiming to achieve that objective through the use of dishonest means, and that an overt act was committed in furtherance of the agreement").

---

[1] Such a conspiracy is commonly referred to as a <u>Klein</u> conspiracy, after <u>United States v. Klein</u>, 247 F.2d 908, 916 (2d Cir. 1957).

Here, Count 3 of the Indictment clearly sets forth the elements necessary to constitute the crime of conspiracy to defraud the United States, and, as is both standard and sufficient, tracks the language of the statute.  The indictment alleges, in part:

> [f]rom in or around 1998, the exact date being unknown to the Grand Jury, through in or around October 2012, within the District of Massachusetts and elsewhere, defendants (1) **CADDEN**, (7) **CARTER**, (8) **STEPANETS**, (9) **GREG CONIGLIARO**, and (10) **RONZIO**, knowingly and willfully conspired and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to defraud the United States of and concerning its governmental functions and rights, hereinafter described, that is, of and concerning its right to have its business and its affairs, and particularly the transaction of the official business of the Food and Drug Administration ("FDA"), conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment, and obstruction.

Indictment at 37, ¶ 77 (Doc. No. 1).  This language, in addition to the subsequent allegation that an overt act was committed in furtherance of the conspiracy, is all that is required.  See United States v. Mubayyid, 658 F.3d 35, 57 (1st Cir. 2011) ("These elements were fully satisfied by so much of the indictment as charged the defendants with conspiring to defraud the United States for the purpose of impeding, impairing, interfering, obstructing and defeating through deceit, craft, trickery, and dishonest means the lawful functions of the IRS." (internal citations omitted)); Barker Steel Co., 985 F.2d at 1128 ("[T]he government alleged the defendants' conspiracy to defraud in the language of the statute … [and] also include[d] detailed factual allegations to substantiate the cursory statutory allegations.").

The Indictment here, however, does more than simply track the language of the statute.  It describes the crime the defendants are alleged to have committed in Count 3 in detail, including ten paragraphs describing the alleged manner and means of the conspiracy and thirty-five alleged overt acts.  See Indictment at 40-47, ¶¶ 88-108.  Specifically, the Indictment charges that the defendants conspired to defraud the Food and Drug Administration ("FDA") of its regulatory

oversight over New England Compounding Center ("NECC") by holding NECC out as a compounding pharmacy to, among others, federal (FDA) and state (Massachusetts Board of Registry in Pharmacy ("MABOP")) regulators when it was in fact acting as a drug manufacturer.[2]  See id. at 38, ¶¶ 78-79.  This was important for NECC because compounding pharmacies were held to lesser regulatory standards and subject to less regulatory oversight than were drug manufacturers.  See id. at 38, ¶¶ 78-79, 40, 89-90.  As the Indictment explains, the defendants are charged with conspiring to maintain NECC's status as a pharmacy to avoid heightened regulatory FDA scrutiny.  See id. at 38, ¶ 78 (the defendants "purported to be operating NECC as a state-regulated pharmacy, dispensing drugs pursuant to valid, patient-specific prescriptions as required by Massachusetts law, rather than as a drug manufacturer distributing drugs in bulk to customers without prescriptions and thereby subject to heightened regulatory oversight by the FDA").

Count 3 further alleges that, in order to create the appearance that NECC was selling drugs pursuant to patient-specific prescriptions, the defendants conspired to collect supposed patient names in order to justify the volume of drugs NECC was selling, and did not label the individual units of drugs with patient names so that customers could use them on any patients they wanted.  See id. at 38-39, ¶¶ 79-82.  As the Indictment sets out in detail, the defendants are charged with conspiring to ship drugs to NECC's customers without patient-specific prescriptions, and to instead create fraudulent prescriptions for those orders, sometimes using the names of real or fictional patients.  See id. at 39-46, ¶¶ 82-102.

---

[2] From the FDA's perspective at that time, there were two categories of companies that could legally sell drugs: pharmacies and drug manufacturers.  Pharmacies were regulated primarily by state boards of pharmacy, and drug manufacturers by the FDA.  The defendants knew that critical to the analysis of whether a business was a pharmacy or drug manufacturer subject to FDA oversight was whether it sold drugs pursuant to patient-specific prescriptions. See, e.g., id. at 41, ¶ 92 (Defendant Cadden writing to defendant Ronzio:  "[i]f we just sell drugs we are a MFG.").  Only a business that sold drugs pursuant to patient-specific prescriptions could be classified as a pharmacy.

Furthermore, each of the "manner and means" and "overt acts" allegations in Count 3 identifies which of the defendants are alleged to have participated in each act.  See id. at 38-46, ¶¶ 78-108.  There is no ambiguity as to each of the defendants' alleged respective roles in the conspiracy.[3]  Thus, Count 3 more than sufficiently pleads and provides not only notice of, but ten pages of details regarding, the conspiracy with which the defendants are charged.  The count's allegations, if proved, amount to a violation of § 371.[4]  See Barker Steel Co., 985 F.2d at 1134 ("The defendants' actions, as alleged, involved deceit and trickery to benefit the defendants by hampering a lawful government function.  A conspiracy of this kind has long been recognized to defraud the government.").

---

[3] Defendant Greg Conigliaro's claim that "nowhere in the Indictment does it allege that what Mr. Conigliaro allegedly wrote in 2004 was false at the time he wrote the letter" is simply incorrect.  See id. at 40, ¶ 90 ("Defendant **GREG CONIGLIARO** *falsely wrote* to the FDA, NECC 'compounds numerous different sterile and non-sterile preparations to fill patient-specific, physician prescriptions.'  Defendant **GREG CONIGLIARO** *further falsely noted*, '[w]e always compound only the amount we anticipate will be required based on our prescribing physician's historical prescribing patterns.'"  Id. (emphasis in italics added).

[4] In the Memorandum, the defendants offer selective quotes about the rule of lenity from two cases, United States v. Franck's Lab, No. 5:10-cv-00147-TJC-TBS (M.D. Fla., Sept. 12, 2011) and Tanner v. United States, 483 U.S. 107 (1987).  Their intention in doing so is unclear, as they never ask the Court to apply the rule.  Putting aside the vast factual and procedural differences between those cases and this one, the rule of lenity is a tool of statutory construction that is inapplicable to § 371, a statute that admits of no ambiguity.  Further, the regulatory ambiguity to which the defendants refer is the very same ambiguity that they have been charged with fraudulently exploiting.  In other words, they are not charged with violating an ambiguous regulatory scheme; they are charged, by way of an unambiguous statutory provision, with taking advantage of what they believed to be confusion in the regulatory scheme to obstruct the FDA's public health mission.  The extent to which the defendants abused that uncertainty for the purpose of obstructing the FDA's public health mission is a factual issue for the jury, not a matter of statutory construction.  The conspiracy count in the Indictment therefore does not trigger the application of the rule of lenity.  See Robers v. United States, 134 S. Ct. 1854, 1859 (2014) ("[T]he rule of lenity applies only if, after using the usual tools of statutory construction, we are left with a grievous ambiguity or uncertainty in the statute." (internal citations omitted)); Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, 515 U.S. 687, 704 n.18 (1995) ("We have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement.").

**B.    The Defendants' Additional Claims that Count 3 is Defective and/or Does Not Allege that a Crime Was Committed Also Fail.**

The defendants make several additional arguments about purported defects in Count 3.[5] As described below, none of them are legally supportable.

First, the defendants' argument that Count 3 is defective because it does not allege the purpose of, or motive for, the conspiracy is both legally and factually incorrect. <u>See</u> Mem. at 16-17, 21. As an initial matter, there is no legal requirement that an indictment specifically identify the purpose of the conspiracy, and the defendants cite no legal authority for their argument that there is. <u>See</u> <u>United States v. Gleason</u>, 616 F.2d 2, 16 (2d Cir. 1979) (holding that in a § 371 prosecution, alleged motives of the defendants "were relevant but not elements of the crime and need not be proven"). Nonetheless, as described above, Count 3 does in fact state that the purpose of the conspiracy was to deprive the FDA of regulatory oversight over NECC by purporting to operate NECC as a state-regulated pharmacy, rather than as a drug manufacturer distributing drugs in bulk to customers without prescriptions (as it was doing). <u>See</u> Indictment at 38, ¶ 78. The Court thus should reject this argument on both grounds.

Second, the defendants' argument that the count improperly fails to state "how the alleged conspiracy actually interfered with, or obstructed the lawful functions of the FDA" similarly should be rejected. <u>See</u> Mem. at 17-18. There is no legal requirement, nor do the defendants cite to one, that the Indictment do so or that the government prove as much at trial. Judge Woodlock addressed this issue directly in <u>United States v. Morosco</u>:

> [t]he indictment need not allege that [the defendant]'s actions actually interfered with [the government agency] nor even that they were actually capable of doing so. An allegation of conspiracy to defraud under § 371 focuses on the agreement to defraud, not the ultimate effect of that agreement. The Supreme Court has observed that "the essence of a

---

[5] For some of these purported defects, the defendants do not appear to claim that they are bases on which the Court should dismiss the Indictment. Nonetheless, they are meritless and the government addresses them.

conspiracy is an agreement to commit an unlawful act.  That agreement is a distinct evil, which may exist and be punished whether or not the substantive crime ensues."

67 F. Supp. 3d 483, 491 (D. Mass. 2014) (Woodlock, J.) (quoting United States v. Jimenez Recio, 537 U.S. 270, 274 (2003)).  See also United States v. Dixon, 449 F.3d 194, 202 (1st Cir. 2006) (holding that factual impossibility is not a defense to conspiracy because the crime does "not require that the unlawful goal be achieved").

Count 3 charges that the defendants conspired to defraud the United States of its right to have the official business of the FDA "conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment, and obstruction." Indictment at 37, ¶ 77.  Such an allegation is clearly sufficient for the charge to stand. Regardless of whether the evidence at trial demonstrates that the FDA was in fact defrauded by the defendants, they may be convicted of the charge if the government proves the elements of the crime.

Third, the defendants' argument that the "manner and means" allegations improperly include acts that are not criminal also fails.[6]  See Mem. at 18.  There is no requirement that the manner and means allegations be crimes themselves.  As the First Circuit held in United States v. Tarvers, 833 F.2d 1068, 1075 (1st Cir. 1987), "[t]he statute does not require that the means used to achieve the unlawful goal of the conspiracy be unlawful."   In fact, to prove a Klein conspiracy, the government does not need to prove any criminal acts beyond the unlawful goal of the conspiracy:

> [t]he defraud clause of the conspiracy statute does not require the commission of a specific offense or the commission of any crime other than the conspiracy itself.  The statute itself, as construed by the First Circuit in

---

[6] The government disputes the defendants' assertions that their conduct constituted mere legal advocacy about a "good faith dispute" or that it simply "made the FDA's job more difficult."  Mem. at 18, 19; Ronzio Mem. at 10.  In any event, both claims are factual issues to be decided by the jury and are improper in a motion to dismiss.

> *Barker Steel*, makes it reasonably clear that § 371 may be applied to
> conspiracies to defraud the United States even when the underlying acts
> standing alone are not criminal.

Morosco, 67 F. Supp. 3d at 488-89.  See Barker Steel Co., 985 F.2d at 1131 ("The defendants'

theory reflects a misunderstanding of the function of the two clauses of § 371.  If the second

clause were interpreted to require a commission of a specific offense, it would have the same

meaning as the first clause thus rendering the second clause redundant.").

Fourth, the defendants argue that the count is "defective" and "lacking the requisite level

of specificity" because the alleged overt acts relate to misrepresentations made to the MABOP,

which is a state, and not a federal, agency.  See Mem. at 18-19.  However, there is no

requirement that the overt acts alleged in a Klein conspiracy be misrepresentations made to

federal agencies.  The federal government may be defrauded without making misrepresentations

directly to it.[7]  As the First Circuit has held, while the purpose of the conspiracy must be to

defraud the government, a Klein conspiracy does not even require proof of actual contact with

the government.  United States v. Hurley, 957 F.2d 1, 4 (1st Cir. 1992); see also United States v.

Ballistrea, 101 F.3d 827, 831 (2d Cir. 1996) (affirming § 371 conviction of defrauding the FDA

where defendant did not directly interact with the agency).  Moreover, a "conspiracy to defraud

the United States may be effected by the use of third parties."  Tanner v. United States, 483 U.S.

107, 129 (1987).  In fact, "the broad language of § 371, covering conspiracies to defraud 'in any

manner for any purpose,' puts no limits based on the *method* used to defraud the United States."

Id. (emphasis in original).  For example, overt acts taken in furtherance of Klein conspiracies in

the First Circuit have included letters mailed to innocent third parties that contained lies designed

to induce them to take action, United States v. Thurston, 358 F.3d 51, 65-66 (1st Cir. 2004),

---

[7] Though defendants Cadden and Greg Conigliaro are, in fact, alleged in Count 3 to have made misrepresentations
directly to the FDA.

vacated on other grounds by 543 U.S. 1097 (2005) ; instructing a bookkeeper to prepare and file false W-2s with the Internal Revenue Service, United States v. Goldberg, 105 F.3d 770, 772 (1st Cir. 1997); and mislabeling or redacting expense reports that ultimately were filed with the Federal Transit Administration, United States v. Willson, 708 F.3d 47, 52-54 (1st Cir. 2013). Thus, Count 3's allegations that defendants Cadden and Greg Conigliaro conspired to create fraudulent prescriptions – which they sent to MABOP three months before the outbreak in response to MABOP's investigation of sub-potent eye block sold by NECC – in order to maintain the fiction that NECC only dispensed drugs pursuant to patient-specific prescriptions and therefore was operating in accordance with its state-issued pharmacy license, are properly pleaded.

Fifth, the defendants argue that Count 3 is legally deficient because the government "has not even alleged any agreement amongst the five alleged co-conspirators." Mem. at 19, 21. This argument fails because there is no requirement that the government allege or prove that all defendants charged in a conspiracy reached an agreement amongst themselves.[8] "A conspiracy may be based on a tacit agreement shown from an implicit working relationship." Willson, 708 F.3d at 54. To convict the defendants, the government must prove that they agreed to join in the object of the conspiracy, but it does not need to show that all of the co-conspirators even knew each other, much less reached a specific agreement amongst themselves. According to the First Circuit:

> [i]t was not necessary for the jury to find that the alleged coconspirators joined the conspiracy at the same time, or shared the same knowledge, beyond the tacit understanding that their illicit agreement existed. Nor need the participants in the illicit scheme have known all their coconspirators, or

---

[8] Nor is there any requirement, as the defendants allege, that the Indictment specify "amongst whom the initial agreement was formed." Mem. at 22. See United States v. Camacho, 528 F.2d 464, 469 (9th Cir. 1976) ("It is well established … that to constitute an unlawful conspiracy no formal agreement is necessary. An agreement constituting a conspiracy may be inferred from acts of the parties.").

> have participated at the same time in furtherance of their criminal venture. What was essential is that the criminal "goal or overall plan" have persisted without fundamental alteration, notwithstanding variations in personnel and their roles.

United States v. Bello-Perez, 977 F.2d 664, 668 (1st Cir. 1992) (internal citations omitted). See also United States v. Trainor, 477 F.3d 24, 34 n.20 (1st Cir. 2007) (approving district court's instruction that "[i]t is not necessary that you find that the alleged co-conspirators join the conspiracy at the same time or shared the same knowledge beyond their understanding, tacit or otherwise, that their illicit agreement existed"); Gleason, 616 F.2d at 16 ("To be convicted as a member of the conspiracy, a defendant need not know every objective of the conspiracy, every detail of its operation or means employed to achieve the agreed-upon criminal objective, or even the identity of every co-conspirator.").

Finally, the Supplemental Joint Motion cites United States v. Coplan, 703 F.3d 46 (2d Cir. 2012) for the further argument that Count 3 "violates [the defendants'] due process rights as a result of an overly broad and overreaching interpretation of 18 U.S.C. § 371 that allows for the prosecution of individuals who do not deprive the United States of money."  Supp. Mem. at 3. This argument was explicitly rejected by the Supreme Court over ninety years ago in Hammerschmidt v. United States, 265 U.S. 182, 188 (1924) ("To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.").  The First Circuit has rejected it as well.  See Barker Steel, Co., 985 F.2d at 1136 ("The defendants argue that the Information fails to allege a crime under § 371 because it does not allege that the defendants defrauded the federal government of money or property.  There is no basis for the defendants' argument.").

As set forth above, the Indictment sufficiently alleges a violation of 18 U.S.C. § 371.

The defendants' arguments that it does not are meritless, and the Court should deny the Motions.

## II.     THE DEFENDANTS' SUFFICIENCY OF THE EVIDENCE ARGUMENTS SHOULD BE REJECTED.

### A.     The Defendants' Argument that the Government Failed to Plead the Requisite Intent to Defraud Given the State of the "Law Regarding Compounding" is a Sufficiency of the Evidence Challenge, Which the Court Should Reject.

The defendants' argument that uncertainty in the "law" regarding compounding means

that they could not possibly, as a legal matter, have conspired to defraud the FDA of its

regulatory oversight is a factual one not properly made in a motion to dismiss.  See Mem. at 4-

10; Ronzio Mem. at 3-4.  Nothing makes this more evident than the fact that, in support of this

argument, they rely on the FDA Commissioner's congressional testimony and government

interview reports produced in discovery.  See Mem. at 5-8;  Ronzio Mem. at 4[9].  In fact, they do

not even identify any "law" to which they are referring.  Despite the fact that they are asking this

Court to rule as a matter of law that the defendants could not have conspired to defraud the FDA

because of the state of the law regarding compounding, they do not direct the Court to the "law"

or explain how it was ambiguous.[10]

To the extent the defendants are making arguments about what the state of the law was at

the time and/or how that affected the FDA's and the defendants' conduct, that is a factual

---

[9] In fact, the Memorandum filed by defendant Ronzio has a fact section on which he asks the Court to rely, along with some conjecture, in dismissing the count.  See Ronzio Mem. at 3-5 ("because Ameridose, an FDA regulated manufacturer, was not properly inspected it is doubtful that even if NECC was categorized as [a] manufacturer that anything would have been different.").  Such fact-based arguments are improper in a motion to dismiss and also ignore the fact that the Court must assume the Indictment's allegations are true in evaluating such a motion.  See Geurrier, 669 F.3d at 3-4.

[10] The defendants cite United States v. Critzer, 498 F.2d 1160, 1162 (4th Cir. 1974) for the proposition that "[i]t is settled that when the law is vague or highly debatable, a defendant – actually or imputedly – lacks the requisite intent to violate it."  Mem. at 8.  Of course, the defendants are not charged in the Indictment with violating or conspiring to violate the "compounding law" that they claim was ambiguous.

question.  To the extent that the defendants are arguing that they could not have defrauded the FDA because the FDA was uncertain about its own authority to regulate compounders, that is also a factual question.[11]   To the extent the defendants are arguing that they made misrepresentations to the FDA, sent MABOP fraudulent prescriptions pretending they were real ones, approved the shipment of drugs using fake patient names, instructed sales staff to collect patient names and use ratios and other patient name schemes to justify the volume of drug sales, and instructed sales staff not to tell customers they were doing it (or it would be "fatal error") and not to put anything about it in writing for reasons other than to thwart FDA oversight over NECC, these are factual questions for trial.  And they are all improper in a motion to dismiss. "A motion to dismiss an indictment is not a device for a summary trial of the evidence, but rather it is directed only to the question of the validity of the indictment on its face." United States v. Vincenzi, 1998 WL 98634, at *3 (D. Mass. Feb. 16, 1998).

There will be disputes at trial about these allegations.  For purposes of the Motions, however, all allegations in the Indictment are assumed to be true.  Geurrier, 669 F.3d at 3-4; Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952).  In addition, the Court should not consider the evidence when evaluating a motion to dismiss.  "Consistent with that rule, courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." Geurrier, 669 F.3d at 4.  A court cannot weigh factual issues that must be left for a jury's determination.  See United States v. Young, 694 F. Supp. 2d 25, 27 (D. Me. 2010); see also United States v. Marbelt, 129 F. Supp. 2d 49, 56 (D. Mass. 2000) (holding that where "the questions raised in the motion to dismiss the indictment involve mixed questions of fact and law, properly decided at trial, a motion to dismiss must be

---

[11] Though to the extent the defendants are arguing impossibility, as explained above, that is not a defense.  See, supra, Section I.B.

denied"); <u>Vincenzi</u>, 1998 WL 98634, at *3 ("When the pretrial motion raises questions of fact which are intertwined with issues involving the merits, a determination of that matter must be deferred until trial."). This Court should therefore reject this argument.

> **B.    Defendant Ronzio's Argument that Count 3 Fails to State a Crime Because the FDA Gave NECC the Authority to Conduct Business as a Compounding Pharmacy Is a Factual Challenge that Must Fail.**

Defendant Ronzio asserts that the FDA gave NECC authority to conduct business as a compound pharmacy following a 2003 inspection, and, he argues, since NECC was operating as a compounder throughout the intervening years under that approval, there can be no fraud against the agency. <u>See</u> Ronzio Mot. at 4, 9 ("Count 3 of the Indictment is conclusory in that alleges [sic] the defendants defrauded the United States of FDA oversight by doing something that NECC was clearly authorized to do . . . .").[12] He further argues that the misrepresentations to the FDA alleged in paragraphs 89-91 of the Indictment "were sent a time [sic] shortly after the FDA had determined that NECC was a compounding pharmacy and therefore cannot be deemed to have been fraudulent." <u>Id.</u> These arguments are based entirely on factual assertions that must be left to the jury to evaluate, and, for the reasons stated above, must be rejected.

Ronzio also claims that he "had no professional or employment related requirement to report anything to the FDA." Ronzio Mot. at 11. He makes the circular argument that this is relevant because he does not believe the government can prove that the defendants conspired to defraud the FDA. <u>See</u> Ronzio Mot. at 11. ("There was no commission that can be alleged to have fooled the FDA" because "[t]he false patient names on the prescriptions were not submitted to the FDA and there is no evidence that the FDA relied on them in failing to take any regulatory

---

[12] In essence, he asserts that an FDA inspection in 2003 provided NECC with *carte blanche* to evade FDA's regulatory authority forever thereafter, dispense prescriptions under fake patient names, and produce drugs in bulk to customers without prescriptions because NECC was operating as a "compound pharmacy." Ronzio Mot. at 11. Even if NECC were a true compounder, the conduct alleged in the Indictment would still be fraud.

action.")  He is charged, however, with affirmatively violating 18 U.S.C. § 371, not with failing to report information he was otherwise required to.

Defendant Ronzio misstates the holding from United States v. Anzalone, 766 F.2d 676, 682-83 (1st Cir. 1985) to support this contention.  In Anzalone, the First Circuit overturned a fraud conviction based on a violation of a currency reporting statute.  The court there found that the statute did not require the defendants to report the specific kind of transaction they were prosecuted for allegedly concealing.   Barker Steel Co., however, specifically distinguished Anzalone from cases involving violations of 18 U.S.C. §371:

> Our analysis in Anzalone is easily distinguishable from this case.  In addition to the fact that Anzalone does not address § 371, the defendant was charged with a crime for *failure* to act.  As we held in Anzalone, omission can only constitute a crime if the accused had a duty to act.  In this case, however, the defendants are charged with defrauding the government by their actions, not by failure to act, and therefore, the analysis in Anzalone is inapplicable.

Barker Steel Co., 985 F.2d at 1130 (emphasis in original).   Here, Ronzio is accused of defrauding the government through affirmative acts, not merely by withholding information.  Count 3 of the Indictment describes several overt acts, including some acts geared toward concealment such as the e-mail that Ronzio deems to be "surplusage," which the defendants allegedly committed in furtherance of the conspiracy.[13]   It is sufficient, and the Court should reject this argument.

---

[13] Ronzio's request that the Court strike paragraph 101 of the Indictment as "surplusage" is a transparent attempt to remove reference in the Indictment to an inculpatory e-mail he sent, and it must be rejected.  Paragraph 101 is an alleged overt act of the conspiracy charged in Count 3.  "Language in the indictment which is information the government, in good faith, intends to properly prove at trial cannot be stricken as surplusage[.]"  United States v. El-Silimy, 228 F.R.D. 52, 59 (D. Me. 2005).  The Indictment alleges that defendant Ronzio sent this highly relevant e-mail in furtherance of the conspiracy, and the government intends to offer it at trial in its case against him.  There is no basis on which to strike it as surplusage.  See United States v. Gambale, 610 F. Supp. 1515, 1542-43 (D. Mass. 1985) ("A motion to strike surplusage is granted only if the allegations are inflammatory, prejudicial, and irrelevant to the crime charged[.]").

### III.    COUNT 3 DOES NOT VIOLATE THE FIRST AMENDMENT.

Defendant Ronzio further argues that Count 3 should be dismissed because NECC/MSM employees were protected by the First Amendment when they advertised that NECC was a compounding pharmacy.  See Ronzio Mem. at 12-14.  The Court should summarily reject this argument.  As an initial matter, Ronzio fails to specify in his Motion what speech he alleges is protected, or even qualifies as "commercial."  Count 3 does not contain allegations concerning "advertising" claims made by NECC or representations made to NECC customers, and none of the communications detailed in Count 3 qualify as "commercial speech" because they were not "related solely to the economic interests of the speaker and its audience."  Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n, 447 U.S. 557, 561 (1980).

In any event, all of the communications described in Count 3 are alleged to be fraudulent and therefore do not merit any First Amendment protection.  "For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading." Id. at 566.  See also Zauderer v. Office of Disciplinary Counsel of Supreme Court, 471 U.S. 626, 638 (1985) (holding that government is "free to prevent the dissemination of commercial speech that is false, deceptive, or misleading).  Defendant Ronzio attempts to compare this case to an "off-label" marketing prosecution, where courts addressed enforcement actions that may have targeted truthful, non-misleading speech.  See Ronzio Mot. at 13.  Here, Ronzio is charged with conspiring to defraud the FDA; his alleged fraudulent communications are not protected by the First Amendment.

### IV.    COUNT 3 IS NOT VOID FOR VAGUENESS AS APPLIED TO THIS CASE.

The defendants' final argument is that § 371 is void for vagueness as applied to the circumstances of this case.  See Mem. at 22-24.  This argument is meritless, and the Court should

reject it as well.   "The void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 358 (1982).  Section 371 is a well-known criminal statute, and it has long-survived constitutional vagueness challenges.   See e.g., United States v. Goldberg, 105 F.3d 770, 775 (1st Cir. 1997) (rejecting vagueness challenge to § 371 defraud clause even where facts "fall within the outer bounds of section 371"); United States v. Derezinski, 945 F.2d 1006, 1011 (8th Cir. 1991) (holding that "an ordinary person would have no difficulty understanding that [the defendant] attempted to impair, obstruct and defeat the Treasury Department in its lawful function of collecting income taxes, or that such activity is illegal under section 371"); Morosco, 67 F. Supp. 3d at 488-89 (rejecting vagueness challenge because "[t]he statute itself, as construed by the First Circuit in Barker Steel, makes it reasonably clear that § 371 may be applied to conspiracies to defraud the United States even when the underlying acts standing alone are not criminal").   "The fact that § 371 has been applied to agreements not expressly anticipated by Congress nor specifically articulated in the statute does not demonstrate ambiguity nor does it create vagueness problems."  United States v. Cueto, 151 F.3d 620, 635-36 (7th Cir. 1998) (rejecting vagueness challenge where the indictment "alleges with particularity the essential nature of the alleged fraud and identifies [the defendant's] specific conduct that furthered the conspiracy").

Moreover, the defendant's argument fails because § 371 is a specific intent crime.  "The *mens rea* requirement of § 371 eliminates any objection that the statute punishes the accused for an offense of which he or she was unaware."  United States v. Little, 753 F.2d 1420, 1443 (9th Cir. 1984).

In this case, Count 3 of the Indictment alleges acts of misrepresentation and deceit to thwart the operation and purpose of the FDA.  As the First Circuit noted in <u>Barker Steel Co.</u>, "[c]onspiracy to thwart the operation and purpose of a government program through deceit and trickery is prohibited by § 371."  985 F.2d at 1131.  Any person of ordinary intelligence would have fair notice that conspiring to defraud the FDA of regulatory oversight over NECC, as the defendants are alleged in Count 3 to have done, would be criminal conduct.  Count 3 is not vague, and the Court should reject the defendants' assertion that it is.

## **<u>CONCLUSION</u>**

For all of the above reasons, the United States respectfully requests that the Court deny the Motions.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

By:   /s/ Amanda P.M. Strachan
AMANDA P.M. STRACHAN
BBO # 641108
GEORGE P. VARGHESE
Assistant United States Attorneys
John J. Moakley United States Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3100
amanda.strachan@usdoj.gov
george.varghese@usdoj.gov

Dated:  December 4, 2015

<u>Certificate of Service</u>

I hereby certify that the foregoing documents filed through the ECF system will be sent electronically to counsel for the defendants, who are registered participants as identified on the Notice of Electronic Filing (NEF).

By:    <u>/s/ Amanda P.M. Strachan     </u>
           AMANDA P.M. STRACHAN
           Assistant United States Attorney

Dated:  December 4, 2015