UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | Court No.: 14-cr-10363-RGS |
| v. | ) ) |  |
| BARRY J. CADDEN, et al., | ) ) |  |
| Defendants. | ) ) |  |

## GOVERNMENT'S JOINT OPPOSITION TO DEFENDANTS GENE SVIRSKIY'S AND SCOTT CONNOLLY'S MOTIONS TO DISMISS

The United States of America hereby opposes defendants Gene Svirskiy's Motion to Dismiss (Doc. No. 398) [hereinafter, "Svirskiy Motion"] and Scott Connolly's Motion to Dismiss Mail Fraud Counts (Indictment Counts 47-56) and Corresponding RICO Predicate Acts (Indictment Counts 69-78) (Doc. No. 400) [hereinafter, "Connolly Motion"].  The Indictment was returned by a legally constituted and unbiased grand jury, and is valid on its face.  Nowhere in their Motions do the defendants challenge these facts.  The Indictment charges defendant Svirskiy with racketeering, racketeering conspiracy, 12 counts of mail fraud, and violations of the Food, Drug, and Cosmetic Act ("FDCA").  The Indictment charges defendant Connolly with the same racketeering and racketeering conspiracy counts, as well as 10 counts of mail fraud.  All of the counts are well pled, and inform the defendants as to the nature of the charges against them.  Accordingly, the Indictment is sufficient to call for trial on the merits of the case, and the Motion should be denied.

## LEGAL STANDARD

It has long been held that "[a]n indictment returned by a legally constituted and unbiased grand jury…if valid on its face, is enough to call for a trial of the charge on the merits.  The Fifth

Amendment requires nothing more." Costello v. United States, 350 U.S. 359, 409 (1956). See also United States v. Reed, 27 F. Cas. 727, 738 (N.D.N.Y. 1852) ("No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence…."). The First Circuit has held that, "[b]ecause the public maintains an abiding interest in the administration of criminal justice, dismissing an indictment is an extraordinary step." United States v. Li, 206 F.3d 56, 62 (1st Cir. 2000). "When a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury. That power is appropriately reserved, therefore, for extremely limited circumstances." Whitehouse v. U.S. District Court, 53 F.3d 1349, 1360 (1st Cir. 1995). See United States v. Morrison, 449 U.S. 361, 365 (1981) (holding that dismissal of an indictment was unwarranted absent a constitutional violation that prejudiced a defendant's case).

When evaluating an indictment's sufficiency, a court must "look to see whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." United States v. Geurrier, 669 F.3d 1, 3 (1st Cir. 2011); see also United States v. Stewart, 841 F. Supp. 2d 431, 434 (D. Me. 2012) ("Unlike civil actions, an indictment is not generally subject to dispositive motion practice."). "A motion to dismiss an indictment is not a device for a summary trial of the evidence, but rather it is directed only to the question of the validity of the indictment on its face." United States v. Vincenzi, 1998 WL 98634, at *3 (D. Mass. Feb. 16, 1998). In evaluating the Indictment, all allegations set forth within it are assumed to be true. Geurrier, 669 F.3d at 3-4; Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952). "Consistent with that rule, courts routinely rebuff efforts to use a motion to

dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." Geurrier, 669 F.3d at 4.

Similarly, a court cannot weigh factual issues that must be left for a jury's determination. United States v. Young, 694 F. Supp. 2d 25, 27 (D. Me. 2010); see also United States v. Marbelt, 129 F. Supp. 2d 49, 56 (D. Mass. 2000) (holding that where "the questions raised in the motion to dismiss the indictment involve mixed questions of fact and law, properly decided at trial, a motion to dismiss must be denied"); Vincenzi, 1998 WL 98634, at *3 ("When the pretrial motion raises questions of fact which are intertwined with issues involving the merits, a determination of that matter must be deferred until trial.").

## **INDICTMENT ALLEGATIONS**

The Indictment here alleges that New England Compounding Pharmacy, Inc., doing business as New England Compounding Center ("NECC"), was a compounding-only pharmacy licensed in the Commonwealth of Massachusetts. See Indictment at 2 (Doc. No. 1). NECC sold drugs identified as sterile to medical facilities located throughout the country. Id. Medical Sales Management, Inc. ("MSM"), a Massachusetts corporation that shared ownership with NECC, provided sales and administrative services to NECC. Id.

Defendant Svirskiy was a licensed pharmacist working in the clean rooms at NECC, and was a supervising pharmacist in Clean Room 2. Id. at 3-4. Defendant Connolly surrendered his pharmacy technician license in January 2009 in connection with a disciplinary action, but nonetheless worked thereafter as a pharmacy technician at NECC in Clean Room 2 making cardioplegia drugs, which are used to stop cardiac activity during cardiac surgery. Id. at 4, 14.

Count 1 of the Indictment, the substantive RICO count, alleges that NECC and MSM operated as an enterprise whose objective was to obtain money and property through materially

false and fraudulent representations about its drug products and its compounding practices. Id. at 11. Specifically, Count 1 alleges the MSM sales force falsely represented to customers that NECC was providing the highest quality compounded drugs, and met the United States Pharmacopeia's ("USP") standards for sterile compounding. Id. 11-12. MSM's marketing materials also falsely claimed that NECC had a strictly enforced environmental monitoring program and a comprehensive end-product testing program for its drugs. Id. at 12. In addition, the Indictment alleges that NECC fraudulently represented to its customers and patients of those customers that NECC complied with Massachusetts pharmacy regulations. Id. at 33.

Count 1 further alleges numerous unsafe and substandard production practices at NECC over a several-year period, including the use of expired and expiring ingredients, the use of expired and expiring stock solutions, improper sterilization of drugs, improper testing of drugs, improper mixing of lots, fraudulent labeling, and using an unlicensed pharmacy technician to fill drug orders. Id. at 12-15. Count 1 further alleges pervasive insanitary conditions within NECC's clean rooms, including action-level sampling hits during thirty-seven out of thirty-eight weeks in 2012, and mold and/or bacteria detected on twenty-seven separate occasions during that time. Id. at 16-17.

Count 1 alleges that as part of their employment at NECC, defendants Svirskiy and Connolly conducted the affairs of the enterprise, NECC and MSM, through a pattern of racketeering activity. Specifically, the Indictment charges defendant Svirskiy for his role in three types of misrepresentations that furthered the scheme to defraud NECC customers. First, it charges Svirskiy for his role in the scheme to make and cause to be shipped drugs that were identified as sterile, but were in fact not. Id. at 29-30. Second, it charges defendant Svirskiy for his role in the scheme to make and cause to be shipped drugs that were made using expired

pharmaceutical ingredients. Id. at 31-32. Third, it charges that both defendants Svirskiy and Connolly participated in the scheme to make and cause to be shipped drugs that were made by defendant Connolly, an unlicensed pharmacy technician working in violation of Massachusetts law under defendant Svirskiy's supervision. Id. at 33-35. Of the 78 racketeering acts, defendant Svirskiy is charged in 12 acts pertaining to shipments of non-sterile drugs, expired drugs, and drug produced by defendant Connolly. Id. at 30-35. Defendant Connolly is charged in 10 racketeering acts all for the drugs he produced at NECC as an unlicensed pharmacy technician. Id. at 35.

Count 2 of the Indictment charges defendants Svirskiy and Connolly, as well as others, with conspiring to conduct the affairs of the enterprise, NECC and MSM, through a pattern of racketeering activity, and in particular, conspiring in the production and shipment of dangerous drugs, including non-sterile drugs, sub-potent drugs, untested drugs, expired drugs, and drugs produced by defendant Connolly as an unlicensed technician. Id. at 36-37.

In addition to the two RICO charges, defendant Svirskiy is also charged in 12 substantive counts of mail fraud, while Connolly is charged with 10 additional counts of mail fraud. The substantive mail fraud counts for each defendant correspond to the racketeering acts identified in Count 1. In addition, defendant Svirskiy is also charged with two violations of the FDCA.

On December 16, 2014, the Indictment was returned by a legally constituted and unbiased grand jury, and is valid on its face. All of the counts are well pled, and inform the defendants as to the nature of the charges against them. Accordingly, the Indictment is sufficient to call for trial on the merits of the case.

## THE MOTIONS

In their Motions, the defendants do not challenge the validity of the grand jury, nor does defendant Svirskiy challenge the acts and counts of the Indictment that relate to untested or expired drugs. Instead, the defendants make numerous erroneous legal and factual assertions to challenge the racketeering acts and substantive counts that relate to defendant Connolly's illegal work as an unlicensed pharmacy technician. Defendant Svirskiy's Motion is premised on the oft-repeated assertion, "the Indictment fails to allege an actus reus" relating to the RICO predicate acts and corresponding mail fraud charges related to defendant Connolly. See Memorandum in Support of Svirskiy Motion [hereinafter "Svirskiy Mem."], at 2. As part of this challenge, both defendants maintain that the Indictment is defective because there are no allegations that either of them made representations to anyone outside NECC about defendant Connolly's lack of a pharmacy technician license. Id. at 3; Connolly Mot. at 2. The government respectfully submits that the defendants' arguments are without merit, and their Motions should be denied.

## ARGUMENT

I. **The Indictment Properly Alleges that Defendant Svirskiy Committed Mail Fraud.**

   A. **The Indictment's Description of Defendant Svirskiy's Role Clearly Identifies Him as a Participant in the Fraud Scheme, and Not Simply as One Who Had "Mere Knowledge."**

Defendant Svirskiy asserts repeatedly in his Motion that the racketeering acts and accompanying mail fraud charges are deficient because they charge him only with having "mere knowledge" that defendant Connolly was unlicensed. See Svirskiy Mem. at 2, 3, 8, 10. This claim is baseless.

Defendant Svirskiy's alleged role in the fraud scheme and specific actions are clearly alleged in the Indictment. See United States v. O'Brien, 994 F. Supp. 2d 167, 191 (denying

motion to dismiss indictment where it "is valid on its face, and the theory of prosecution has substantial support in the case law."). Defendant Svirskiy is charged with knowingly participating in the production of drugs that were untested, that used expired ingredients, and that were made by defendant Connolly without a license despite representations to NECC's customers that NECC complied with all pharmacy regulations.

With respect to the drugs made by Connolly, Svirskiy is alleged to have not only worked in the same clean room with Connolly, but also to have supervised his work, which was done in violation of Massachusetts law.[1] Indictment at 6, 14-15. In addition to describing Svirskiy's role in the scheme, the Indictment alleges that defendant Connolly and others at NECC, including defendant Svirskiy, concealed defendant Connolly's unlicensed status. Id. at 14-15. The details of defendant Svirskiy's supervision of defendant Connolly's illegal work is a factual matter that must be left to the jury. See O'Brien at 180-181 (determining that indictment is sufficient because it included "a scheme to defraud that included 'a misrepresentation or concealment of a material fact.'") (quoting Neder v. United States, 527 U.S. 1, 22-25). The allegations in the Indictment are sufficient to advise defendants Svirskiy and Connolly of the charges.

> **B.     The Defendants Need Not Make the Misrepresentations Themselves to Participate in the Fraud Scheme.**

Both defendants Svirskiy and Connolly premise their Motions on the irrelevant assertion that they did not directly make any misrepresentations to NECC's customers about NECC's

---

[1] Both defendants concede that defendant Connolly's work violated Massachusetts law. They argue that it is only a misdemeanor, however, and that the "disparate punishment" between the RICO and mail fraud charges and the violation of Massachusetts pharmacy regulations should somehow influence the Court's decision that the Indictment does not sufficiently advise the defendants of their alleged illegal conduct. Svirskiy Mem. at 8; Connolly Mot. at 4. The potential penalties upon conviction are legally irrelevant to whether the Indictment is properly pled. Moreover, the defendants are not charged with violating Massachusetts pharmacy law, they are charged with the federal crimes of RICO and mail fraud. The state law violations form the misrepresentations upon which the fraud scheme is constructed.

compliance with Massachusetts pharmacy regulations. Svirskiy Mem. at 3; Connolly Mot. at 2. As an initial matter, the sufficiency of the evidence linking the defendants to the fraudulent scheme is a factual matter that should be resolved by a jury at trial. See Vincenzi, 1998 WL 98634, at *3.

In addition, this argument is wrong as a matter of law. To prove mail fraud, the government is not required to show that the defendants directly made misrepresentations. As the First Circuit has explained, "[t]he defendant need not instigate the scheme so long as he willfully participates in it, with the knowledge of its fraudulent nature and with the intent to achieve its illicit objectives." United States v. Yefsky, 994 F.2d 885, 891-92 (1st Cir. 1993); see also United States v. Kelly, 507 F. Supp. 495, 503 (E.D. Pa. 1981) (holding that "the mail fraud statute, by its own terms, proscribes a scheme to defraud and is not necessarily limited to direct participation in all of the concrete actions taken to effectuate the scheme"). The First Circuit has upheld mail fraud convictions even where a co-defendant is largely responsible for the misrepresentation to the victims. Yefsky, 994 F.2d at 892 (affirming conviction of defendant for mail fraud where co-defendant quoted fraudulent prices); United States v. Serrano, 870 F.2d 1, 6 (1st Cir. 1989) (affirming defendant's mail fraud conviction over claim that the defendant was unaware of misrepresentations). Courts have also upheld mail fraud convictions in which the defendants did not even have direct contact with victims. See United States v. Kennedy, 64 F.3d 1465, 1476 (10th Cir. 1995) (holding that mail fraud "requires only the devising of a *scheme* for obtaining money or property by means of false or fraudulent pretenses, representations, or promises – not the making of misrepresentations to any particular individuals" (emphasis in original)); United States v. Pepper, 51 F.3d 469, 473 (5th Cir. 1995) ("There is no statutory requirement that direct misrepresentations must be made to the victims of the scheme.").

Here, the defendants are alleged to have engaged in integral parts of the fraud scheme. The Indictment alleges that they both took affirmative acts – producing drugs or supervising the production of drugs in contravention of Massachusetts law – that were necessary steps in the scheme. They are both also alleged to have known that the drugs they produced would be sent to NECC customers who were unaware that the drugs were made by an unlicensed pharmacy technician. That the defendants were not dealing directly with those customers is irrelevant.

### C. Defendant Svirskiy Is Not Charged With Violating a "Duty" to Report Defendant Connolly.

Defendant Svirskiy also asserts that the Court must dismiss the 10 mail fraud counts relating to defendant Connolly and their corresponding racketeering acts because they fail to allege that he had any "duty" to report defendant Connolly's illegal employment. See Svirskiy Mem. at 3. The Court should summarily reject this argument. Defendant Svirskiy is not charged with failing to act on some reporting requirement. He is charged with affirmatively participating in the fraud scheme, including directly supervising Connolly's illegal work for over three years. See Indictment at 14-15. Accordingly, defendant Svirskiy's argument should be rejected. See United States v. Barker Steel Co., 985 F.2d 1123, 1130 (1st Cir. 1993) (distinguishing affirmative acts of fraud from fraud committed by failing to report under a statutory duty to do so). In other words, the absence of any "duty" is irrelevant here because defendant Svirskiy affirmatively supervised Connolly in violation of the law, and participated in the fraud scheme.[2]

---

[2] Defendant's reliance on United States v. Autuori, 212 F.3d 105 (2d Cir. 2000), is misplaced. In Autuori, the defendant was charged with multiple counts of mail and wire fraud. Id. at 108. The Second Circuit affirmed a district court's judgment of acquittal as to some of those counts related to a specific meeting the defendant attended because the government's evidence failed to show what, if anything, the defendant, did at the meeting. Id. at 120. Specifically, the court noted that "there was no proof as to what, if anything, [the defendant] actually said at the meeting. (We will assume the government sufficiently proved that [the defendant] actually attended the meeting – an uphill issue for the government.)." Id. The court concluded that without proof of any affirmative misrepresentations at the meeting, a rational juror could not find that the defendant committed fraud. Id. This is not such a case. Instead, in this case, defendants Svirskiy and Connolly were part of a scheme to defraud NECC's customers by representing compliance with Massachusetts pharmacy law but instead having defendant Connolly

## II.     The Indictment Is Not Void for Vagueness.

The defendants' vagueness claims are all based on the assertions discussed above.  The Court should reject them.  "The void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  Kolender v. Lawson, 461 U.S. 352, 358 (1982).  RICO and mail fraud are well-known criminal statutes, and have long-survived constitutional vagueness challenges.  See e.g., United States v. O'Brien, 994 F. Supp. 2d 167, 191 (D. Mass. 2014) (Saylor, J.) (rejecting vagueness challenges to RICO and mail fraud statutes in the context of an alleged corrupt hiring scheme); Bunchan v. United States, 2011 WL 3022537, at *3 (D. Mass. Jul. 25, 2011) (Stearns, J.) (holding that "traditional *property rights based violations* of the mail-fraud statute under 18 U.S.C. § 1341" are not unconstitutionally vague) (emphasis in original); United States v. Whitty, 688 F. Supp. 48, 54-55 (D. Maine 1988) (rejecting vagueness challenge and holding that mail fraud statute has "well-established meaning and significance in our jurisprudence").  As the court explained in O'Brien in denying a vagueness challenge, "the indictment is valid on its face, and the theory of prosecution has substantial support in the case law."  994 F. Supp. 2d at 191.

In support of his argument, defendant Svirskiy again asserts that the Indictment "fails to allege what impermissible conduct" occurred.  Svirskiy Mem., at 9-10.  Defendant Svirskiy again recasts the Indictment as if it only alleges that he possessed "mere knowledge" of defendant Connolly's illegal employment.[3]  He further alleges that "the government's application of the mail fraud statute would lead to arbitrary prosecutions" because if "mere

---

continue to fill drug orders while unlicensed for more than three years.  Defendant Connolly was under the direct supervision of defendant Svirskiy for the three-year period in which he worked illegally.

[3] Defendant Svirskiy also re-asserts here that he made none of the misrepresentations directly to NECC customers, which he again claims is necessary to sustain the Indictment.  It is not.  See discussion *supra*.

knowledge is sufficient to violate the mail fraud statute . . . then prosecutors would be able to use the mail and wire fraud statutes (and RICO) to indict nearly any employee working for a corporation that engaged in misdeeds." Defendant Connolly joins in defendant Svirskiy's vagueness claim.[4]

Defendant Svirskiy's argument again minimizes the allegations these defendants face. Defendant Svirskiy incorrectly claims that he has been charged solely for possessing knowledge that there was an unlicensed pharmacy technician working under his supervision. This is simply not the case, as the Indictment implicates the defendant as being a knowing participant in the fraudulent scheme through his active supervision of defendant Connolly's illegal work. The Indictment charges defendant Svirskiy with causing drugs produced by defendant Connolly to be sent to NECC customers who were unaware that the drugs were made by an unlicensed pharmacy technician. These claims allege a straight-forward fraud scheme. They are not vague, and the Court should reject the defendants' argument.

---

[4] The premise of defendant Svirskiy's vagueness challenge is that he only possessed knowledge of defendant Connolly's unlicensed status, a defective argument which is nonetheless unavailable to defendant Connolly. It is unclear from his Motion what argument defendant Connolly is making in this regard.

**CONCLUSION**

For the above reasons, the United States respectfully requests that the Court deny the Motion.

                                  Respectfully submitted,

                                  CARMEN M. ORTIZ
                                UNITED STATES ATTORNEY

By:   /s/ Amanda P.M. Strachan
       AMANDA P.M. STRACHAN
       BBO # 641108
       GEORGE P. VARGHESE
       Assistant United States Attorneys
       John J. Moakley United States Courthouse
       One Courthouse Way, Suite 9200
       Boston, Massachusetts 02210
       (617) 748-3100
       amanda.strachan@usdoj.gov
       george.varghese@usdoj.gov

Dated: December 4, 2015

Certificate of Service

I hereby certify that the foregoing documents filed through the ECF system will be sent electronically to counsel for the defendants, who are registered participants as identified on the Notice of Electronic Filing (NEF).

By:   /s/ Amanda P.M. Strachan
       AMANDA P.M. STRACHAN
       Assistant United States Attorney

Dated: December 4, 2015