UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA )
)
v. ) Court No.:  14-cr-10363-RGS
)
BARRY J. CADDEN, et al., )
)
Defendants. )
_____)

**GOVERNMENT'S OPPOSITION TO DEFENDANT ALLA STEPANETS'S
MOTION TO DISMISS COUNTS 96-98, 101-103, AND 108**

The United States of America hereby opposes defendant Alla Stepanets's Motion to

Dismiss Counts 96-98, 101-103, & 108 (Doc. No. 407) (hereinafter, the "Motion") on the

grounds that (1) the Indictment clearly alleges that the defendant was a licensed pharmacist

working at New England Compounding Pharmacy, Inc., doing business as New England

Compounding Center ("NECC"), and dispensed drugs without valid prescriptions as required by

law; (2) the Indictment clearly alleges that the defendant "caused the drugs to be introduced and

delivered into interstate commerce;" and (3) the Food, Drug, and Cosmetic Act's  ("FDCA")

statutory prohibition against dispensing drugs without a prescription is not unconstitutionally

vague as applied to the defendant.  The primary purpose of the Motion is to invite the Court to

weigh issues of fact.  Such an exercise is for the jury at trial.  The government submits that all of

defendant Stepanets's claims are without merit, and the Court should deny the Motion.

**LEGAL STANDARD**

It has long been held that "[a]n indictment returned by a legally constituted and unbiased

grand jury . . . if valid on its face, is enough to call for a trial of the charge on the merits.  The

Fifth Amendment requires nothing more."  Costello v. United States, 350 U.S. 359, 409 (1956).

See also United States v. Reed, 27 F. Cas. 727, 738 (N.D.N.Y. 1852) ("No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence . . . ."). The First Circuit has held that, "[b]ecause the public maintains an abiding interest in the administration of criminal justice, dismissing an indictment is an extraordinary step." United States v. Li, 206 F.3d 56, 62 (1st Cir. 2000). "When a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury. That power is appropriately reserved, therefore, for extremely limited circumstances." Whitehouse v. U.S. District Court, 53 F.3d 1349, 1360 (1st Cir. 1995). See United States v. Morrison, 449 U.S. 361, 365 (1981) (holding that dismissal of an indictment was unwarranted absent a constitutional violation that prejudiced a defendant's case).

When evaluating an indictment's sufficiency, a court must "look to see whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." United States v. Geurrier, 669 F.3d 1, 3 (1st Cir. 2011); see also United States v. Stewart, 841 F. Supp.2d 431, 434 (D. Me. 2012) ("Unlike civil actions, an indictment is not generally subject to dispositive motion practice."). "A motion to dismiss an indictment is not a device for a summary trial of the evidence, but rather it is directed only to the question of the validity of the indictment on its face." United States v. Vincenzi, 1998 WL 98634, at *3 (D. Mass. Feb. 16, 1998). In evaluating the Indictment, all allegations set forth within it are assumed to be true. Geurrier, 669 F.3d at 3-4; Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 343 n.16 (1952). "Consistent with that rule, courts routinely rebuff efforts to use a motion to

dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." Geurrier, 669 F.3d at 4.

Similarly, a court cannot weigh factual issues that must be left for a jury's determination. United States v. Young, 694 F. Supp. 2d 25, 27 (D. Me. 2010); see also United States v. Marbelt, 129 F. Supp. 2d 49, 56 (D. Mass. 2000) (holding that where "the questions involved in the motion to dismiss the indictment involve mixed questions of fact and law, properly decided at trial, a motion to dismiss must be denied"); Vincenzi, 1998 WL 98634, at *3 ("When the pretrial motion raises questions of fact which are intertwined with issues involving the merits, a determination of that matter must be deferred until trial."). A court "read[s] an [indictment] as a whole and…construe[s] the allegations in a practical sense, with all necessary implications." United States v. Barker Steel Co., 985 F.2d 1123, 1125 (1st Cir. 1993).

## INDICTMENT ALLEGATIONS

In this case, the Indictment alleges that NECC is a compounding-only pharmacy licensed in the Commonwealth of Massachusetts. Indictment at 2 (Doc. No. 1). Defendant Stepanets is a pharmacist licensed in the Commonwealth of Massachusetts by the Massachusetts Board of Registration in Pharmacy, and therefore authorized to dispense drugs pursuant to a valid prescription from a medical practitioner. Id. at 4. Defendant Stepanets worked from January 2008 until October 2012 as a pharmacist at NECC. Id. She worked in, among other areas, NECC's packing area checking orders prior to shipment to NECC's customers. Id.

The Indictment further alleges that the defendant was a member of a conspiracy to obstruct the lawful governmental functions of the Food and Drug Administration ("FDA"). Id. at 37-47. In furtherance of that conspiracy, the Indictment alleges, the defendant instructed NECC's sales force to obtain patient names from clinic and hospital customers ordering drugs,

and that the names need not be those of the patients actually receiving the drugs.  Id. at 38-39.

Defendant Stepanets then conspired to use those names and the names of celebrities and fictional

characters to create fraudulent prescriptions.  Id. at 39.  The Indictment further alleges that, in

furtherance of this conspiracy, the defendant discussed these practices through e-mail, and

dispensed drugs with these false names.  Id. at 42, 44-46.

As to the specific violations of the FDCA that defendant Stepanets seeks to dismiss, the

Indictment alleges, in part, that on seven separate occasions in 2010, 2011, and 2012, the

defendant, with the intent to defraud and mislead, caused drugs to be dispensed from NECC

without valid prescriptions.  Id. at 56-59.  Specifically, the defendant caused drugs to be

introduced and delivered into interstate commerce for patients who, according to NECC order

forms, were allegedly named Fast Man, Wonder Woman, Fat Albert, Wayne Newton, Robert

Redford, Bud Weiser, Raymond Rollingrock, Fast Phil, Silver Surfer, Donald Trump, L.L. Bean,

Filet O'fish, and Rug Doctor, among others.  Id. at 57-59.[1]

In her Motion, the defendant's arguments rely on cursory factual allegations and

erroneous readings of the cases she cites.  Her arguments are all without merit, and the Motion

should be denied.

---

[1] The defendant makes an unsupported factual allegation in support of her argument that the Indictment should be
dismissed.  See Mot. at 2 ("Although she was a licensed pharmacist, Ms. Stepanets [sic] actions with regards to
these counts was solely that of a shipping clerk.  Such a role cannot constitute 'dispensing' within the definition of
the statute.").  The government disputes this factual claim, which is improper in a motion to dismiss the Indictment,
and should not be considered by the Court.  See United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (holding
that when evaluating a motion to dismiss "courts take the facts alleged in the indictment as true"); United States v.
Reyes, 2015 WL 6394294, at *2 (D. Puerto Rico Oct. 22, 2015) ("In fact, unless the government makes a full
proffer of the evidence they will present at trial, the sufficiency of the evidence is not appropriately addressed on a
pretrial motion to dismiss an indictment.").  Factual claims by the defendant should be presented to a jury at trial.

## ARGUMENT

**I.     The Indictment Clearly Alleges that Defendant Stepanets Dispensed Drugs.**

Defendant Stepanets's first two arguments for dismissal are both focused on a single factual issue:  the defendant's claim that her work at NECC was of such a low, administrative level that it did not amount to dispensing.  See Mot. at 2-4.  First, defendant Stepanets asserts that her professional duties were "solely that of a shipping clerk."  Mot. at 2.  Second, she concedes that NECC was dispensing drugs, but attempts to minimize her role there by implicating her co-defendant and former supervisor, Barry Cadden, as the lone person who, as a matter of fact, actually dispensed the drugs at issue.[2]  In light of the Indictment's description not only of the conduct underlying the "dispensing" counts under 21 U.S.C. §§ 331(a) and 353(b)(1), but also of its description of her involvement in the conspiracy to evade the FDA's regulatory oversight, this argument fails.

Defendant Stepanets's argument that she was merely "checking orders" mirrors the argument made by two of her co-defendants in the FDCA counts, Kathy Chin and Michelle Thomas.  See Chin and Thomas Mot. to Dismiss (Doc. No. 359), and Government Opposition To Motion to Dismiss, (Doc. No. 381).  The government re-asserts its position from its Opposition to that motion here:  this is a sufficiency of the evidence argument that falls within the province of the jury at trial.  The Indictment alleges that defendant Stepanets, as a licensed pharmacist, is authorized "to dispense drugs pursuant to a valid prescription from a medical practitioner."  Indictment, at 5.  The Indictment further alleges that defendant Stepanets caused the drugs to be dispensed for each of the counts for which she is charged.  Id. at 56.  Specifically, the Indictment states that she "caused the drugs to be introduced and delivered into interstate commerce without

---

[2] Other than re-iterating the Indictment's assertion that Cadden oversaw the operations at NECC, the defendant's identification of defendant Cadden as the lone dispenser is conclusory and unsupported.

the valid prescription of a practitioner licensed by law to administer the drugs, and the act resulted in the drugs being misbranded[.]" Id. at 56-57.  Taking the allegations in the Indictment as true, as the Court must at this stage, the Indictment clearly alleges that defendant Stepanets dispensed drugs.

The defendant's second argument, that co-defendant Cadden "took charge" of dispensing, is another factual assertion for the jury to determine, and is also immaterial to the sufficiency of the charge.  As the government noted in its Opposition to Kathy Chin and Thomas's motion to dismiss, the Indictment is not defective simply because it alleges that others at NECC, in addition to the defendant, were involved in the drug dispensing process.  See e.g., United States v. Gen. Nutrition, Inc., 638 F. Supp. 556, 563 (W.D.N.Y. 1986) (denying a motion to dismiss the indictment that focuses "on [the defendants'] relatively low position in the corporate hierarchy, the supposed non-commission by them of any criminal acts or, in the event such acts could be so construed, the unreasonableness of expecting anyone in their positions to understand the criminality of such acts, and the supposed vagueness of the underlying statute" on the grounds that the defendants' arguments "actually go to the sufficiency of the government's proof rather than to the legal basis of the indictment").  The notion that defendant Cadden's conduct – or that of any other defendant – somehow affects the sufficiency of the charges against defendant Stepanets is further negated by the Indictment's allegations regarding her participation in the conspiracy to defraud the FDA.  See Indictment at 37-47.  This theory is wholly without merit. Barker Steel Co., 985 F.2d at 1125.

## II.     The Defendant's Theories on "Sales" and "Proximate Cause" Lack Any Factual or Legal Foundation.

Defendant Stepanets's third and fourth arguments hinge on an incorrect legal theory that the charges against her depend on her involvement in "sales."  See Mot. at 2-3.  The defendant

argues first that case law equates dispensing with "sales," and that the Court must dismiss the Indictment because it does not allege that she "sold" the drugs at issue.  Mot. at 2-3.  Defendant Stepanets then argues that the Indictment is "fatally flawed" because it does not allege that she was the "proximate cause" of drug sales.  Mot. at 3.  These arguments fail on both factual and legal grounds.  These assertions are further evidentiary challenges that do not bear on the Indictment's sufficiency and must be left to the jury to determine.  Moreover, they are assertions generated out of an incorrect reading of the cited case law.

Factually, defendant Stepanets is properly charged with violating 21 U.S.C. § 331(a) because she "caused the introduction of misbranded drugs into interstate commerce with the intent to defraud and mislead."  Indictment at 56.  The Indictment further alleges that the drugs were misbranded under § 353(b)(1) because they were dispensed without valid prescriptions, and that the defendant dispensed them because she caused the drugs to be introduced into interstate commerce.  The defendant's argument that causing the drugs to be shipped to customers is not "sales" is a fact-based inquiry that must be left to the jury.

Legally, the defendant's cursory factual allegations rest upon a defective theory.  The defendant asks the Court to find that two cases, De Freese v. United States, 270 F.2d 730 (5th Cir. 1959) and United States v. Ikejiani, 2015 WL 6575860 (11th Cir.  Oct. 30, 2015), "equate 'dispensing' to 'all sales.'"  Mot. at 3-4.  Both cases were prosecuted under a different section of the FDCA from that which is at issue here, and each involved entirely different facts.  In any event, neither case stands for the proposition that prescription drugs can only be dispensed by their final retail conduit, as the defendant appears to argue.  Instead, the courts in DeFreese and Ikejiani held the opposite, that the term "dispensing" reaches drug wholesalers as well.  Specifically, the Ikejiani court stated "the term 'dispensing,' as used in § 353(b)(1), applies to all

sales, including wholesale sales, not merely to sales to end users."  See Ikejiani, 2015 WL 6575860 at *4.  "The protection afforded the general public would be dangerously diminished if a person making small retail sales without a prescription may be prosecuted while a person making large wholesale sales of drugs could not be prosecuted for selling without a prescription."  De Freese, 270 F.2d at 735.  Accordingly, these cases stand for the proposition that individuals  who "do any act" that causes prescription drugs to become misbranded cannot find safe harbor behind an overly strict definition of "dispense" simply because they were not the final step in the retail chain.  If anything, those courts' holdings bolster the government's point; anyone in the chain of commerce can be responsible for dispensing a drug, depending on the facts.

Like the preceding argument, the defendant's fourth argument erroneously cites two out-of-circuit cases to cursorily state an incorrect legal theory.  Defendant Stepanets alleges that the Indictment lacks sufficient allegations that she was the "proximate cause" of the sale of the drugs.[3]  This argument fails because the Indictment sufficiently alleges that the prohibited act she is accused of committing is actually causing, in and of itself, the drugs to enter the stream of interstate commerce.  There is no "proximate cause" issue here because the defendant was the direct cause, and the causation element is clearly stated as such in the Indictment.  The plain text

---

[3] Notwithstanding the irrelevance of this "proximate cause" theory, the defendant's cited cases do not support her theory.  In United States v. Rodriguez, 766 F.3d 970 (9th Cir. 2014), the Ninth Circuit denied an appeal of convictions for murder under 18 U.S.C. § 1111, finding that, although the victim died during his medical treatment for stab wounds, that medical treatment was a foreseeable result of the defendants' attack and did not absolve them of killing the victim.  In United States v. Lundquist, 731 F.3d 124 (2d Cir. 2013), the Second Circuit ruled that a victim of child pornography was entitled to restitution under the Violence Against Women Act because the holder of the pornography proximately caused the victim's losses.  Neither case speaks to an instance where a defendant caused something to happen that in fact did happen, and then was charged under the statute that directly criminalized that defendant's conduct.

of the statute requires nothing more.  21 U.S.C. § 331(a).  How the government will prove that

element is a factual matter for the jury, and does not go to the Indictment's sufficiency.[4]

### III.   The FDCA Is Not Void for Vagueness as Applied to Defendant Stepanets.

The defendant's last argument again mirrors the same motion made by co-defendants

Kathy Chin and Thomas that the statute is unconstitutionally vague as applied to her because she

was "not on notice that she as an employee in the shipping department had an independent

obligation to determine what laws and regulations governed NECC or that they were being

followed." Mot. at 4.  The defendant makes no additional statements of fact or law in support of

this statement, which completely ignores the Indictment's description of her role in the

conspiracy to defraud the FDA.  Count 3 of the Indictment describes defendant Stepanets as a

member of a conspiracy to evade the very laws and regulations that she claims here, as a matter

of fact, to know nothing about.  See Indictment at 37-47.  Like Kathy Chin and Thomas,

defendant Stepanets in effect argues that she, as a licensed pharmacist, was unaware that she

could not dispense drugs for patients named Wonder Woman, Fat Albert, and Silver Surfer.  The

argument is wholly unavailing.

The government re-asserts its response to that argument here.  Courts throughout the

country have upheld the FDCA generally, and § 353(b)(1) specifically, on numerous occasions

against similar vagueness challenges.  See, e.g., United States v. 2600 State Drugs, Inc., 235 F.2d

913, 916 (7th Cir. 1956) (holding that "any pharmacist who sold these drugs without a

prescription would necessarily know that he was violating the Food and Drug Act"); United

States v. Forester, 346 F.2d 685, 686 (4th Cir. 1965) (affirming denial of vagueness challenge to

---

[4]   The Court need not entertain defendant Stepanets's unsupported, conclusory analysis that the "statute is impermissibly broad" because it potentially subjects others to punishment.  Here the defendant is charged with having the felony intent to defraud or mislead.  That intent, stated clearly in the Indictment, further counters any argument that the elements of the charges in the Indictment are somehow unclear.

§ 353(b)(1)); <u>United States v. Travia</u>, 180 F. Supp. 2d 115, 123 (D.C.D.C. 2001) ("Congress has provided sufficient notice through these provisions; they are not so vague or standardless that the ordinary public is left uncertain as to what is prohibited."); <u>Gen. Nutrition, Inc.</u>, 638 F. Supp. at 564 (noting "this Court is unaware of any case holding any provision of the Act void for vagueness in any circumstance").  Central to the holdings in these cases is that courts "must give effect to congressional intent in view of the well-accepted principle that remedial legislation such as the Food, Drug, and Cosmetic Act is to be given a liberal construction consistent with the Act's overriding purpose to protect the public health…."  <u>United States v. Article of Drug…Bacto-Unidisk…</u>, 394 U.S. 784, 798 (1969).

In rejecting a vagueness challenge with respect to § 353(b)(1), the Seventh Circuit explained, "[a]nother factor which we must consider in the instant case is the fact that the provisions of the sections of the Act here under consideration were meant to bind pharmacists and to subject them to penalties in case of violations." <u>2600 State Drugs, Inc.</u>, 235 F.2d at 916. The court there noted that the drugs at issue included labels that stated, "Caution: Federal law prohibits dispensing without a prescription." <u>Id.</u>  Accordingly, the Seventh Circuit concluded that, "[i]t would seem clear that any pharmacist who sold these drugs without a prescription would necessarily know that he was violating the Food and Drug Act but that in order to make such sales the defendants were willing to defy the prohibitions of the Act." <u>Id.</u>

Similar facts here implicate the defendant's professional duties, and, as in <u>2600 State Drugs</u>, direct the Court to deny her vagueness challenge.  The defendant is a licensed pharmacist in Massachusetts with knowledge that only a pharmacist (or medical practitioner) can dispense prescription drugs.  <u>See</u> Mass. Gen. Laws ch. 112, § 30 ("No person shall dispense any controlled substance or any substance intended for hypodermic use except a person registered as

a pharmacist . . . .").  The defendant's professional status as a licensed pharmacist undermines her claim that the charges are vague, or do not apply to her because of the job she held at NECC. Moreover, any position that the defendant's job duties made her unaware that she could not dispense these drugs is a factual defense that should be reserved for a jury's determination.  See e.g., United States v. Gen. Nutrition, Inc., 638 F. Supp. at 563 (noting the defendants' supposed vagueness arguments "actually go to the sufficiency of the government's proof rather than to the legal basis of the indictment").  Accordingly, the Motion should be dismissed on this ground as well.

## CONCLUSION

For the above reasons, the United States respectfully requests that the Court deny the Motion.

Respectfully submitted,

CARMEN M. ORTIZ
UNITED STATES ATTORNEY


By:     /s/ George P. Varghese
        AMANDA P.M. STRACHAN
        BBO # 641108
        GEORGE P. VARGHESE
        Assistant United States Attorneys
        John J. Moakley United States Courthouse
        One Courthouse Way, Suite 9200
        Boston, Massachusetts 02210
        (617) 748-3100
        amanda.strachan@usdoj.gov
        george.varghese@usdoj.gov

Dated:  December 4, 2015

<u>Certificate of Service</u>

      I hereby certify that the foregoing documents filed through the ECF system will be sent electronically to counsel for the defendants, who are registered participants as identified on the Notice of Electronic Filing (NEF).


                      By:    <u>/s/ George P. Varghese</u>
                              GEORGE P. VARGHESE
                              Assistant United States Attorney


Dated:  December 4, 2015