UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | )
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Court No.: 14-cr-10363-RGS |
| v. | ) |
| | ) |
| BARRY J. CADDEN, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**GOVERNMENT'S RESPONSE TO OBJECTION OF
DEFENDANTS SHARON CARTER AND ALLA STEPANETS
TO MAGISTRATE JUDGE'S ORDER DENYING
MOTION FOR BILL OF PARTICULARS AS TO COUNT 2 OF THE INDICTMENT**

The United States of America hereby opposes the Objection of Defendants Sharon Carter and Alla Stepanets to Magistrate Judge's Order Denying Motion for Bill of Particulars as to Count 2 of the Indictment (Doc. No. 431) [hereinafter, the "Objection"]. As with the Defendants' Consolidated Motion for Bill of Particulars (Doc. No. 336) [hereinafter, the "Motion"], defendants Carter and Stepanets (collectively, "the defendants") once again seek a bill of particulars without first seeking and receiving leave of this Court as required by Fed. R. Crim. P. 7(f). Moreover, defendants Carter and Stepanets simply recycle the same arguments that they made below, and once again fail to demonstrate that the detailed 73-page speaking Indictment and the extensive discovery do not adequately provide them with the necessary details of the charges against them to prepare their defenses, avoid surprise at trial, and protect against double jeopardy. Lastly, the government notes that the defendants' Objection was filed six days prior to receipt of the government's preliminary exhibit list, which largely moots this request. Accordingly, the government submits that the defendants cannot meet their statutory burden of showing that the order by United States Chief Magistrate Judge Boal denying their

request for a bill of particulars was clearly erroneous or contrary to law. Therefore, this Court should affirm that ruling.

## PROCEDURAL BACKGROUND

*The Indictment and Discovery*

Following a two-year criminal investigation, a federal grand jury sitting in this district returned a 131-count indictment against fourteen defendants in connection with their roles at New England Compounding Pharmacy, Inc., doing business as New England Compounding Center ("NECC"). The criminal Indictment is not limited to the contaminated methylprednisolone acetate ("MPA") and the fungal meningitis outbreak, but rather alleges widespread criminal conduct throughout NECC.

Among other things, the detailed Indictment alleges that NECC and its affiliated company, Medical Sales Management, Inc. ("MSM"), were operated as an enterprise through a pattern of racketeering activity, whose objective was to obtain money and property through materially false and fraudulent representations about its drug products. Id. at 11. Specifically, Count 1 alleges that the MSM sales force was instructed to falsely represent to customers that NECC was providing the highest quality compounded drugs, and met the United States Pharmacopeia's ("USP") standards for sterile compounding. Id. 11-12. MSM's marketing materials also falsely claimed that NECC had a strictly enforced environmental monitoring program and a comprehensive end-product testing program for its drugs. Id. at 12.

Count 1 further alleges numerous unsafe and substandard production practices at NECC over a several-year period, including the use of expired and expiring ingredients, the use of expired and expiring stock solutions, improper sterilization of drugs, improper testing of drugs, improper mixing of lots, fraudulent labeling, and using an unlicensed pharmacy technician to fill

drug orders. Id. at 12-15. Count 1 further alleges pervasive insanitary conditions within NECC's clean rooms, including action and alert-level sampling hits during thirty-seven out of thirty-eight weeks in 2012, and mold and/or bacteria detected on twenty-seven separate occasions during that same time period. Id. at 16-17. Nonetheless, the drugs manufactured at NECC were shipped to unsuspecting customers throughout the country for use on their patients. Id. at 23-24, 29-35. The Indictment further alleges that the use of the non-sterile MPA caused the deaths of twenty-five patients in seven different states. Id. at 25-29.

Count 2 of the Indictment charges the Count 1 defendants, as well as defendant Carter, NECC's Director of Operations, and defendant Stepanets, a licensed NECC pharmacist, with conspiring to conduct the affairs of the enterprise, NECC and MSM, through a pattern of racketeering activity, and in particular, with conspiring in the production and shipment of dangerous drugs, including non-sterile drugs, sub-potent drugs, untested drugs, expired drugs, and drugs produced by an unlicensed technician. Id. at 36-37. Consistent with the statute, no overt acts are alleged in Count 2.

The defendants were arraigned on the Indictment on December 17, 2014. Since that time, the government has made seven discovery productions to the defendants totaling over 8.9 million Bates-numbered pages that are clearly organized and navigable, particularly in light of the volume of discovery provided. The government organized the discovery into electronic folders labeled to reflect the contents of each folder in order to help defense counsel navigate the production and locate relevant documents. Accompanying each of the seven productions were detailed cover letters describing the information provided in the productions, the file organization and location where the information was stored, and the corresponding Bates range of the information. Included in the initial discovery production was a folder labeled, "Indictment

Counts," which contained records and documents most relevant to the 131 counts in the Indictment, organized by count.

The seven discovery productions also included thirty searchable load-ready electronic databases. The government further provided counsel the Bates numbers for 23,000 e-mails and documents obtained from the computer server belonging to NECC that the government designated in its own review as "hot" or "relevant." Of the 23,000 e-mails and documents, defendant Carter was the custodian of approximately 1,672 e-mails and documents, while defendant Stepanets was the custodian of approximately 979 e-mails and documents. The government also provided interview memoranda and agents' notes of the 323 witnesses to whom the government spoke during the two-year criminal investigation. Many of these witnesses were former employees of NECC or MSM whose detailed statements about the practices at the companies underlie the allegations in the Indictment.

Finally, on November 30, 2015, pursuant to this Court's order (Doc. No. 347), the government disclosed to the defendants a preliminary exhibit list. The preliminary exhibit list was approximately 137 pages, and identified by Bates number and description more than 2,500 documents and records. Of the 2,500 identified exhibits, approximately 200 referenced defendant Carter, while approximately 165 referenced defendant Stepanets.

### *The Order*

On September 15, 2015, *nine months* after the defendants were arraigned, and after their Preliminary Motion to Compel Discovery (Docket No. 288) (hereinafter "Motion to Compel Discovery") had been largely denied, the defendants filed the Motion, seeking an extremely detailed accounting of the nature of the evidence the government will use at trial. Specifically, the defendants' requested the government "[i]dentify the date(s), location(s), nature and evidence

Counts," which contained records and documents most relevant to the 131 counts in the Indictment, organized by count.

The seven discovery productions also included thirty searchable load-ready electronic databases. The government further provided counsel the Bates numbers for 23,000 e-mails and documents obtained from the computer server belonging to NECC that the government designated in its own review as "hot" or "relevant." Of the 23,000 e-mails and documents, defendant Carter was the custodian of approximately 1,672 e-mails and documents, while defendant Stepanets was the custodian of approximately 979 e-mails and documents. The government also provided interview memoranda and agents' notes of the 323 witnesses to whom the government spoke during the two-year criminal investigation. Many of these witnesses were former employees of NECC or MSM whose detailed statements about the practices at the companies underlie the allegations in the Indictment.

Finally, on November 30, 2015, pursuant to this Court's order (Doc. No. 347), the government disclosed to the defendants a preliminary exhibit list. The preliminary exhibit list was approximately 137 pages, and identified by Bates number and description more than 2,500 documents and records. Of the 2,500 identified exhibits, approximately 200 referenced defendant Carter, while approximately 165 referenced defendant Stepanets.

### *The Order*

On September 15, 2015, *nine months* after the defendants were arraigned, and after their Preliminary Motion to Compel Discovery (Docket No. 288) (hereinafter "Motion to Compel Discovery") had been largely denied, the defendants filed the Motion, seeking an extremely detailed accounting of the nature of the evidence the government will use at trial. Specifically, the defendants' requested the government "[i]dentify the date(s), location(s), nature and evidence

of each act of racketeering that Ms. Carter is alleged to have committed or participated in, directly or indirectly, in the conduct of the affairs of the alleged enterprise…." Letter from M. Pineault to AUSAs G. Varghese and A. Strachan, at 1 (Jul. 31, 2015). See also Letter from J. Cunha, Jr. to AUSAs G. Varghese and A. Strachan, at 1 (Aug. 3, 2015) (requesting the "date(s), location(s), nature and evidence of each act of racketeering that Ms. Stepanets is alleged to have committed or participated in, directly or indirectly, in the conduct of the affairs of the enterprise").

On November 5, 2015, Chief Magistrate Judge Boal heard oral argument on the Motion, and five days later, denied it. Specifically, Chief Magistrate Judge Boal held:

> [t]he Court finds that the indictment provides the Defendants with sufficient information in order to understand the charges against them and prepare for a defense. The indictment spells out the charges against the Defendants in an organized fashion over 73 pages and 131 counts. The Defendants' motion seeks evidentiary details such as "the date(s), location(s), nature and evidence" of many of the allegations contained in Counts 1, 2, and 3 of the indictment. "A bill of particulars is not to be used as a discovery device, with a defendant interrogating the government as to the precise details of every alleged act – all the who, what, and where of every allegation."

Order on Defendants' Consolidated Motion for Bill of Particulars (Doc. No. 390), at 4 (Nov. 10, 2015) [hereinafter, the "Order"] (quoting United States v. Salyer, 2011 WL 6026119, at *1 (E.D. Cal. Dec. 2, 2011)). Chief Magistrate Judge Boal concluded, "[a] plain reading of the indictment puts the defendants on notice as to the nature of the charges against which they must defend." Order at 5.

The Order was not "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); see also United States v. Garcia, 983 F.2d 1160, 1163 (1st Cir. 1993) ("A magistrate's discovery

order may be set aside where the order is clearly erroneous or contrary to law."). Accordingly, it should be affirmed.

## ARGUMENT

I.  **The Motion Was Untimely, and Should Be Denied Because the Defendants Failed to Obtain Leave of Court to File It.**

As an initial matter, the government notes that the defendants' Motion seeking a bill of particulars was filed nine months after the filing deadline, and without any request for leave of the court to file it. In the Objection, defendants Carter and Stepanets once again have not requested leave of this Court to seek a bill of particulars, nor even address the untimeliness of their Motion. While Chief Magistrate Judge Boal did not reach the untimeliness issue in her Order, see Order at 5 n.1, the government submits that the defendants' disregard for the rules and the authority of this Court presents an alternative ground on which this Court should affirm Chief Magistrate Judge Boal's dismissal. See Zee-Bar, Inc. v. Kaplan, 162 F.R.D. 422, 425 (D.N.H. 1993) (noting that a district court can affirm a magistrate judge's ruling on "any ground supported by the record"); Bergen v. F/V St. Patrick, 686 F. Supp. 786, 787 (D. Alaska 1988) (affirming magistrate judge's ruling on other grounds).

Rule 7 of the Federal Rules of Criminal Procedure provides that a "defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. 7(f). Accordingly, federal courts throughout the country have denied motions for bills of particulars where the motion was filed beyond the 14-day deadline and leave of court was not requested. See e.g., United States v. Damante, 2011 WL 4007623, at *1 (D. Nev. Sept. 8, 2011) ("Defendant cannot wait [four months] and then, when the case approaches trial, feign uncertainty as to the charges against him. Not only did the deadline to move for a bill of particulars expire, but the Defendant also failed to obtain this Court's permission to request a

bill of particulars pursuant to Rule 7(f)."); United States v. Ayala-Vazquez, 2010 WL 3981831, at *2 (D. Puerto Rico Oct. 8, 2010) (denying motion five months after arraignment where "not only did the deadline to move for a bill of particulars expire, but the Defendant also failed to obtain this Court's permission to do so outside of the established time limit"); United States v. Hazelrigg, 2009 WL 3617562, at *2 (D.S.D. Oct. 29, 2009) (denying defendant's request three months after arraignment); United States v. McKay, 70 F. Supp. 2d 208, 211 (E.D.N.Y. 1999) (finding motion filed three months after arraignment untimely where no good cause shown for delay); United States v. Taylor, 25 F.R.D. 225, 226 (E.D.N.Y. 1960) (finding motion filed seven months after arraignment untimely and the court had not permitted a motion beyond that date).

In this case, defendants Carter and Stepanets were arraigned on the Indictment on December 17, 2014. Pursuant to Rule 7(f), the deadline to file a motion for a bill of particulars was December 31, 2014. The Motion, however, was not filed until September 15, 2015, approximately nine months after arraignment, and not until well after the defendants had already filed, argued, and lost their Motion to Compel Discovery.[1] Defendants Carter and Stepanets never requested, nor did Chief Magistrate Judge Boal ever grant, permission for them to file the Motion beyond the 14-day deadline imposed by Rule 7(f). In their Motion, the defendants did not address, much less justify, the fact that they did not seek leave of the court to file the Motion. Similarly, in the Objection, the defendants continue to ignore the untimeliness issue and provide no explanation for why leave of court was not requested. Instead, the defendants' only reference

---

[1] The timing of the Motion and the nature of the requests made it abundantly clear that the defendants were seeking that to which Chief Magistrate Judge Boal had already ruled they were not entitled. "A bill of particulars is not a tool of discovery, and its purpose is not to obtain disclosure of evidence, witnesses to be offered at trial, or the government's legal theories." United States v. Stryker Biotech, 2010 WL 2900684, at *3 (D. Mass. July 21, 2010) (Dein, M.J.). It is only used to advise the defendants as to the charges they face, not as an alternative avenue to be used after their discovery motion has already been denied. In fact, in this district, bills of particulars are required to be filed prior to any discovery at all. Compare Fed. R. Crim. 7(f) (requiring motions for bills of particulars to be filed within 14 days of arraignment) with L.R. 116.1(c) (requiring the government to produce discovery within 28 days of arraignment).

to their untimeliness is a footnote in which they chastise the government for its "unreasonableness." See Objection at 7 n.4. The government respectfully submits that requiring the defendants to follow the rules is not unreasonable. Accordingly, because the defendants' Motion was filed nine months after the deadline imposed by Rule 7(f), and the defendants never requested leave from this Court to file it, the Objection should be denied on this ground, and the magistrate judge's decision affirmed.

II. **Chief Magistrate Judge Boal Correctly Denied the Motion for Bill of Particulars Where the Indictment, Extensive Discovery, and Preliminary Exhibit List More than Advise the Defendants of the Crimes They Face.**

    A.    <u>Chief Magistrate Judge Boal Correctly Found that the Indictment Is Sufficiently Particular.</u>

First, Chief Magistrate Judge Boal correctly found that "the indictment provides the Defendants with sufficient information in order to understand the charges against them and prepare a defense. The indictment spells out the charges against the Defendants in an organized fashion over 73 pages and 131 counts." Order at 5. Her decision was correct and should be affirmed.

As the First Circuit has noted, "[m]otions for bills of particulars are seldom employed in modern federal practice." <u>United States v. Sepulveda</u>, 15 F.3d 1161, 1192 (1st Cir. 1993). An indictment is sufficiently particular if it "elucidates the elements of the crime, enlightens a defendant as to the nature of the charge against which she must defend, and enables her to plead double jeopardy in bar of future prosecutions of the same offense." <u>Id.</u> at 1192 (citing <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974)); <u>see also</u> Fed. R. Crim P. 7(c)(1) ("The indictment…must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."). A bill of particulars need only be granted where the indictment is so vague that it does not comply with

these purposes. See Sepulveda, 15 F.3d at 1192 (holding that to prevail on a bill of particulars the defendant must demonstrate he is "disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause"); United States v. Andrus, 775 F.2d 825, 843 (7th Cir. 1985) (permitting a bill only when indictment is so general that it fails to advise the defendant of the specific acts charged). An indictment need not be "infinitely specific," nor identify all evidence the government will present at trial. Sepulveda, 15 F.3d at 1192; see also United States v. Munoz-Franco, 487 F.3d 25, 53 (1st Cir. 2007) ("The government is not limited in its proof at trial to those overt acts alleged in the indictment." (internal citation omitted)); United States v. Belardo-Quinones, 71 F.3d 941, 943 (1st Cir. 1995) (noting that an indictment need not contain "any precise time period for the conspiracy" nor "specify the date on which the defendant joined it"); United States v. Paiva, 892 F.2d 148, 154-55 (1st Cir. 1989) (upholding the denial of a bill of particulars where the indictment did not identify the number of transactions in which the defendant was involved, when and where they occurred, the time period in which he joined and withdrew from the conspiracy, and acts of his participation in the conspiracy).

In this case, the speaking Indictment spells out the charges against all of the defendants in a detailed and organized fashion over 73 pages and 131 counts. In their Objection, defendants Carter and Stepanets request a bill of particulars for only Count 2, the racketeering conspiracy charge. Specifically, the defendants argue that Chief Magistrate Judge Boal erred because of a lack of detail in the charging language of Count 2, and the absence of any indication of "which of the charged shipments [the defendants] personally confirmed and authorized." Objections at 7-8. This argument is both unpersuasive, and legally erroneous.

At the outset, the government notes that the commission of an overt act is not necessary

to prove conspiracy under Section 1962(d). As the United States Supreme Court has stated, "[t]he RICO conspiracy statute, § 1962(d), broadened conspiracy by omitting the requirement of an overt act…." Salinas v. United States, 522 U.S. 52, 64 (1997); see also United States v. Angiulo, 847 F.2d 956, 964 (1st Cir. 1988) ("We now join with those circuits squarely holding that the commission of 'overt acts' is not required for a RICO conspiracy conviction."). Moreover, the racketeering conspiracy statute does not require each co-conspirator to commit racketeering acts personally, but rather only an agreement that the one or more of them will engage in conduct that constitutes the substantive crime. See Salinas, 522 U.S. at 65 (affirming conviction of RICO co-conspirator "who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense"). Thus, contrary to the defendants' repeated assertions in the Objection, the government does not need to prove, much less allege, "which of the charged shipments [defendants Carter and Stepanets] personally confirmed and authorized," Objection at 8, but rather only that they entered into an agreement with their co-conspirators that such predicate acts be done. This is precisely what the Indictment alleges.

The Indictment describes Count 2, the RICO conspiracy charge, in 18 pages and 41 paragraphs, that contain a description of the alleged enterprise (NECC and MSM); the alleged manner and means of the enterprise (including sub-sections setting forth the supporting allegations relating to MSM's representations to customers, NECC's production practices, and NECC's cleaning and disinfecting practices); the dates of the conspiracy, the manner and means of the conspiracy, and the identities of the alleged co-conspirators. Indictment at 2-4, 6-18, and 36-37. Accordingly, the Indictment in this case is more than sufficiently particular, and properly enlightens the defendants as to the nature of the charges against which they must defend. See e.g., United States v. Hallock, 941 F.2d 36, 40 (1st Cir. 1991) ("By informing [the defendant]

that he was accused of a conspiracy in 1988, in Maine, to distribute cocaine and by listing the names of the four principal coconspirators, the indictment gave [the defendant] significant information as to the conduct out of which the indictment arose – namely, his alleged agreement and relationship with these four men aimed at distributing cocaine."); Paiva, 892 F.2d 155 (affirming denial of bill of particulars where indictment alleged defendant had distributed "quantities of cocaine" from "early 1983" to the "fall of 1983").

As they did in their Motion, defendants Carter and Stepanets principally rely on two cases, United States v. Asselin, No. 04-cr-30033-MAP, 2005 WL 2365326 (D. Mass. Sept. 9, 2005), and United States v. Perry, No. 12-cr-10293-DJC, 2013 WL 3158078 (D. Mass. Jun. 19, 2013) for the proposition that more information from the government is required. The defendants' reliance on these cases is misplaced, however. In Asselin, a bribery case involving the public housing authority, the indictment failed to identify the contracts the alleged bribery acts procured. 2005 WL 2365326, at *2. In ordering a bill of particulars, the court held that since the acts of bribery to the enterprise members predated the criminal enterprise by several years, a bill of particulars was appropriate to identify the contracts allegedly tainted by the bribery and those that were not. Id. In Perry, the defendants were charged with extorting companies on behalf of a union to hire union members for "unwanted, unnecessary, and superfluous jobs." 2013 WL 3158078, at *5. The court noted that the language in the indictment was general, and the government had not yet provided "Jencks material, police reports, witness statements, or the like in connection with these charges." Id. Accordingly, there was no way for the defendants to know which companies using union members had been extorted and which had not. Id. Central to the holdings of both Asselin and Perry was the principle that without more information, the defendants could not distinguish between "legitimate and allegedly illegitimate

[conduct]." Id. This is not the case with respect to these defendants.

In their Objection, as they did in their Motion, defendants Carter and Stepanets attempt to shoehorn the facts of this case into the holdings of Asselin and Perry even though they do not fit. The conduct underlying the RICO conspiracy charged here, including the use of expired ingredients, the use of expiring stock solutions, the improper sterilization of drugs, the mixing of lots of drugs, the improper testing of drugs, the shipment of untested drugs, and the use of an unlicensed pharmacy technician, does not suffer from any confusion over legitimate and illegitimate conduct. There is no possible explanation for how such conduct, whether it is the use of expired ingredients, improperly sterilizing drugs, dispensing drugs prior to receipt of test results, or employing an unlicensed pharmacy technician, was legitimate. Moreover, unlike Perry, the defendants have substantially more information than just the Indictment upon which to rely. Indeed, the defendants have e-mails identified as hot or relevant, interview memoranda of government witnesses discussing NECC's fraudulent practices, a searchable electronic database of company documents detailing the practices inside the clean rooms, and the government's preliminary exhibit list, five months prior to any trial in this case. See supra pp. 3-4. As Chief Magistrate Judge Boal correctly held, "the indictment provides the Defendants with sufficient information in order to understand the charges against them and prepare a defense." Order at 4. Therefore, the Order should be affirmed.

      B.      <u>Chief Magistrate Judge Boal Correctly Found that The Defendants' Requests Sought Discovery, Not Notice of the Charges.</u>

Second, Chief Magistrate Judge Boal correctly held that the defendants' Motion was an improper request for evidentiary details of the government's case-in-chief, rather than for notice of the charges they face. This ruling was not clearly erroneous, nor contrary to law, and should be affirmed.

The test for a bill of particulars is not whether the particulars sought would be helpful or useful to the defense but whether the information is necessary. United States v. Matos-Peralta, 691 F. Supp. 780, 791 (S.D.N.Y. 1988). Courts throughout the country, and within this district, have uniformly held that a bill of particulars is not an appropriate way of obtaining information on evidentiary matters and is not designed to permit defendants to preview the evidence or the government's theory of the case. See e.g., United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985) ("A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation. Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation." (emphasis in original)); United States v. June, 2011 WL 4443429, at *1 (D. Mass. Sept. 22, 2011) (Neiman, M.J.) (denying bill of particulars in part where "[d]efendant appears to be engaging more in discovery than proposed clarification"); United States v. Stryker Biotech, 2010 WL 2900684, at *3 (D. Mass. July 21, 2010) (Dein, M.J.) ("A bill of particulars is not a tool of discovery, and its purpose is not to obtain disclosure of evidence, witnesses to be offered at trial, or the government's legal theories."); United States v. Allen, 2009 WL 2496472, at *1 (D. Mass. Aug. 7, 2009) (Bowler, M.J.) ("A defendant is not entitled to recover evidentiary matters by filing a motion for a bill of particulars."); United States v. Ojeikere, 299 F. Supp. 2d 254, 261 (S.D.N.Y. 2004) (rejecting a request for a bill of particulars that was "merely an impermissible attempt to compel the Government to provide the evidentiary details of its case"); United States v. Mitlof, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001) (denying a bill of particulars that sought the "'wheres, whens and with whoms' that Courts have held to be beyond the scope of a bill of particulars"); United States v. Guerrerio, 670 F. Supp. 1215, 1225 (S.D.N.Y. 1987) ("A bill of particulars is not a discovery tool and is not intended to allow defendants a preview of

the evidence or the theory of the government's case."). "To hold otherwise would incorrectly require the government to disclose its trial strategy for proving its allegations." United States v. DeNunzio, 2015 WL 3454714, at *1 (D. Mass. May 29, 2015) (Gorton, J.).

In their Motion, the defendants list pages of specific requests, and demand the evidence supporting each identified allegation. See Objection, Exhs. 1 & 3. It is beyond question that these requests are "attempting to compel the production of the very type of evidentiary minutiae that is not appropriate in a bill of particulars." Mitlof, 165 F. Supp. 2d at 569. For example, the defendants make the following specific requests with respect to Count 2:

- The date(s), location(s), nature and evidence of each act of racketeering that Ms. Carter is alleged to have committed or participated in, directly or indirectly in the conduct of the affairs of the alleged enterprise;

- The date(s), location(s), nature and evidence of each act of racketeering that Ms. Stepanets is alleged to have committed or participated in, directly or indirectly in the conduct of the affairs of the alleged enterprise;

- Identify all acts of racketeering in the conduct of the enterprise, which Ms. Stepanets agreed would be committed by a conspirator…and as to each, which conspirator was to commit each act(s), and for each such act, which enumerated Count 1 racketeering act it is alleged to be, if any.

Objection, Exhs. 1 & 3. By the plain language of these and their other numerous requests that are seeking "date(s), location(s), nature and evidence," it is abundantly clear the defendants are not seeking to clarify the nature of the charges they face, but rather every single piece of evidentiary minutiae of the government's case-in-chief. None of these are proper requests for a bill of particulars. The defendants are not confused about the nature of the charges they face, but rather would simply like to know what evidence the government will rely on at trial. Put another way, the defendants are seeking the "'wheres, whens and with whoms' that courts have held to be beyond the scope of a bill of particulars." Mitlof, 165 F. Supp. 2d at 569; see also United States v. Johnson, 504 F.2d 622, 628 (7th Cir. 1974) ("It is well settled that a bill of particulars

cannot be used to obtain a list of the government's witnesses, or evidentiary detail."). While the defendants undoubtedly would like this information, it is well beyond what the law requires.[2] Accordingly, Chief Magistrate Judge Boal correctly rejected this request. Her Order should be affirmed.

  C. <u>The Extensive Discovery in this Case, Including the Government's Preliminary Exhibit List, Provides Further Details Regarding the Charges Against the Defendants and Moots the Need for a Bill of Particulars.</u>

Courts throughout the country, and in this district, have routinely held that detailed discovery provided to criminal defendants obviates the need for a bill of particulars. <u>See</u> <u>e.g.</u>, <u>Sepulveda</u>, 15 F.3d at 1193 (denying bill of particulars where defendants "enjoyed the benefits of modified open-file discovery, *i.e.*, automatic discovery that encompassed all relevant data except Jencks Act material related to witnesses not employed in law enforcement"); <u>United States v. Barnes</u>, 158 F.3d 662, 665 (2d Cir. 1998) (affirming denial of bill of particulars where government had provided "extensive additional information"); <u>United States v. Long</u>, 706 F.2d 1044, 1054 (9th Cir. 1983) ("Full discovery will obviate the need for a bill of particulars."); <u>United States v. Godfrey</u>, 2013 WL 1414887, at *3 (D. Mass. Apr. 5, 2013) (Bowler, M.J.) (denying bill of particulars where indictment is specific enough and discovery has been provided in searchable format); <u>June</u>, 2011 WL 4443429, at *2 (denying bill of particulars in part where the government "both in the indictment itself and the electronic and paper discovery provided, has given extensive guidance" to defendants); <u>Stryker Biotech</u>, 2010 WL 2900684, at *4 (finding that discovery "roadmap" including witness statements and exhibits eliminates the need for a bill of particulars); <u>United States v. Kemp</u>, 2004 WL 2757867, at *8 (E.D. Pa. Dec. 2, 2004) ("Courts are especially reluctant to direct the filing of a bill of particulars when the government

---

[2] Moreover, as stated above, the defendants received this information six days after filing the Objection in the form of the government's preliminary exhibit list.

has provided the defendant with extensive pre-trial discovery."). This principle has been especially true where the government has provided discovery in a searchable electronic format, or provided other guidance to defendants including the identification of "hot" documents. See United States v. Ferguson, 478 F. Supp. 2d 220, 227 (D. Conn. 2007) (denying bill of particulars where government provided Rule 16 materials in searchable format and identified "most relevant" documents). Courts also have cautioned that defendants cannot "use the vastness or complexity of the alleged [charges] and its attendant documentary evidence as a sword against the government when the Indictment, discovery, and other information provided by the government adequately notify the Defendants of the charges against them." United States v. Rigas, 258 F. Supp. 2d 299, 305 (S.D.N.Y 2003).

In this case, not only does the detailed Indictment give the defendants sufficient notice of the charges against them, but the extensive discovery in this case provides even further detailed information as to the charges. As stated above, the government has provided discovery in an electronic format and in searchable electronic databases. The government has organized important documents by count, and provided a list of "hot" or "relevant" e-mails. The government also provided interview memoranda of witnesses, including interviews of 18 former NECC employees who worked inside the clean rooms and spoke extensively about the improper compounding of drugs and the insanitary conditions. The government also provided interview memoranda of several other former NECC and MSM employees who worked outside the clean rooms with defendants Carter and Stepanets. The government provided a searchable electronic database of company documents detailing the practices inside the clean rooms. Finally, six days after they filed this Objection, the government disclosed to the defendants a preliminary exhibit list five months prior to the start of any trial in this case. The preliminary exhibit list was

approximately 137 pages, and identified by Bates number and description more than 2,500 documents and records the government may use in its case-in-chief to prove the charges in the Indictment. Because all of these discovery materials provide the defendants with extensive information about the charged offenses, and supplemented the already detailed Indictment, a bill of particulars is not necessary, nor warranted in this case. Accordingly, Chief Magistrate Judge Boal's Order should be affirmed.

## CONCLUSION

For the above reasons, the United States respectfully requests that the Court deny the defendants' Objection and affirm Chief Magistrate Judge Boal's Order.

                                            Respectfully submitted,

                                            CARMEN M. ORTIZ
                                            UNITED STATES ATTORNEY

                      By:    /s/ George P. Varghese
                             AMANDA P.M. STRACHAN
                             BBO # 641108
                             GEORGE P. VARGHESE
                             Assistant United States Attorneys
                             John J. Moakley United States Courthouse
                             One Courthouse Way, Suite 9200
                             Boston, Massachusetts 02210
                             (617) 748-3100
                             amanda.strachan@usdoj.gov
                             george.varghese@usdoj.gov

Dated: December 8, 2015

## Certificate of Service

I hereby certify that the foregoing documents filed through the ECF system will be sent electronically to counsel for the defendants, who are registered participants as identified on the Notice of Electronic Filing (NEF).

                    By:    /s/ George P. Varghese
                             GEORGE P. VARGHESE
                             Assistant United States Attorney

Dated: December 8, 2015