UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Court No.: 14-cr-10363-RGS |
| v. ) | |
| ) | |
| BARRY J. CADDEN, et al. ) | |
| ) | |
| Defendants. ) | |

## **RESPONSE OF DEFENDANTS TO GOVERNMENT'S STATUS REPORT**

Defendants Barry J. Cadden, Glenn A. Chin, Gene Svirskiy, Christopher M. Leary, Joseph M. Evanosky, Scott M. Connolly, Sharon P. Carter, Alla V. Stepanets, Robert A. Ronzio, Kathy S. Chin and Michelle L. Thomas submit this response to the Government's December 4, 2015 Status Report (Dkt. 453) (hereafter, "Status Rpt.") to make four discrete points.

First, contrary to the Government's assertions, the issue presently before the Court does not implicate "discretionary" Executive Branch decisions about how the Government executes search warrants or conducts criminal investigations. Status Rpt. at 3-4 (citing inapposite separation-of-powers cases). Rather, the issue involves the Court's unquestioned authority to establish deadlines for the Government's compliance with its post-indictment discovery obligations. In that regard, and as the Government has acknowledged, every single one of the 713,000 e-mails and documents that the Government segregated for Filter Team review hit on one or more relevancy search terms that the Government applied to cull out relevant materials from the electronic data seized at NECC. The Government reports that it has produced in

1

discovery every other e-mail that hit on those same relevancy terms. Status Rpt. at 2.[1] Its sole explanation for withholding the segregated materials was that they had not yet been reviewed for potential privilege. The Court plainly possessed the authority to set a deadline for the Government to complete that process. *See, e.g., United States v. Mower*, 2010 WL 3938265, at *1-2 (D. Utah Oct. 6, 2010) (summarizing various privilege review deadlines imposed by court on both government and defendants); *United States v. Winters*, 2006 WL 2789864, at *3 (S.D.N.Y. Sept. 27, 2006) (same); *see also Heebe v. United States*, 2012 WL 3065445, at *6 (E.D. La. July 27, 2012) (same).

Second, the Government cannot defend its failure to produce or – until recently – even to disclose the existence of the approximately 650,000 e-mails that remain with the Filter Team by stating that it "has offered to provide the defendants with the original electronic media since January 2015." Status Rpt. at 4. When it made that offer, the Government said nothing to suggest that its automatic discovery productions to Defendants were substantially incomplete. Most notably, the Government did not disclose that the 1.1 million e-mails it had produced in discovery omitted over 650,000 *additional* e-mails that had hit on exactly the same relevancy search terms but that were being held for privilege review by a taint team.[2] Indeed, not only did

---

[1] The Government acknowledged these same points at the parties' November 5, 2015 Status Conference with this Court. In response to the Court's observation that the use of relevancy search terms meant that "[t]here certainly could be materials in there that are discoverable under Rule 16," the Government responded: "That's right, your Honor . . . ." Tr. at 48:20-23.

[2] The Government also did not disclose that the search terms it had applied to cull out relevant data from the seized materials inexplicably omitted such key terms as "patient names" and "quarantine." *See* Joint Status Report dated October 29, 2015 (Dkt. 374), at 6. In fact, the Government refused Defendants' request for a list of the search terms, thereby rendering it impossible for Defendants to discover such omissions until the Government was compelled, pursuant to court order, to produce the terms on October 9, 2015.

the Government fail to inform Defendants or the Court that it was still holding nearly *40%* of the relevant e-mails – all of which came from NECC's servers and comprise some of the most significant evidence in the case – but it made statements that gave exactly the opposite impression. For example, in its May 15, 2015 Opposition to Defendants' Preliminary Motion to Compel (Dkt. 237), the Government summarized the four discovery productions it had made to date and stated: "Through the four discovery productions detailed above, the United States has fully complied with all of its automatic discovery obligations in this case." Opp. at 5.[3]

The Government's lack of candor deprived Defendants of information critical to any assessment of whether they should seek to review the original media. Further, it bears emphasis that the Government's *sole* offer – until approximately three weeks ago – was to provide defense counsel with only a copy of the "<u>original</u> version of the electronic media seized in this case <u>prior to any processing by the government</u>." Letter from A. Strachan to B. Singal dated April 16, 2015 (Dkt. 231-2) (emphases added). It would have cost Defendants tens of thousands of dollars to

---

[3] In footnote 13 of the same pleading, the Government noted that its review of the electronic media was "ongoing" and "[t]o the extent that additional e-mails are made available to the criminal investigation team, they will be provided to the defendants." Opp. at 13 n.13. The Government nowhere disclosed the facts that presumably caused it to include this carefully (and vaguely) worded caveat. Specifically, the Government did not reveal to Defendants or the Court that 40% of the relevant e-mails in this case, representing more than 650,000 documents, were bottled up in a taint team process and had yet to be produced. Indeed, as recently as October 29, 2015, after Defendants had learned (in mid-September) that at least 50,000 documents were with a taint team, the Government professed an inability to make any representations about how many additional documents, beyond the 50,000, were being withheld for privilege review, or when they might be produced. *See* Joint Status Report dated October 29, 2015, at 5-6 (Dkt. 374). Even as late as November 3, 2015, when opposing Defendants' motion to extend the discovery deadline, the Government contended that the "vast majority" of discovery materials had been produced, and that the 50,000 e-mails the Government had recently revealed would be forthcoming "at most would comprise less than five percent of the total e-mails disclosed." Government's Opposition to Defendants' Joint Motion to Continue Discovery Deadline, at 3 (Dkt. 377). The Government did not inform the Court in its pleading that, in fact, nearly 40% of the relevant e-mails remained with its Filter Team.

pay IT vendors to process the original media. The work also would have been pointlessly duplicative: the Government necessarily had to have processed the media already in order to run its own searches. The terms of the Government's offer therefore guaranteed that no defendant could or would accept it. It was not until the November 5, 2015 status conference before this Court, when the Government first disclosed that over 600,000 relevant but unproduced e-mails were still awaiting review by the Filter Team, that the Government offered to provide Defendants with a *processed* copy of the electronic media.

Third, to the extent the Government means to suggest in its Status Report (at 2-3) that Defendants received advance notice of the Government's purported "interpretation" of the Court's November 10, 2015 Order – an interpretation that flies in the face of the plain language of the Order – that assertion is inaccurate. The Government said nothing until defense counsel asked – minutes before the start of the December 3 status conference – whether the Government was on track to complete its taint review and produce the remaining 600,000 (plus) e-mails to by December 10, as required by the Court's Order, and as reiterated by Judge Stearns in his Order dated November 16, 2015.[4] Contrary to the Government's apparent suggestion, the November 16 "offer" mentioned in the Government's Status Report did not alert Defendants to the Government's professed "understanding" of the November 10 Order. Rather, the November 16 offer arose in the context of a letter sent by the Government responding to certain defense questions about the technical methodology the Government had employed when applying the relevancy search terms to the seized materials. Defense counsel's questions (attached at *Tab 1*)

---

[4] Judge Stearns's November 16 Order, which ruled on a defense motion for extension of time, noted that "Magistrate Judge Boal has ordered the government to finish its 'taint team' review and final production as required under the procedural rules of the remaining 600,000 emails no later than December 10, 2015." (Dkt. 421).

did not relate in any way to the Government's taint team review process. Nor did the Government's responses (attached at *Tab* 2) relate to that process, except to confirm that an unspecified number of e-mails that had hit on relevancy terms had been segregated for review by a "Filter Team," and to offer to produce those segregated e-mails along with other electronic media seized from NECC if Defendants wished. The Government nowhere stated that it was offering to produce the segregated materials (and other seized media) because the Government had no intention of completing its privilege review, much less that it interpreted the Court's November 10 Order as not even requiring it to try. To the contrary, the Government described the segregated e-mails as "currently being reviewed by the Filter Team." *Tab 2*, at 4.[5]

Fourth, the Government's belatedly disclosed intention to discontinue the work of its Filter Team constitutes an attempt to shift onto the Defendants – at the eleventh hour – the burden of a privilege review process that has been plagued by a troubling pattern of errors and shortcomings since the Government first devised it. Following execution of the search warrants at NECC, counsel for the company discussed with the Government that the seized materials included attorney-client communications. The Government responded that it had established a taint team to screen for potentially privileged materials. Notwithstanding the formation of that team, numerous errors occurred that resulted in the apparent release of privileged materials to the Government's investigative team. Counsel for NECC and at least one defendant-owner objected,

---

[5] Nor did the Government inform the Court, prior to December 3, that it did not intend to complete its privilege review. Indeed, the Court specifically asked the Government at the November 5 status conference: "And when is the filter team projected to be done with their review?" The Government responded: "I don't have a time for that, your Honor." When the Court then asked: "Why shouldn't I set a deadline for this to be done?", the Government said nothing to suggest the Court lacked authority to do so, nor that it misunderstood the Court's questions – which plainly pertained to the *completion* of the review process not to the Government's unilateral cessation of that process. Tr. 46:10-18.

5

expressed concerns that the taint team process was broken, and sought answers from the government to ensure that the problems were fixed and that their rights were preserved. The Government responded with assurances that it had installed adequate safeguards.[6]

Insufficient information exists, at present, to assess whether the Government adequately rectified the errors in its taint team process that led to the release of privileged materials. What is clear, however, is that after failing to disclose for months that 650,000 relevant e-mails remained with its Filter Team post-indictment, and after further failing to comply with the Court's Order to complete its privilege review by December 10 – conduct that caused another 4 weeks to elapse with no meaningful progress made on production – the Government now seeks to shift the burden of its failures onto Defendants. Specifically, it seeks to stop the work of its Filter Team and produce an estimated 630,000 remaining e-mails – privileged and non-privileged alike – to Defendants, thereby forcing at least the defendant-owners, and perhaps others, to scramble to identify which documents are privileged from among the hundreds of thousands of documents that the Government seized, identified as relevant, but then held and failed to screen for three years.

As directed by the Court (Dkt. 455), Defendants will attempt to negotiate a resolution of the foregoing issues with the Government by December 11.[7] No resolution, however, can

---

[6] Correspondence summarizing these issues is attached chronologically at Tabs 3-10. The privileged documents referenced in the correspondence are not attached so that the privilege is not further compromised, but can be provided to the Court at the Court's request.

[7] Those issues will include, without limitation: (a) how, when, and by whom any privilege review of the segregated materials will be conducted and completed; and (b) how the segregated materials will be handled in the interim. With respect to the latter issue, the Government asserts but cites no authority to support its claim that it can produce all 630,000 remaining e-mails to Defendants immediately without any impact on the privilege. Status Rpt. at 4-5. Since the execution of the search warrants, first the company and then the defendant-owners consistently have asserted their objection to any action that would violate the privilege.

restore the months of document review time of which Defendants have been deprived. Nor can any resolution somehow magically enable Defendants to screen for privilege and then review 650,000 additional documents in advance of the currently scheduled April 4, 2016 trial date.

Dated: December 9, 2015

Respectfully submitted,

BARRY J. CADDEN,
By his attorneys,


  /s/   *Bruce A. Singal*
Bruce A. Singal (BBO# 464420)
Michelle R. Peirce (BBO# 557316)
Damien C. Powell (BBO# 664200)
DONOGHUE, BARRETT & SINGAL, PC
One Beacon Street – Suite 1320
Boston, MA 02108
Telephone: (617) 720-5090
bsingal@dbslawfirm.com
mpeirce@dbslawfirm.com
cstein@dbslawfirm.com


SHARON CARTER,
By her attorneys,


  /s/   *Michael Pineault*
Michael Pineault (BBO# 555314)
CLEMENTS & PINEAULT, LLP
24 Federal Street
Boston, MA 02110
Telephone: (857) 445-0133


GLENN CHIN,
By his attorneys,


  /s/   *Stephen Weymouth*
Stephen Weymouth
LAW OFFICE OF STEPHEN WEYMOUTH
65a Atlantic Avenue, Suite 3

Boston, MA 02110
Telephone: (617) 573-9598

KATHY CHIN,
By her attorneys,

　/s/　　Joan Griffin　　
Joan Griffin
P.O. Box 133
Dublin, NH 03444
Telephone: (617) 283-0954

SCOTT CONNOLLY,
By his attorneys,

　/s/　　Raymond Sayeg, Jr.　　
Raymond Sayeg, Jr.
KRATTENMAKER O'CONNOR & INGBER P.C.
One McKinley Square
Fifth Floor
Boston, MA 02109
Telephone: (617) 523-4010

JOSEPH EVANOSKY
By his attorneys,

　/s/　　Mark Pearlstein　　
Mark Pearlstein
Dana McSherry
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA 02109
Telephone: (617) 545-4000

CHRISTOPHER LEARY,
By his attorneys,


 /s/  *Paul Kelly*_____
Paul Kelly
Sarah Walsh
JACKSON LEWIS PC
75 Park Plaza, 4th Floor
Boston, MA 02116
Telephone: (617) 367-0025


ROBERT RONZIO,
By his attorneys,


 /s/  *Peter Horstmann*_____
Peter Horstmann
LAW OFFICES OF PETER CHARLES HORSTMANN
450 Lexington Street
Suite 101
Auburndale, MA 02466
Telephone: (617) 723-1980


ALLA STEPANETS
By her attorneys,


 /s/  *John Cunha, Jr.*_____
John Cunha, Jr.
Helen Holcomb, BBO #547538
CUNHA & HOLCOMB, PC
One State Street
Suite 500
Boston, MA 02109
Telephone: (617) 523-4350

GENE SVIRSKIY
By his attorneys,


  */s/   Jeremy Sternberg*
Jeremy Sternberg
Chris Iaquinto
HOLLAND & KNIGHT
10 St. James Avenue, 11th Floor
Boston, MA 02116
Telephone: (617) 854-1476


MICHELLE THOMAS
By her attorneys,


  */s/   Michael Bourbeau*
Michael Bourbeau
BOURBEAU AND BONILLA, LLP
236 Commercial Street, Unit One
Boston, MA 02109
Telephone: (617) 350-6565


**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on December 9, 2015.

  */s/   Michael J. Pineault*
Michael J. Pineault