UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                           |   |                               |
|---------------------------|---|-------------------------------|
| UNITED STATES OF AMERICA  | ) |                               |
|                           | ) | Court No.: 14-cr-10363-RGS    |
| v.                        | ) |                               |
|                           | ) |                               |
| BARRY J. CADDEN, et al.   | ) |                               |
|                           | ) |                               |
| Defendants                | ) |                               |

**DEFENDANTS' MOTION TO EXTEND THE DEADLINE FOR
FILING A MOTION TO RUN ADDITIONAL SEARCHES**

Through an electronic order dated December 10, 2015 (Dkt. #465), the Court ordered Defendants to brief their request, raised during the November 5, 2015, Motions Hearing, to run additional searches on the electronic media seized by the Government to fill in gaps in the Government's searches and document productions thus far. The Defendants have discussed this issue with the Government and were unable to come to a resolution. However, because millions of pages of highly relevant documents remain with the Government taint team and have not yet been produced during automatic discovery, Defendants are unable to determine whether running additional searches will be necessary at this time. Accordingly, Defendants[1] request that the Court extend the time period for them to file a Motion to run such additional searches until after the Government has completed automatic discovery (including and especially completing the taint team process).

---

[1] Defendants Barry Cadden, Michelle Thomas, Robert Ronzio, Christopher Leary, Glenn Chin, Kathy Chin, Sharon Carter, Scott Connolly, Joseph Evanosky, Alla Stepanets, and Gene Svirskiy, all join this Motion.

## PERTINENT BACKGROUND

As the Government has explained, when it executed two search warrants at NECC in October 2012 it seized a large volume of electronic documents. *See* Status Report (Dkt. #453), at p. 1. To narrow the volume, the Government applied search terms to identify potentially relevant documents that would be reviewed for use in the case. *Id.* The documents that did not contain a search term were deemed not potentially relevant and were not produced—or, presumably, reviewed—by the Government.

After several requests by the Defendants, on September 30 the Court (Stearns, J.) ordered the Government to disclose the search terms it used to identify the potentially relevant documents. *See* 9/30/15 Order (Dkt. #347). The Government did so on October 9, 2015. *See* 10/9/15 Letter from Amanda Strachan (Tab A). Upon reviewing the relevance search terms, the Defendants noted certain terms and phrases that the Government had omitted from its searches but that would have led to potentially relevant documents. For example, presumably to identify documents relevant to Count 3 the Government searched for documents containing the phrase "fake name." *Id.* But the Government did not search for documents containing the phrase "real name" or even the more generic "patient name." For obvious reasons, any documents containing these omitted terms are highly relevant to this case for Defendants.

As a result of these concerns over missing search terms/phrases, defense counsel requested further clarification from the Government concerning its search process in order to determine whether they needed to run additional searches to account for documents containing the omitted search terms/phrases. *See* 10/30/15 Letter from Michael Pineault to George Varghese and Amanda Strachan (Tab B). Having received no response to that inquiry, on November 5, 2015, during the Motions Hearing, the Defendants raised the issue of possibly

needing to run additional searches with the Court for the first time. *See* 11/5/15 Motions Hearing Trans., at p. 30:3-11.

At the time Defendants raised this issue, Defendants were aware that the Government had not yet completed automatic discovery because there was still a volume of documents being reviewed for possible privilege by the Government's taint team.[2] To that point the Government had led Defendants to believe that the volume of documents expected to be released by the taint team was "tens of thousands" of documents. *See* Government's Opposition to Joint Motion to Continue Discovery Deadline (Dkt. #377), at p. 2, n. 4 (filed 11/3/15). Thus, Defendants were aware that there was the possibility that their concerns about the omitted search terms/phrases might be allayed by the government's production of documents containing those terms/phrases among the "tens of thousands" of documents from the taint team. Accordingly, at the Motions Hearing the Defendants agreed it was premature to ask the Court for specific relief concerning the possibility of running additional searches. *See* 11/5/15 Motions Hearing Trans., at p. 37:4-9.

Shortly thereafter, during that same hearing, the Government disclosed, for the first time, there were "approximately 600,000" documents still with the taint team (which Defendants later learned is, in fact, at least 630,000 documents). *Id.,* at p. 45:22-23. This revelation further underscored how premature it would be for Defendants to ask the Court to run additional searches as there is little question that these 630,000 documents will yield hundreds of thousands of highly relevant documents (comprising millions of pages) to be produced to Defendants rather than the "tens of thousands" of additional documents the Government previously represented. Critically, in response to a question from the Court the Government admitted that these 630,000 documents contained Rule 16 material that needed to be produced. *Id.,* at 48:20-23.

---

[2] As the Court knows, in addition to running searches for relevance the Government also ran searches for privilege. All of the documents that contained a relevance term and a privileged term were given to a Government taint team to be reviewed. Those documents that were cleared by the taint team were to be produced to the Defendants.

3

On November 10, this Court ordered that the Government complete its taint team review of the 630,000 documents "no later than December 10, 2015." *See* 11/10/15 Electronic Order (Dkt. #389). But the Government disregarded this Court Order. On December 4 the Court issued another Order (Dkt. #455) instructing the Parties to confer and attempt to agree on a disposition of the 630,000 documents with the taint team.

The Parties met for approximately 60 minutes on December 10, but were unable to reach agreement. During that meeting, the Defendants also raised the possibility that they may need to run additional searches to fill in the gaps in the Government's relevance searches. Defendants proposed that, should the additional searches be necessary, in order to expedite the process and minimize unnecessary expenditures of resources to reprocess the electronic materials already in the Government's possession, the Parties arrange for Defendants to run their additional searches on the Government's already-processed media. The Government responded that this proposal was a "non-starter," and even went so far as to erroneously equate Defendants' proposal for streamlining this cumbersome process with a request that the Government write Defendants' opening statements for them. The Government made clear during this meeting that it would not then, or ever, agree to such a process that would allow Defendants to run additional searches on its processed media.

Because the Parties were unable to reach agreement on these issues, on December 15 this Court issued a third order (Dkt. #472) requiring the Government to complete its taint team review of the 630,000 documents by January 15, 2016. The Court also ordered the Defendants to brief the issue of running additional searches by December 22. *See* 12/10/15 Electronic Order (Dkt. #465). On December 16, at a hearing before Judge Stearns, the Government stated its

4

intention to appeal the December 15 Order, and requested (and was granted) an extension until January 6, 2016, to do so.

## ARGUMENT

Because the Government disregarded the Court's November 10 Order to complete its taint team review of relevant documents, automatic discovery in this case is still incomplete. The Government has not produced any of the 630,000 documents that remain with the taint team, meaning the Defendants are still without access to millions of pages of highly relevant materials. Based on the Government's representations to date, those 630,000 documents represent approximately one third of the total materials the Government seized from NECC. *See* Government's Status Report (Dkt. #453), at p. 2.

Given the volume of materials that the Government is still withholding, the Defendants are not in a position to state with any certainty whether they believe it will be necessary to run additional searches on the full set of materials seized by the Government. Defendants do not wish to burden the Court with unnecessary motions, and it may well be that once the Government completes its discovery obligations and produces the non-privileged documents from the 630,000 currently with the taint team Defendants will determine that it is not necessary to run any additional searches because all (or virtually all) of the missing search terms/phrases are sufficiently accounted for in documents contained in that production. But Defendants should not be required to make that decision (nor should the Court be required to rule on it) before the Government has fulfilled its discovery obligations and produced all of the documents it is required to produce.

Accordingly, Defendants request that the Court extend the deadline for them to file a Motion to run additional searches until after the Government has completed its taint team review

and the Defendants have had an opportunity to review the documents the Government produces to determine if any of the missing search terms/phrases remains an issue.[3]

Dated: December 22, 2015

Respectfully submitted,

BARRY J. CADDEN,
By his attorneys,

/s/ Callan G. Stein
Bruce A. Singal (BBO #464420)
Michelle R. Peirce (BBO #557316)
Callan G. Stein (BBO# 670569)
DONOGHUE, BARRETT & SINGAL, PC
One Beacon Street – Suite 1320
Boston, MA 02108
Telephone: (617) 720-5090
bsingal@dbslawfirm.com
mpeirce@dbslawfirm.com
cstein@dbslawfirm.com

GLENN A. CHIN,
By his attorneys,

/s/ Stephen J. Weymouth
Stephen J. Weymouth (BBO #523680)
LAW OFFICE OF STEPHEN WEYMOUTH
65a Atlantic Avenue, Suite 3
Boston, MA 02110
Telephone: (617) 573-9598
sweymouth@sweymouthlaw.com

---

[3] Should the Court wish to rule on the issue of running additional searches now and therefore denies this Motion to Extend, Defendants request that they be permitted to run additional searches for the reasons outlined above.

GENE SVIRSKIY,
By his attorneys,


  /s/   *Jeremy Sternberg*
Jeremy Sternberg (BBO #556566)
Chris Iaquinto (BBO #685718)
HOLLAND & KNIGHT
10 St. James Avenue, 11th Floor
Boston, MA 02116
Telephone: (617) 854-1476
jeremy.sternberg@hklaw.com
christopher.iaquinto@hklaw.com



JOSEPH M. EVANOSKY,
By his attorneys,


  /s/   *Mark Pearlstein*
Mark Pearlstein (BBO #542064)
Dana McSherry (BBO #664430)
MCDERMOTT, WILL & EMERY
28 State Street
Boston, MA 02109
Telephone: (617) 545-4000
mpearlstein@mwe.com
dmcsherry@mew.com



ALLA V. STEPANETS,
By her attorneys,


  /s/   *John Cunha, Jr.*
John Cunha, Jr. (BBO #108580)
Helen Holcomb (BBO #547538)
CUNHA & HOLCOMB, PC
One State Street, Suite 500
Boston, MA 02109
Telephone: (617) 523-4350
cunha@cunhaholcomb.com

MICHELLE L. THOMAS,
By her attorneys,


_/s/ Michael C. Bourbeau_
Michael C. Bourbeau (BBO #545908)
CUNHA & HOLCOMB, PC
One Commercial Street, Unit One
Boston, MA 02109
Telephone: (617) 350-6565
mike@lawgenie.com


CHRISTOPHER M. LEARY,
By his attorneys,


_/s/ Paul Kelly_
Paul Kelly (BBO #267010)
JACKSON LEWIS PC
75 Park Plaza, 4th Floor
Boston, MA 02116
Telephone: (617) 367-0025
paul.kelly@jacksonlewis.com


SCOTT M. CONNOLLY,
By his attorneys,


_/s/ Raymond Sayeg, Jr._
Raymond Sayeg, Jr. (BBO # 555437)
KRATTENMAKER O'CONNOR & INGBER P.C.
One McKinley Square, Fifth Floor
Boston, MA 02109
Telephone: (617) 523-4010
rsayeg@koilaw.com

SHARON P. CARTER,
By her attorneys,


/s/ *Michael Pineault*
Michael Pineault (BBO #555314)
CLEMENTS & PINEAULT, LLP
23 Federal Street
Boston, MA 02108
Telephone: (857) 445-0133
mpineault@clementspineault.com


ROBERT A. RONZIO,
By her attorneys,


/s/ *Peter C. Horstmann*
Peter C. Horstman (BBO #556377)
PATRIDGE, ANKNER & HORSTMANN, LLP
450 Lexington Street, Suite 101
Newton, MA 024666
Telephone: (617) 723-1980
pete@horstmannlaw.com

KATHY CHIN,
By her attorneys,


/s/ *Joan Griffin*
Joan Griffin (BBO#549522)
P.O. Box 133
Dublin, NH 03444
Telephone: (617) 283-0954
Griffin@LawJMG.com

## CERTIFICATE PURSUANT TO L.R. 7.1 and 112.1

I hereby certify that counsel for several defendants met with Assistant United States Attorneys Amanda Strachan and George Varghese on December 10, 2015, in a good faith effort to resolve defendants' potential need to run additional searches pursuant to L.R. 7.1 and 112.1. During that meeting, Ms. Strachan and Mr. Varghese made it clear they would not now or ever assent to a request by defendants to run additional searches.

/s/ *Callan G. Stein*
Callan G. Stein

## CERTIFICATE OF SERVICE

I, Callan G. Stein, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-participants on November 13, 2015.

/s/ *Callan G. Stein*
Callan G. Stein